IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 18-1477-CFC |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| DUO SECURITY, INC., | ) ) ) | |
| Defendant. | ) | |

**STIPULATION AND [PROPOSED] ORDER GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")**

Plaintiff CosmoKey Solutions GmbH & Co. KG. ("CosmoKey" or "Plaintiff") and Defendant Duo Security, Inc. ("Duo" or "Defendant") (together, "the Parties") hereby stipulate to the following concerning the production of documents and other electronically-stored information ("ESI") in the above-captioned action:

1.  **General Provisions**

    (a)  **Cooperation**. Parties are expected to reach agreements cooperatively on how to conduct ESI discovery under Fed. R. Civ. P. 26-36. In the event that the Parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the Parties reach agreement.

**(b)** **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on Custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

**(c)** **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

**(i)** Absent a showing of good cause by the requesting party, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

**(ii)** Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

**(d)** **Privilege.** Nothing in this Order waives, restricts or eliminates the Parties' agreement concerning discovery, including privilege issues, as set forth in

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

2

the stipulated Protective Order and the Protective Order's terms apply to all discovery, including ESI discovery.

2.   **Initial ESI Disclosures.**   Within 30 days after service of Plaintiff's Infringement Contentions Pursuant to Paragraph 3 of the Scheduling Order (D.I. 45), each party shall disclose:

(a)   **Custodians.** The 10 custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.

(b)   **Non-custodial data sources.**[2] A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

(c)   **Notice.** The Parties shall identify any issues relating to:

(i)   Any ESI (by type, date, custodian, electronic system or other criteria) that a Party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i);

(ii)   Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery; and

---

[2] That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container (e.g., enterprise system or database).

3

**(iii)** Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

**3.     Initial Discovery in Patent Litigation.**

**(a)** The Parties will provide contentions and document disclosures as set from in the Scheduling Order (D.I. 45) entered in this action.

**(b)** Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art, secondary considerations of obviousness, knowledge of or discussions concerning the ancestor patents of any patent-in-suit, design and development and operation of any products offered or sold within 6 years before the filing of the complaint, or the conception and reduction to practice of the inventions claimed in any patent-in-suit, or the prosecution history of any patent-in-suit, shall not be so limited.

**(c)** As a preliminary matter, the Parties will not be required to conduct a general search and production of email, absent a showing of good cause. If a party believes targeted email discovery is necessary, it shall propose a procedure identifying custodians and search terms it believes the opposing party should search. The Parties shall meet and confer, and if they are unable to reach agreement, shall follow paragraph 12 of the Scheduling Order for resolution of

4

discovery disputes. Nothing in this paragraph obviates a party's obligation to produce responsive documents to the extent a party is aware of such responsive documents being located in email.

4.     **Specific E-Discovery Issues.**

   **(a)** **Format.** ESI and non-ESI shall be produced to the requesting party in the formats described in Schedule B. If a particular document warrant a different format, the Parties will cooperate to arrange for a mutually acceptable production of such documents.

   **(b)** **Search methodology.**

   **(i)** **Noncustodial ESI.** If the producing party elects to use search terms to locate potentially responsive ESI on non-custodial data sources identified in accordance with paragraph 2(b), it shall disclose the search terms to the requesting party. Absent a showing of good cause or agreement by the Parties, a requesting party may request no more than 10 additional terms to be used in connection with the electronic search on non-custodial data sources identified in accordance with paragraph 2(b). Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. If a party discloses search terms in relation to this provision, whether voluntarily, in response to Court order, or for any other reason, such disclosure will not result in waiver of any subject matter privilege.

   **(ii)**  **Custodial ESI.** If the producing party elects to use search terms to locate potentially responsive ESI on emails and other ESI maintained by the custodians identified in accordance with paragraph 2(a), the producing Party will disclose its list of proposed search terms to be run on its own custodial data sources within 45 days of service of Plaintiff's Infringement Contentions Pursuant to Paragraph 3 of the Scheduling Order (D.I. 45), unless otherwise agreed to by the Parties. Within 30 days or other timeframe agreed to jointly between the Parties, after the exchange of such proposed search terms, the Parties shall agree on the scope, topic, and applicable search terms to be used for search, as well as set a schedule by which a requesting Party may request no more than 10 additional search terms to be used.[3] Either party may request that hit counts be provided during the exchange of proposed search terms. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. Nothing in this order precludes either party from requesting that additional search strings be run upon a showing of good cause or by the agreement of the parties. If a party discloses search terms in relation to this provision, whether voluntarily, in response

---

[3] The parties agree that the use of a keyword to locate a known document in a known location (e.g., by typing a keyword into the "search" field of Windows explorer to locate a document in a folder) shall not constitute the election of use of a "search term" under the provisions of this ESI order.

6

to Court order, or for any other reason, such disclosure will not result in waiver of any subject matter privilege.

(c) **Timing of ESI Searching and Production.**

(i) **Custodians and non-custodial ESI sources.** The Parties shall work in good faith to promptly reach agreement on ESI Custodians and non-custodial data sources from which documents shall be produced after receiving the other side's list disclosures in accordance with paragraphs 2(a) and 2(b);

(ii) **Search terms.** The Parties shall work in good faith to promptly reach agreement on ESI search terms, to the extent applicable, after receiving the other side's list of proposed search terms as set forth in paragraphs 4(b)(i) and (ii) above; and

(iii) **Production.** The Parties will produce documents, including ESI, on a rolling production basis. Such production should begin within a reasonable time after the response deadline. The Parties will communicate with each other about their respective priorities for production and agree to use good faith efforts to respond to reasonable requests for prioritized production, taking into account the volume of responsive information, its relative accessibility, efficiencies in the process of search and review, and additional processing time required for certain types of ESI.

**(d)     No Technology Assisted Review.** The Parties agree to meet and confer regarding the use of any additional filtering method that employs technology assisted review to determine the relevancy of ESI, prior to the use of any such technology assisted review. To the extent the Parties reach such agreement, proven technology must be employed and adequate quality controls maintained.

5.     **Source code.** For the avoidance of doubt, this Stipulation and Order does not govern the production or inspection of source code in any way. Production and inspection of source code shall be subject to the provisions of the Protective Order to be entered in this action.

6.     **Requests for higher-resolution or color documents.** The Parties agree to respond in good-faith to reasonable and specific requests for the production of higher resolution or color images.

7.     **Foreign language documents.** All documents shall be produced in their original language. In addition, if the producing party has a certified translation of a foreign-language document that is being produced (whether or not the translation is prepared for purposes of litigation), the producing party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

8. **Reproduction of third-party ESI.** Notwithstanding anything to the contrary herein, any party that produces documents produced to it by a third party, such as in response to a subpoena, may produce such documents in the format in which they were produced by the third party.

9. **Modification.** Unless specifically stated otherwise, the Parties may jointly agree to modify this Stipulation and Order without the Court's leave. Any such modification shall be in a writing signed by the Parties or their respective counsel. If the Parties cannot resolve their disagreements regarding a proposed modification, the Parties reserve the right to seek relief from the Court.

10. **Reservation of Rights, Obligations, and Responsibilities.** Nothing in this Protocol alters a Party's rights, obligations, and responsibilities under the applicable Federal Rules of Civil Procedure and other applicable law, nor does anything in this Protocol impose additional burdens beyond those imposed by the Federal Rules of Civil Procedure and other applicable law. Nothing in this ESI Protocol relating to the search for and production of electronic documents using identified custodians and search terms shall relieve the Parties of their obligations to reasonably search for and product all discoverable documents responsive to discovery requests served in this litigation. The Parties reserve all objections under the Federal Rules of Civil Procedure and other applicable law for matters relating to the production of data that are not specifically addressed in this Protocol.

Dated: March 27, 2023

| | |
|---|---|
| POTTER ANDERSON CORROON LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| /s/ *Bindu A. Palapura* | /s/ *Jennifer Ying* |
| David E. Moore (#3983)<br>Bindu A. Palapura (#5370)<br>Andrew L. Brown (#6766)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>(302) 984-6000<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br>abrown@potteranderson.com | Jack B. Blumenfeld (#1014)<br>Jennifer Ying (#5550)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jying@morrisnichols.com |
| OF COUNSEL:<br>Scott T. Weingaertner<br>Stefan Mentzer<br>John Padro<br>GOODWIN PROCTER LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br>(212) 813-8800 | OF COUNSEL:<br>Brian A. Rosenthal<br>Katherine Dominguez<br>Allen Kathir<br>Hyunjong Ryan Jin<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>(212) 351-4000 |
| *Counsel for Plaintiff CosmoKey Solutions GmbH & Co. KG* | Ryan K. Iwahashi<br>GIBSON, DUNN & CRUTCHER LLP<br>1881 Page Mill Road<br>Palo Alto, CA 94304-1211<br>(650) 849-5300 |
| | Jaysen S. Chung<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94105-0921<br>(415) 393-8200 |
| | *Counsel for Defendant Duo Security, Inc.* |

10

SO ORDERED, this \_\_\_28th\_\_\_ day of \_\_March\_\_, 2023.

_____
Chief, United States District Judge

## SCHEDULE A

1.     Information from handsets, mobile devices, personal digital assistants, and tablets.

2.     Backup systems and/or tapes or hard drives that are substantially duplicative of data that are more accessible elsewhere.

3.     Logs of calls made from mobile devices.

4.     Deleted, slack, fragmented, or other data only accessible by forensics.

5.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

6.     On-line access data such as temporary internet files, history, cache, cookies, and the like.

7.     Data in metadata fields that are frequently updated automatically, such as last-opened dates.

8.     Voice messages, except to the extent transcribed and saved as business records.

9.     Instant messages and chats that are not ordinarily printed or maintained in a server dedicated to instant messaging.

10.    Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

**11.** Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

**12.** Server, system or network logs.

**13.** Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

**14.** Data remaining from systems no longer in use that is unintelligible on the systems in use.

# SCHEDULE B
# PRODUCTION FORMAT AND METADATA

1. **Production Components.** Productions shall include Single Page Group IV TIFF images and/or color JPEGs, OCR/extracted document-level text files, a data load file in Concordance .DAT format with standard Concordance delimiters, an image load file in Opticon .OPT format, and for agreed-upon file types to be produced in native. If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2. **Metadata Fields and Metadata File.** The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and DOCUMENTCUSTODIAN. The metadata file shall be delimited according to the following characters:

   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)
   - Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |

| DOCUMENTCUSTODIAN | Individual from whom the documents originated. |
|---|---|
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| DATECREATED | Date an electronic document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| LASTMODIFIED | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| ALLCUSTODIANS | All custodians from whom the document originated separated by semicolons. |
| RECORDTYPE | Email, Email Attachment, Edoc, Edoc Attachment, Hard Copy |
| AUTHOR | Author field extracted from the metadata of the native file. |
| FILENAME | File name of the native file. |
| DOCTITLE | Internal document title of a native file |
| SUBJECT | The subject of the email message. |
| FROM | Author of the email message. |
| TO | Main recipients of the email message. |
| CC | Recipients of "carbon copies" of the email message. |
| BCC | Recipients of "blind carbon" copies of the email message. |
| DATESENT | Sent date and time of the email message. (Format: MM/DD/YYYY HH:MM TT) |

15

| DATERECEIVED | Received date and time of the email message. (Format: MM/DD/YYYY HH:MM TT) |
|---|---|
| CONVERSATION INDEX | Email thread identification value. |
| ORIGFILEPATH | The original file path for the native file. |
| DUPEFILEPATH | All file paths for the native file. |
| FILESIZE | Size of the native file, in bytes. |
| FILEEXT | File extension of the native file. |
| REDACTED | Y for any redacted document |

3. **TIFFs.** Producing Parties shall produce Documents and ESI in the form of single-page, black and white, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain original orientation (*i.e.*, portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder. If a Receiving Party reasonably deems the quality of the TIFF image to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the Document or ESI in Native Format, or as color JPEG image files. If a Receiving Party reasonably believes that a Document or ESI originally produced in black and white needs to be produced in color, it shall notify the Producing Party. The Parties agree to meet and confer in good faith concerning the re-production of such Document(s) or ESI in color or in native format, consistent with the terms set forth herein.

4. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted

16

instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

5. **Image Load Files / Data Load Files.** Image Load Files shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, PAGE COUNT. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

6. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

7. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

8. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

9. **Native File Production.** Except for Documents or ESI that are produced with redactions, a Producing Party shall produce Microsoft Excel and other

17

spreadsheet files, including comma or tab delimited text files, Microsoft Access files, and video or audio files in Native Format, if available. Each electronic file produced in native format shall be assigned a unique Bates Number, and the database record for that file shall include a single page TIFF image branded with this unique Bates Number, any confidentiality designation, and the phrase "PRODUCED IN NATIVE FORMAT." Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Schedule B.

10. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

11. **Production Media.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media shall also identify, or be accompanied by a cover letter that identifies: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media. Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

12. **Databases and Other Structured Data.** Notwithstanding the provisions of Paragraph 10 above, the parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring development of reports and/or software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view the ESI.