## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 18-1477-JLH-CJB |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| DUO SECURITY, INC. n/k/a DUO SECURITY | ) | |
| LLC and CISCO SYSTEMS, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

## [PROPOSED] FINAL PRETRIAL ORDER

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew M. Moshos (#6685)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
amoshos@potteranderson.com

*Attorneys for Plaintiff*
*CosmoKey Solutions GmbH & Co. KG*

Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants Duo Security LLC*
*f/k/a Duo Security, Inc. and Cisco Systems,*
*Inc.*

Dated:  April 30, 2025
Public Version Dated: May 14, 2025

## **TABLE OF CONTENTS**

I.     NATURE OF THE CASE ............................................................................................. 2

II.    STATEMENT OF THE FACTS THAT ARE ADMITTED AND REQUIRE NO PROOF ("UNCONTESTED FACTS")................................................................................. 7

III.   STATEMENTS OF THE ISSUES OF FACT THAT ANY PARTY CONTENDS REMAIN TO BE LITIGATED ("CONTESTED FACTS") ............................................. 7

IV.    STATEMENTS OF THE ISSUES OF LAW THAT ANY PARTY CONTENDS REMAIN TO BE LITIGATED ("ISSUES OF LAW") ................................................... 8

V.     EXHIBITS ............................................................................................................... 8

VI.    THE NAMES OF ALL WITNESSES A PARTY INTENDS TO CALL TO TESTIFY ("WITNESS LIST")............................................................................................... 16

VII.   BRIEF STATEMENTS OF INTENDED PROOFS....................................................... 21

VIII.  SETTLEMENT........................................................................................................ 21

IX.    MOTIONS *IN LIMINE* ........................................................................................... 22

X.     TRIAL DISCLOSURE SCHEDULE ......................................................................... 22

XI.    TRIAL .................................................................................................................. 32

XII.   OTHER MATTERS................................................................................................. 36

## <u>PROPOSED FINAL PRETRIAL ORDER</u>

On May 21, 2025, the Court will hold a pretrial conference pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16.3 in C.A. No. 18-1477-JLH-CJB.  D.I. 45 ¶ 22.  A 5-day jury trial is scheduled to begin on June 9, 2025.  *Id.* ¶ 26.  The parties submit for the Court's approval this proposed Pretrial Order governing the trial pursuant to District of Delaware Local Rule 16.3 and the Court's Scheduling Order (D.I. 45).  As set forth in Section XI.E below, the parties agree that Defendants' inequitable conduct defense is a matter to be tried to the bench, but disagree as to how and when that bench trial should occur.  The parties agree that the June 9, 2025 jury trial will include liability, willfulness, damages, and Defendants' defenses other than inequitable conduct.

**Plaintiff's Counsel**:  Plaintiff CosmoKey is represented by:

Scott T. Weingaertner
Stefan Mentzer
John Padro
Matthew Wisnieff
Lauren Kuehn Pelletier
Timothy Keegan
Arshjit Raince
Magdalin Peña
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800
sweingaertner@goodwinlaw.com
smentzer@goodwinlaw.com
jpadro@goodwinlaw.com
mwisnieff@goodwinlaw.com
lpelletier@goodwinlaw.com
tkeegan@goodwinlaw.com
araince@goodwinlaw.com
mpena@goodwinlaw.com

Farzad (Fred) Feyzi
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94603
Tel: (650) 752-3100
ffeyzi@goodwinlaw.com

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew M. Moshos (#6685)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
amoshos@potteranderson.com

**Defendants' Counsel**:  Defendants Duo and Cisco are represented by:

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
rjin@gibsondunn.com
csim@gibsondunn.com

Jaysen S. Chung
Julian Manasse-Boetani
Yana Nebuchina
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
(415) 393-8200
jschung@gibsondunn.com
jmanasse-boetani@gibsondunn.com

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
(949) 451-3800
nscharn@gibsondunn.com

Jennifer Ying (#5550)
Travis J. Murray (#6882)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

Elizabeth Moulton
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
(415) 773-53700

## I.    NATURE OF THE CASE

### A.    Background

1.    This is an action for patent infringement.  Plaintiff CosmoKey Solutions GmbH & Co. KG ("Plaintiff" or "CosmoKey") alleges that Defendants Duo Security LLC ("Duo") and Cisco Systems, Inc. ("Cisco") (collectively "Defendants") infringe claims 1-3, 5, and 8-12 of U.S. Patent No. 9,246,903 (the "'903 patent").

2.    CosmoKey alleges that Defendants infringe claims 1-3, 5, and 8-12 of the '903 patent by using, selling, offering to sell, making, and importing products that use Duo Push, including the Duo Free, Duo Federal, Duo Premier, Duo Advantage, and Duo Essentials

"Editions."[1] CosmoKey alleges that Defendants directly, indirectly, and willfully infringe the '903 patent. CosmoKey seeks monetary damages, as well as various other remedies, including trebling of damages, interest, reasonable attorney's fees and costs.

3.    Defendants deny that they directly, indirectly, and/or willfully infringe the '903 patent. Defendants also allege that, under Plaintiff's infringement read of the '903 patent, the features accused of infringement were already in internal commercial use or subject to an arm's length sale or commercial transfer in the United States more than one year before the effective filing date of the '903 patent. Defendants allege that the '903 patent is invalid, and further allege that to the extent Plaintiff's infringement read of the '903 patent is adopted, then such infringement read necessarily ensnares the prior art. Defendants further allege that the '903 patent is unenforceable due to inequitable conduct. Defendants contend that Plaintiff is not entitled to any monetary damages or any other relief. Defendants contend that they are entitled to reasonable attorneys' fees and costs.

4.    CosmoKey disputes Defendants allegations and defenses. As discussed below, CosmoKey disagrees that that trial will include any allegations regarding ensnarement.

**B.    The Parties**

5.    CosmoKey is a company organized and existing under the laws of the Federal Republic of Germany with its place of business at Niederfelderstrasse 19, Bielefeld, Germany 33611. CosmoKey previously was named Money and Data Protection Lizenz GmbH & Co. Kg and changed its name to CosmoKey Solutions GmbH & Co. KG during the course of this lawsuit.

---

[1] A "Duo Edition" is a pricing tier Defendants offer for certain sets of technical features. Other features included in the Duo Editions are accused of infringing to the extent they are used to provide, or are used with, Duo Push.

6.      Defendant Duo Security LLC is a Delaware limited liability company with a principal place of business at 123 North Ashley Street, Ann Arbor, Michigan, 48104.  Duo Security, Inc. was the predecessor entity to Duo Security LLC.

7.      Defendant Cisco Systems, Inc. is a Delaware corporation with a principal place of business at 170 West Tasman Drive, San Jose, California, 95143.

8.      Duo is a wholly-owned subsidiary of Cisco.  Cisco completed the acquisition of Duo on September 28, 2018.

**C.      Pleadings**

9.      The operative pleadings are CosmoKey's Second Amended Complaint for Patent Infringement, filed on April 3, 2023 (D.I. 62) and Defendants' Answer and Defenses to Plaintiff's Second Amended Complaint for Patent Infringement, filed on May 28, 2024 (D.I. 195).

10.      No party seeks to amend the pleadings at this time.

**D.      Jurisdiction**

11.      This is a civil action for patent infringement.  35 U.S.C. §1 *et seq.*  The jurisdiction of the Court is not disputed and is based on 28 U.S.C. §§ 1331, 1332, and 1338(a).  No party disputes personal jurisdiction in this action.

12.      No party contests venue in this action.

**E.      Procedural History**

13.      CosmoKey filed its original Complaint on September 25, 2018 against Duo Security, Inc., the predecessor company of Duo Security LLC.  Duo filed a motion to dismiss on November 16, 2018.  D.I. 9.  CosmoKey agreed to withdraw the Complaint and file an amended complaint, and the Court denied the motion to dismiss as moot.  CosmoKey filed an Amended Complaint on September 30, 2019 (D.I. 15).

14.    Duo moved for judgment on the pleadings under 35 U.S.C. § 101 on October 15, 2019.  D.I. 17.  Chief Judge Connolly granted Duo's motion on June 24, 2020.  D.I. 25.  CosmoKey appealed to the Federal Circuit.  D.I. 28.  The Federal Circuit reversed and remanded.  *CosmoKey Sols. GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091 (Fed. Cir. 2021).

15.    CosmoKey filed its Second Amended Complaint on April 3, 2023.  D.I. 62. CosmoKey added Cisco as a Defendant and alleged that both Defendants directly, jointly, indirectly, and willfully infringed the '903 patent.  CosmoKey requested, among other things, an award of compensatory damages adequate to compensate CosmoKey for Defendants' infringement of the '903 patent, pre-judgment and post-judgment interest on CosmoKey's award of compensatory damages, an order permanently enjoining Defendants from infringing the '903 patent, an order requiring Duo and Cisco to pay supplemental damages and interest to CosmoKey for all infringement and damages not presented at trial, and a judgment declaring this an exceptional case and award of attorneys' fees, costs and expenses pursuant to 35 U.S.C. § 285.

16.    Defendants moved to dismiss on April 21, 2023.  D.I. 67.  The Court denied the motion on May 13, 2024.  D.I. 186.

17.    Defendants filed their Answer to the Second Amended Complaint on May 28, 2024, asserting defenses of non-infringement (including under 35 U.S.C. § 273), invalidity and ineligibility, no willfulness and no enhanced damages and no attorneys' fees, adequate remedy at law, statutory limitation on damages (under 35 U.S.C. §§ 286 and 287), ensnarement, territoriality, inequitable conduct, and failure to state a claim.  D.I. 195.  Defendants requested, among other things, an award of attorneys' fees and costs under 35 U.S.C. § 285.

F. **Claim Construction**

18.   The Court held a *Markman* hearing on April 12, 2024.  The Court issued an oral opinion on April 15, 2024 and a written opinion on May 3, 2024.  D.I. 180.  The Court construed the terms in the '903 patent as follows:

| Term | Court's Construction |
|---|---|
| "ensuring" | "executing with certainty" |
| "the authentication function is normally inactive and is activated by the user only preliminarily for the transaction" | "the authentication function is normally inactive and is locally activated at the mobile device by the user only preliminarily for the transaction" |
| "said response from the second communication channel includes information that the authentication function is active" | No construction adopted at this time.[2] |
| "ensuring that said response from the second communication channel includes information that the authentication function is active, and" / "thereafter ensuring that the authentication function is automatically deactivated." | "ensuring that the authentication function is automatically deactivated" must occur after "ensuring that said response from the second communication channel includes information that the authentication function is active" |
| "the authentication function is automatically deactivated" | "the authentication function is deactivated without user involvement"<br><br>This construction does not preclude user involvement in activating the authentication function. |
| "location(s)" | "physical location(s)" |

---

[2] [Defendants Proposal: At the April 15, 2024 *Markman* hearing, the Court left open the possibility of construing this term later in the case, stating,  "I'm not going to adopt defendants' proposal at this stage. It is possible that some of the Court's constructions about other terms will clarify what the parties' infringement and validity positions are and we will have a better understanding of the theories once we get to the summary judgment stage. At that point, or after that point, we can have a discussion about whether we need to further construe this term and what the construction should be."  Tr. 11:6–14.][Plaintiff's Proposal: This statement is unnecessary as it was not part of the adopted claim construction nor is it related to any of the issues now before the Court.]

| | This construction can encompass the authentication device looking at a logical address, so long as that logical address corresponds to or is associated with a physical location. |
|---|---|
| "predetermined spatial relationship" | "predetermined relationship related to the physical locations of both the terminal and the mobile device" |

## II.    STATEMENT OF THE FACTS THAT ARE ADMITTED AND REQUIRE NO PROOF ("UNCONTESTED FACTS")

19.    The parties' Joint Statement of Uncontested Facts is attached as **Exhibit 1**.

20.    The parties agree that the  uncontested facts in **Exhibit 1** require no proof at trial and will become part of the evidentiary record in this case.  Subject to the Court's approval, any party, with prior notice to the other party, may read any or all of the uncontested facts to the jury or Court, as long as entire facts are read and will be charged for the time to do so.

21.    The parties reserve the right to modify or supplement the joint statement of uncontested facts to the extent necessary before they are entered into the evidentiary record to reflect fairly the Court's rulings on any motions or subsequent orders of the Court, or by agreement of the parties.

## III.    STATEMENTS OF THE ISSUES OF FACT THAT ANY PARTY CONTENDS REMAIN TO BE LITIGATED ("CONTESTED FACTS")

22.    Plaintiff's Statement of Contested Facts is attached as **Exhibit 2**.

23.    Defendants' Statement of Contested Facts is attached as **Exhibit 3**.

24.    The parties reserve the right to modify or supplement their statements of fact that remain to be litigated to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## IV.  STATEMENTS OF THE ISSUES OF LAW THAT ANY PARTY CONTENDS REMAIN TO BE LITIGATED ("ISSUES OF LAW")

25.  Plaintiff's Statement of Issues of Law is attached as **Exhibit 4**.

26.  Defendants' Statement of Issues of Law is attached as **Exhibit 5**.

27.  The parties reserve the right to modify or supplement their respective statements of issues of law that remain to be litigated to the extent necessary to reflect agreements between the parties or the Court's rulings on any motions or subsequent orders of the Court.

## V.  EXHIBITS

### A.  Exhibit Lists

28.  The parties' proposed joint jury trial exhibit list is attached as **Exhibit 6**.  The parties' joint trial exhibits will be identified by JTX numbers, starting with JTX0001.  Exhibits that the parties have included in the joint jury trial exhibit list and identified by JTX numbers have been included on the list because these documents appeared on each party's exhibit list. By agreeing to the inclusion of any document on the joint jury trial exhibit list, the parties do not waive any of their objections to the use of these documents by the opposing party.

29.  Plaintiff's jury trial Exhibit List, including Defendants' objections to Plaintiff's exhibits, is attached as **Exhibit 7**.  Plaintiff's bench trial Exhibit List, including Defendants' objections to Plaintiff's exhibits, is attached as **Exhibit 8**.  Plaintiff's trial exhibits will be identified with PTX numbers, starting with PTX0001.

30.  Defendants' trial Exhibit List, including Plaintiff's objections to Defendants' exhibits, is attached as **Exhibit 9**.  Defendants' trial exhibits will be identified with DTX numbers, starting with DTX001.

31.  Absent good cause shown, agreement of the parties, or leave of the Court, a party may not introduce at trial any exhibit not appearing on its list, another party's list, or on the parties'

joint exhibit list, except for exhibits used solely for impeachment and any Rule 1006 exhibits. Such impeachment exhibits, if not appearing on a party's exhibit list or the joint exhibit list, shall not be admissible unless good cause is shown. The parties will submit electronic copies of all trial exhibits to the Court in accordance with the Court's instructions.

32.    The parties will exchange all Rule 1006 exhibits no later than **12:00 pm Eastern Time** on the Thursday before trial begins. No Rule 1006 exhibit will be admitted into evidence until any objections are resolved by agreement between the parties or by the Court. The parties will bring the disputed evidence to the attention of the Court in accordance with the disclosure and objection schedule for exhibits as set forth below.

33.    [Reserved].

34.    The descriptions of the documents in **Exhibits 6**, **7**, **8**, and **9** are for the convenience of the parties and the Court only, and do not constitute admissions about the content or admissibility of the documents described, or other aspects of the documents. The parties agree that any description or date of a document or other material on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material. The parties further agree that failing to list a date is not evidence or an admission of whether the document is dated.

35.    The parties agree that either party may use any exhibit disclosed on either party's exhibit list to the same extent as those identified on its own exhibit list, subject to any objections by the party opposing such use.

36.    For the purposes of the inequitable conduct bench trial, any party may use any exhibits that either party originally disclosed on their exhibit list for the purposes of the jury trial, subject to any objections by the opposing party. For the jury trial, parties may not use exhibits that

are relevant to only to the inequitable conduct issues to be tried at the bench trial. As discussed in the briefing on CosmoKey's motion *in limine*, the parties disagree on whether certain evidence is relevant "only" to inequitable conduct. To the extent such disagreements are not resolved by the Court or the parties prior to the presentation of the evidence at issue to the jury (e.g., in connection with CosmoKey's motion *in limine*), the parties will bring the disputed evidence to the attention of the Court in accordance with the disclosure and objection schedule set forth below.

37.    Any exhibit, once admitted, may be used equally by any party subject to any limitations as to its admission into evidence. The listing of a document on a side's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side for the purpose that the opposing side wishes to enter the document into evidence. The fact that an exhibit is listed on a side's exhibit list does not mean that side believes the exhibit would be admissible if offered by the other side. If a party attempts to introduce an exhibit listed only on the other side's exhibit list, the listing side reserves the right to object to such introduction, and they need not list objections to their own exhibits as part of the Pretrial Order. In addition, each party reserves the right to make objections under Federal Rules of Evidence, including under Rules 104, 105, 602, and 802 to any evidence offered by the other side, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

38.    The parties agree that if any party removes or otherwise withdraws an exhibit from its exhibit list, the other party may use that same exhibit, regardless of whether the exhibit was originally on its exhibit list. The parties also agree that the parties may object to such exhibits, other than an objection based on untimely listing.

39.    A party's decision not to introduce any exhibit appearing on its list shall not be commented on during trial.

40.    The parties shall promptly meet and confer regarding replacing any poor quality print or digital copies of exhibits with substantively identical improved or higher quality or color copies.

41.    The parties have provided translations for documents with writing in a language other than English during fact discovery.  To the extent translations have been included for such documents, the translations must be listed on the parties' exhibit lists.  To the extent a party discovers that a translation has not been provided during fact discovery for a document the party intends to use as an exhibit at trial, a translation must be included for that document and served on the other party no later than **May 9, 2025**.  Objections to the form or substance of translations must be made by **May 19, 2025**.

42.    The parties agree that they will not dispute the authenticity of any document that was produced by the parties in connection with this case and that such documents shall be deemed *prima facie* authentic, subject to the right of the party against whom such a document is offered to adduce evidence to the contrary or to require the offering party to provide authenticating evidence if the opposing party has a reasonable basis to believe that the document is not authentic.  The parties reserve the right to object to the introduction into evidence of the documents and files referenced (in whole or in part) on all other grounds, including the admissibility of these documents for reasons other than challenging their authenticity.

**B.    Use of Exhibits**

43.    Unless otherwise stipulated among the parties, no exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit.  Should a party inadvertently fail to formally move an exhibit into evidence at the close of the witness's testimony,

the parties agree that such exhibits may be moved into evidence, subject to objection, promptly afterwards.

44.     Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence. [**Defendants' Proposal**: Notwithstanding the foregoing, pursuant to the procedures in Paragraph 95, an exhibit for which no objection remains pending at the time of opening statements may be shown to the jury by either party during opening statements if the exhibit will be the subject of witness testimony at trial.] Once admitted, counsel may publish exhibits to the jury without requesting to do so, subject to the confidentiality and sealing provisions of Paragraphs 141. Any exhibit, once admitted, may be used equally by each party, except that nothing in this Order shall be construed as a stipulation or admission that the document is entitled to any weight in deciding the merits of this case.

45.     Exhibits not objected to will be received into evidence without the need for additional foundation testimony, provided they are shown to a witness and moved into evidence as provided above.

46.     Legible photocopies of documents may be offered and received in evidence in lieu of originals, subject to all foundational requirements and other possible objections to the admissibility of originals.

47.     Exhibits may be introduced by video deposition testimony. Any party that has used an exhibit with the witness in the deposition and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by trial exhibit number.

48.     Subject to the objections of the opposing party, admissions by a party from any interrogatory responses, other discovery responses, or answers to pleadings may also be read into the record at trial, provided the party seeking to read such interrogatory responses, discovery

responses, or answers to pleadings complies with the exchange rules set forth herein and the Federal Rules of Evidence.

49.    Any exhibit, once admitted at trial, may be used equally by each party for any proper purpose in accordance with the Federal Rules of Evidence.

50.    The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the document.

51.    Each party reserves the right to object to the admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

52.    Exhibits that are United States patents, published patent applications, patent applications, and prosecution file histories shall be presumed authentic under Federal Rule of Evidence 901.

53.    Legible copies of the patent at issue and the contents of its U.S. Patent and Trademark Office file history as well as copies of United States patents and their corresponding applications may be offered and received in evidence in lieu of certified copies, subject to all other objections that might be made to the admissibility of certified copies.

54.    In order to reduce the number of duplicate exhibits, where a deposition excerpt references a document by exhibit number and that identical document was also marked with a different trial exhibit number, a party may substitute one exhibit for the other, provided the party provides notice of such substitution by **7:00 pm** the day prior to its use.

55.    Electronic versions of document exhibits in their native format, such as spreadsheets or presentations, may be offered into evidence in lieu of paper or PDF versions.

56.     None of these stipulations abrogates the requirement that the party offering an exhibit into evidence must satisfy any other rules governing the admissibility of evidence set forth in the Federal Rules of Evidence, the Federal Rules of Civil Procedure, this Court's Local Rules, the Court's practices, or any other applicable rule or regulation.  The parties shall meet and confer in good faith to resolve objections to trial exhibits prior to their introduction at trial.

57.     The parties shall meet and confer on the agreed-upon pretrial schedule regarding their respective objections in an effort to resolve all objections and issues prior to presenting them to the Court.

58.     At the conclusion of trial, the parties will jointly provide the Court with a binder and electronic set of the admitted exhibits.

### C.     Physical Exhibits

59.      At a mutually convenient time and place at least 3 calendar days before the first day of trial (i.e., the Friday before trial), the parties shall make available for inspection in Wilmington, Delaware or at another location agreed to by the parties any physical exhibits to be used at trial, labeled with an exhibit number, whether such physical exhibits will be admitted into evidence or used as demonstratives.  For purposes of clarity, such physical exhibits do not include document trial exhibits or graphical demonstratives, which are subject to the disclosure provisions above and below.  The provisions included in this paragraph are not intended as a waiver of any argument that a physical exhibit was not timely produced during discovery or properly included on the producing party's exhibit list.

60.     The parties shall provide a color representation in PDF form, such as a picture or photograph, of any physical demonstrative exhibit, identify the PDF as a representation of a

physical demonstrative, and make the physical demonstrative available for inspection as described above and below.

### D. Demonstratives

61.     The parties may use demonstrative exhibits, which do not need to be identified on their respective lists of trial exhibits.  Each demonstrative exhibit shall identify by exhibit number or Bates number all trial exhibits that form the basis of the demonstrative exhibit.  Demonstratives may be lodged with the Court at the end of trial, but are not considered evidence.  CosmoKey's demonstrative exhibits will be identified with PDX numbers, starting with PDX0001.  Defendants' demonstrative exhibits will be identified with DDX numbers, starting with DDX0001.

62.     The party shall provide a color representation of the demonstrative exhibits in PDF form in the order of intended use with slide numbers as they will be numbered for use at trial.  The PDF shall be provided in an identical clarity and resolution as to be used at trial.  Each party will exchange full color PDF files of demonstrative trial exhibits by e-mail in accordance with the schedules set out below.

63.     Any demonstrative exhibits that include video animations will be provided to the other side in an appropriate electronic format to view the video or animation.

64.     Demonstratives used only for closing argument and/or cross-examination do not need to be disclosed or provided to the other side in advance of their use.  [**Defendants' Proposal**: Demonstratives consisting solely of blow-ups, highlights, and similar representations of trial exhibits are not required to be provided to the other side in advance of their use under this provision.]

65.    The parties shall meet and confer on the agreed-upon pretrial schedule regarding their respective objections in an effort to resolve all objections and issues prior to presenting them to the Court.

## VI.    THE NAMES OF ALL WITNESSES A PARTY INTENDS TO CALL TO TESTIFY ("WITNESS LIST")

### A.    Witness Lists

66.    Plaintiff's Witness List and Defendants' objections are attached as **Exhibit 10**.

67.    Defendants' Witness list and Plaintiff's objections are attached as **Exhibit 11**.

68.    The listing of a witness on a party's witness list does not require that party to call that witness to testify, either in person or by deposition.

69.    A party reserves the right to call witnesses identified by the opposing party or additional witnesses for impeachment [Plaintiff's Proposal: or rebuttal] or to authenticate documents.

70.    The parties' witness lists represent the parties' good-faith understanding and expectation about which witnesses are expected to be called live in-person, or by deposition, at trial.  If a witness otherwise becomes unavailable for testifying live at trial, as that term is defined in the Federal Rules of Civil Procedure and Federal Rules of Evidence, each party reserves the right to call that witness by deposition, to the extent permitted under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  [Plaintiff's Proposal: Any change to present a witness by deposition rather than live at trial will only be permitted provided that deposition designations for that witness have been previously disclosed.  A party shall immediately notify the other party in the event it learns that a witness has become unavailable and must do so no later than two weeks before the first day of trial, unless the parties otherwise agree or good cause is shown.] [Defendants' Proposal: In such circumstances, for the witness who becomes unavailable,

a party may designate deposition testimony after the filing of this Order, and the parties may provide objections and counter-designations in accordance with the procedure followed for other deposition designations.  A party shall immediately notify the other party in the event it learns that a witness has become unavailable and allow the other party sufficient time to prepare objections and any counter-designations to such deposition testimony.]

71.    Notwithstanding any other provision in this pretrial order, the parties have agreed that each side will make the individuals who submitted expert reports regarding technical issues (*e.g.*, infringement and invalidity) or damages issues in this case available to testify at trial.  Neither side needs to designate the deposition testimony of the other side's experts.  If any expert is unavailable for trial, however, the party submitting a report for that expert agrees that the other party may submit a late designation of that expert's deposition testimony.

72.    Any witness not listed in the parties' witness lists in **Exhibits 10** and **11** will be precluded from testifying absent a showing of good cause.

**B.    Witnesses Testifying Live at Trial**

73.    Before they testify, fact witnesses shall be sequestered so that they do not hear the testimony of other witnesses.  However, in accordance with Fed. R. Evid. 615(b), this exclusion rule will not apply to the individual designated by each party as its representative.  Fact witnesses may be present in the courtroom during opening statements, but must exit thereafter, before witness testimony begins.  Expert witnesses are not excluded from the courtroom for either fact or expert testimony.

74.    The parties agree to identify their respective corporate representative by email exchange no less than two days before the first day of trial by **7:00 p.m.**

75.    [Plaintiff's Proposal: For any witness who will be made available to testify live at trial, the witness may be called by more than one party in their respective case-in-chief.  The party who first calls the witness will conduct a direct examination, followed by cross-examination by the opposing party, followed by redirect.  Any party that subsequently calls the same witness in its own case-in-chief may do so for the purpose of presenting additional, non-duplicative testimony. Notwithstanding the preceding sentence, parties may use videotaped deposition testimony as part of its case-in-chief and for purposes of impeachment, subject to the Federal Rules.  Either party may use for any purpose the opposing party's deposition testimony provided under Rule 30(b)(6), even if the deponent appears in person at trial and/or testifies live at trial.  *See* Fed. R. Civ. P. 32(a)(3).] [Defendants' Proposal: For any witness who will be made available to testify live at trial: (a) the witness will be called only once and will be called in the case-in-chief of the party sponsoring the witness; (b) the non-sponsoring party may exceed the scope of the sponsoring party's direct examination of the witness on cross-examination, and (c) the witness will not be presented by deposition by either party.  Notwithstanding the preceding sentence, parties may use videotaped deposition testimony for purposes of impeachment, subject to the Federal Rules. ]

76.    Plaintiff will have the right to hold its case-in-chief open to the extent it wants to include cross-examination of any of Defendants' witnesses in Plaintiff's case-in-chief.  Each side may present a motion under Rule 50 after the close of Plaintiff's case-in-chief, including after any cross-examination of Defendants' witness that was included in Plaintiff's case-in-chief.

### C.    Testimony by Deposition

77.    Plaintiff's Deposition Designations, along with Defendants' objections and counter-designations thereto, and Plaintiff's objections to the counter-designations and counter-counter designations, including Plaintiff's Deposition Designations on issues for which

Defendants bear the burden of proof, Defendants' objections and counter-designations thereto, and Plaintiff's objections to counter-designations and counter-counter designations are attached as **Exhibit 12**.

78.     Defendants' Deposition Designations, along with Plaintiff's objections and counter-designations thereto, and Defendants' objections to the counter-designations and counter-counter designations, are attached as **Exhibit 13**.

79.     If applicable, a party's designation of a page and line from a particular transcript shall be automatically deemed to include any errata indicated for that page and line in the attached errata sheets.

80.     This pretrial order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony.  None of the foregoing may be supplemented without approval of both parties or leave of the Court, on good cause shown, although the parties may object to deposition designations based on future Court rulings.

81.     Deposition testimony not specifically identified on a party's deposition designation list or exhibit list may be used at trial only for the purpose of impeachment, if otherwise competent for such purpose.  [Defendants' Proposal: Notwithstanding the foregoing, in accordance with Paragraph 70, parties may designate deposition testimony after the filing of this Order in the event a witness previously expected to testify live becomes unavailable, or for good cause.]

82.     The parties may offer some or all of the deposition testimony set forth in the attached exhibits at trial.  A party's decision not to introduce some or all of the testimony of a witness designated herein shall not be commented upon at trial.  If a party decides to play less than all the designated testimony for a witness at trial, or to include fewer than all of its counter-designations, the opposing party may use such dropped testimony as counter-designations to the

extent the usage of such testimony in such manner is otherwise consistent with Rule 106 of the Federal Rules of Evidence, Rule 32 of the Federal Rules of Civil Procedure, and any other applicable Federal Rule of Evidence or Federal Rule of Civil Procedure.

83.    Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as a counter-designation for fairness or completeness reasons, subject to all objections.  For convenience and sake of brevity, the parties have listed only new counter-designations in response to specific affirmative designations by the opposing party.  The parties reserve the right to also use any designations identified by either party as counter or counter-counter designations.  To the extent an opposing party withdraws any designated testimony, a party may present that testimony.  The Federal Rules of Civil Procedure and the Federal Rules of Evidence shall govern the admissibility of deposition testimony.

84.    If an exhibit is referenced in a deposition designation played at trial, the designating party may seek to admit the exhibit into evidence if it is included on a party's trial exhibit list, subject to the other party's objections.  If an exhibit is referenced in a deposition designation played at trial and the Court has not sustained an objection to the exhibit's admission into evidence, the designating or counter-designating party may display the exhibit to the jury alongside the video and highlight or enlarge portions of the exhibit on the screen that were discussed or referenced in the designation or counter-designation, respectively, as if the exhibit was being shown to a live testifying witness.

85.    If a party opts to introduce deposition testimony, the opposing party's counter-designations of that same witness's deposition testimony must also be presented at the same time.  Prior testimony designation excerpts, whether affirmative designations or counter-designations, will be played or read in the order they are found in that transcript.  When such excerpts are

introduced, all admissible counter-designation excerpts, whether offered by video or by transcript, will be introduced at the time the testimony is offered, subject to the resolution of any objections to the designated or counter-designated testimony.

86.    If playing deposition testimony by video, the deposition video shall include subtitles of the testimony at the bottom of the screen that matches the witness' testimony to the extent possible.

87.    For those witnesses whose depositions will be played or read, the parties shall be permitted to make brief transition statements to introduce the witnesses by name, position, or title, and/or the entity with which he or she is associated, the 30(b)(6) deposition topics for which the witness was designated (if any), the time for which shall be charged to the party offering the witness's testimony, unless otherwise agreed to by the parties.  However, counsel shall not be permitted to argue or comment on the evidence during transition statements.  The party offering the testimony by deposition shall provide a draft of the proposed transition statement at the time it provides its deposition designations in accordance with the schedule below in Section X.B.2.

88.    The parties reserve the right to call any witnesses identified as witnesses to testify via deposition in order to elicit live testimony in support of their case to the extent these witnesses are made available live at trial.

## VII.    BRIEF STATEMENTS OF INTENDED PROOFS

89.    CosmoKey's statement of intended proof at trial is attached as **Exhibit 14**.

90.    Defendants' Statement of Intended Proof is attached as **Exhibit 15**.

## VIII.    SETTLEMENT

91.    The parties certify that they have engaged in a good-faith effort to resolve the controversy by settlement, including through their good-faith effort to mediate pursuant to the Court's order.  D.I. 397.

## IX.     MOTIONS *IN LIMINE*

92.     Plaintiff's motions *in limine*, Defendants' oppositions, and Plaintiff's replies and any exhibits thereto are attached as **Exhibit 16**.

93.     Defendants' motions *in limine*, Plaintiff's oppositions, and Defendants' replies and any exhibits thereto are attached as **Exhibit 17**.

94.     Defendants have agreed not to refer to CosmoKey as a "non-practicing entity" or "NPE" or "patent troll."

## X.     TRIAL DISCLOSURE SCHEDULE

### A.     Exhibits and Demonstratives for Opening Statements

95.     If a party intends to use a demonstrative or an exhibit (or any portion of it) during its opening statement, the party shall disclose the demonstratives and lists of exhibits by **5:00 p.m.** **[Plaintiff's Proposal: two][Defendants' Proposal: one] day**[3] before opening statements. The opposing party will provide objections by **[Plaintiff's Proposal: 12:00 p.m.][Defendants' Proposal: 7:00 p.m.] one day** before opening statements.  The parties will meet and confer to resolve any objections to opening exhibits by **[Plaintiff's Proposal: 3:00 p.m.][Defendants' Proposal: 8:00 p.m.] one day** before opening statements (*i.e.*, the same day).

96.     If good faith efforts to resolve objections fail, the objecting party shall promptly bring to the Court's attention any outstanding objections by email to the Court (jlh_civil@ded.uscourts.gov) by **7:00 a.m.** the morning of opening statements.  The parties shall attach to the email digital copies of all objected to exhibits and provide a one- or two-sentence statement about the dispute.  The objecting party will provide the Court with two printed copies of the submission by **8:15 a.m.** that morning.

---

[3] As used in this Order, "day" means calendar day, unless otherwise specified.  All times are Eastern Time unless otherwise specified.

B. **Witnesses, Exhibits, and Demonstratives for Direct Examination**

1. **List of Witnesses**

97. **Sequestration of Witnesses**.  With the exception of expert witnesses and a corporate representative for each party, the parties agree that fact witnesses should be prevented from hearing the testimony of other witnesses pursuant to Federal Rule of Evidence 615.  Fact witnesses, however, may be present for the parties' opening statements.  Excluded witnesses will be prohibited from learning about, obtaining, or being provided with trial testimony of other witnesses.

98. Each side will provide the other with an updated good-faith list of witnesses it intends to call live at the trial seven days before the first day of trial by **7:00 p.m.**, without prejudice to the right to remove any such witness.  Except as set forth in this Order, no fact or expert witness called by a side shall be permitted to testify in its case-in-chief, responsive, or rebuttal case at trial if not identified in this Order (including exhibits to the Order), except for impeachment or to authenticate documents, unless the Court determines that good cause exists for calling an unlisted witness.  The listing of a witness on a side's witness list or inclusion of witness's deposition testimony on a party's list of deposition designations does not require the party to call that witness to testify live or by designation, and does not imply or establish the listed party has the power to compel the live testimony of that witness or make that witness available to the opposing party.

99. Once a side has identified a witness on its final list of witnesses it intends to call live, if the side later elects not to call that witness, it must make a good faith effort to make that witness available to be called by the other side, if the other side so chooses.  The other side may also elect to designate deposition testimony from the witness.

100.    A party will provide a list of witnesses that the party intends to call, the order the party expects to call the witnesses, and the method of testimony (*i.e.*, live or by deposition) by **7:00 p.m.** two days before the witnesses are expected to testify.  The parties' witness disclosures will reflect a good faith determination of the witnesses that the party will call.  The parties shall provide any objections to a witness by **7:00 p.m. one** day before the witness is expected to testify. The parties will meet and confer to resolve any objections to a witness by **10:00 p.m. one** day before the witness is expected to testify.

101.    If good faith efforts to resolve objections fail, the objecting party shall promptly bring to the Court's attention any outstanding objections via email to the Court (jlh_civil@ded.uscourts.gov) by **7:00 a.m.** the morning that the witness is to testify. The parties shall provide in the email a one- or two-sentence statement about the dispute.  The objecting party will provide the Court with two printed copies of the submission by **8:15 a.m.** that morning.

102.    Consistent with D. Del. LR 43.1, during adjournments in the trial including breaks during the trial and overnight, the offering party may discuss with a witness his or her testimony on direct examination until the witness is passed for cross-examination and cross-examination has commenced.  At that point, the party may not discuss with the witness his or her testimony until cross-examination [**Plaintiff's Proposal**: and any redirect] is complete.

### 2.    Deposition Testimony

103.    These designations cover witnesses the parties anticipate may testify via deposition. Provision of deposition designations does not preclude the right of either party to call any listed witness live, subject to the disclosure provisions of the form of witness testimony outlined in this Order.

104.     All objections and attorney colloquy will be eliminated from the deposition designations when the designations are read to or viewed by the jury.

105.     If a party intends to call a witness at trial by deposition testimony, the party shall identify its deposition designations for that witness by **7:00 p.m. three days before** the day the party expects to read or play the deposition testimony. The parties' disclosures will reflect a good faith determination of the deposition testimony that they will actually offer at trial. A party may not play deposition testimony, except for purposes of impeachment, not disclosed in its designations attached to this Pretrial Order (**Exhibits 12** and **13**), except as provided in the Order, including at paragraphs 81, 82, and 83, or otherwise agreed by the parties. The identification of deposition designations (as well as counter-designations) shall include an (a) identification of the specific pages and lines of the witness's deposition testimony that the party expects to read or play, (b) identification of each trial exhibit that the party seeks to introduce with that testimony, (c) provision of an estimate of the time the testimony will take to read or play, and (d) any transition statement to introduce the witness including the identification of the 30(b)(6) topics, if any, for which the witness was designated. The other party shall then provide any objections to the identified testimony and exhibits and identify its counter-designations to the identified testimony by **7:00 p.m. two days before** the day the deposition testimony is expected to be read or played. The parties will meet and confer to resolve any objections to deposition testimony by **10:00 p.m. two days before**, *i.e.*, the same day, the deposition testimony is expected to be read or played.

106.     Where a party has unresolved objections relating to the testimony of a witness called to testify by deposition at trial, by **6:00 p.m. the day before** the witness is going to be called, the party objecting to the testimony shall provide the Court with two copies of the entire deposition transcript with highlights of the designations and counter designations that will be read

25

or played, a box around any objected-to testimony, and a concise indication in the margin of the

pending objections (e.g., "402").  The party objecting to the testimony shall also provide a cover

letter that includes a chart with any pending objections and a one-sentence basis for the objection

and a one-sentence response to the objection.

107.    Either side may withdraw a designation at any time, particularly as the Court may

resolve disputes about designated testimony on the day on which it is to be read or played.  The

sides will work together in good faith to ensure that both sides can adjust designations or counter-

designations accordingly.

108.    For those witnesses whose prior deposition or trial testimony will be read or played

to the jury, the parties shall be permitted to make brief transition statements to introduce the

witnesses and their role in the litigation.  However, counsel shall not be permitted to argue or

comment on the evidence during transition statements.  Any transitional statements must be

disclosed at the same time the parties disclose the prior deposition or trial testimony to be read or

played.

109.    On the day the testimony is to be played, the party calling the witness shall provide

an additional copy for the court reporter, the opposing party, and the Court.

110.    If a party decides to play less than all of the designated testimony for a witness at

trial, or to include less than all of its counter-designations, the opposing parties may use such

dropped testimony as counter-designations to the extent the usage of such testimony in such

manner is otherwise consistent with Federal Rule of Evidence 106, Federal Rule of Civil Procedure

32, and any other applicable Federal Rule of Evidence or Federal Rule of Civil Procedure.

111.    The party introducing the deposition testimony will be responsible for editing the

deposition video to include the testimony and counter-designated testimony, minus attorney

objections, and will provide the final edited video to the other party by **7:00 p.m. one day before** the deposition testimony is to be played to the jury. The exchange format consists of: (a) a download link to the Video file; and (b) PDF Clip Report for each witness (cover page to include total run time, Plaintiff's Designation Run Times, Defendants' Designation Run Times, and a listing of exhibits included in the testimony). Objections to the video shall be provided no later than **9:00 p.m. one day before** the testimony will be introduced.

112. The deposition video will include subtitles of the testimony at the bottom of the screen that matches the witness's testimony. All irrelevant material, including colloquy between counsel and objections, will be eliminated when the deposition is played or read. If a party is designating deposition testimony from multiple depositions of the same witness, the designating party may choose what order to play the videos from those depositions. The witness's designated testimony from each deposition shall be played or read in chronological order in its entirety before the designations from the next deposition are begun. The chronological order requirement does not apply to the use of deposition transcripts or video for impeachment purposes.

113. The party calling the witness by deposition will be responsible for calculating, and will provide the Court, by the end of the day that the testimony is played, an accounting of the time for each party's designations based on the parties' proportional share of lines of testimony for read-in testimony and by actual time for video testimony so that the Court may accurately charge time to the designating party.

114. The time available for each side's trial presentation shall be reduced by the length of its designations and counter-designations actually played or read at trial.

115. The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment of a witness. Any deposition

testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

### 3.     Trial Exhibits for Direct Examination

116.     A party will provide a list of trial exhibits to be used in connection with direct examination, including indicating with which witness the trial exhibits will be used by **7:00 p.m. [Plaintiff's Proposal: two days][Defendants' Proposal: one day]** before their intended use.  The parties' disclosures will reflect a good faith determination of the exhibits that will be used with a particular witness, and reasonable efforts will be made to streamline disclosures such that they include few, if any, exhibits that do not ultimately get used with the witness.[4]  The parties shall provide any objections to trial exhibits by **[Plaintiff's Proposal: 7:00 p.m. one day]** **[Defendants' Proposal: 9:00 p.m. one day]**before their intended use.  The parties will meet and confer to

---

[4]**[Plaintiff's proposal**: The parties will meet and confer in advance of the Pretrial Conference and attempt to streamline the number of exhibits and eliminate objections.  Specifically, Defendants have objected to every single document and have refused to withdraw objections even though they have agreed they have no basis for those objections.  These include objections to the authenticity and foundation of the patent, the source code Defendants produced, and even Defendants' own websites.  During the meet and confer prior to submitting this pretrial order, Defendants confirmed they would not stand on these objections, but would not withdraw them at this point.  To allow the parties to revise their lists, Defendants must first remove unsubstantiated objections from their list so we can further narrow the documents for trial.]  [**Defendants' proposal**: CosmoKey has disclosed 1,456 trial exhibits.  Defendants have disclosed 863.  Defendants propose that CosmoKey narrows its exhibit list in advance of trial to represent a good-faith list of the exhibits it intends to use at trial.  The parties will meet and confer in advance of the Pretrial Conference and attempt to streamline the number of exhibits.  It is not reasonable for Defendants to adjust objections to nearly 1,500 exhibits.  Once the exhibit list number is narrowed to a good-faith list, Defendants will narrow their objections.  Further, Plaintiff's characterization of Defendants' objections and the parties' conference is inaccurate.  As explained on the parties' conference, whether objections are maintained at the time of trial depends on, *inter alia*, the manner in which CosmoKey seeks to introduce an exhibit and the purpose for which the exhibit is offered.]

resolve any objections to trial exhibits to be used for direct examination by **10:00 p.m.** one day before their intended use.

117.    If good faith efforts to resolve objections fail, the objecting party shall promptly bring to the Court's attention any outstanding objections by email to the Court (jlh_civil@ded.uscourts.gov) by **7:00 a.m.** the morning that the evidence is to be presented.  The parties shall attach to the email digital copies of all relevant exhibits and provide a one- or two-sentence statement about the dispute.  The objecting party will provide the Court with two printed copies of the submission by **8:15 a.m.** that morning.

### 4.    Demonstrative Exhibits for Direct Examination

118.    A party will provide non-physical and physical demonstrative exhibits to be used in connection with direct examination, including indicating with which witness the demonstrative exhibits will be used by **7:00 p.m.** one day before their intended use. The parties shall provide any objections to demonstrative exhibits by **9:00 p.m.** one day before their intended use. The parties will meet and confer to resolve any objections to demonstrative exhibits to be used for direct examination by **10:00 p.m.** one day before their intended use.

119.    Demonstratives used only for cross-examination or closing arguments do not need to be disclosed.  **[Defendants' Proposal**: Demonstratives consisting solely of blow-ups, highlights, and similar representations of trial exhibits are not required to be provided to the other side in advance of their use under this provision.]

120.    A party disclosing physical demonstratives will provide a color PDF rendering of the demonstrative (such as a photograph, picture, or similar).

121.    If good faith efforts to resolve objections fail, the objecting party shall promptly bring to the Court's attention any outstanding objections via email to the Court

(jlh_civil@ded.uscourts.gov) by **7:00 a.m.** the morning that the evidence is to be presented. The parties shall attach to the email digital copies of all relevant demonstratives and provide a one- or two-sentence statement about the dispute. The objecting party will provide the Court with two printed copies of the submission by **8:15 a.m.** that morning.

122.     The party disclosing the demonstrative exhibits shall identify and disclose all trial exhibits that are incorporated into or referenced in any way in the demonstratives at the same time the party discloses the demonstrative exhibit. The disclosure shall identify which exhibits are used in which demonstratives, either separately or within the demonstratives themselves.

123.     The party shall provide a color representation of the demonstrative exhibit in PDF form in the order of intended use with slide numbers as they will be numbered for use at trial. The PDF shall be provided in an identical clarity and resolution as to be used at trial. Any demonstrative exhibits that include video animations will be provided to the other side via a secure file share link in a manner that allows the receiving party to play the video in the demonstrative.

124.     The parties may make reasonable, non-substantive edits or corrections of typographical and similar errors to a demonstrative provided that the party promptly notify the opposing party of the changes to provide the opposing party with reasonable notice of the changes before the demonstrative exhibit is presented to the jury.

### 5.     Witness Binders

125.     The parties agree to provide witness binders for each fact and expert witness for direct examination. Prior to the start of direct examination of a particular witness, the party conducting the direct examination will provide at least two copies to the opposing party at the

same time the binder is presented to the witness. Two additional copies of such binders must be provided to the Court at the time they are provided to the witness.

### 6.    Cross Examination

126.    The parties will not exchange trial or demonstrative exhibits to be used in cross examination until cross examination begins. Documents, deposition transcripts, or other items (or portions of them) may still be used for cross examination, impeachment, or rehabilitation, if otherwise competent for such purposes.

127.    The party conducting cross examination must provide a binder to the witness with all of the exhibits the cross-examining party expects it may use with the witness. The party conducting cross examination must provide two copies of that binder to the Court and two copies to the opposing party when the party conducting cross examination provides the binder to the witness.

### C.    Party Opponent Statements

128.    A party shall provide any statement by a party opponent in any pleading, request for admission response, interrogatory response, previous trial testimony, or the Joint Statement of Admitted Facts (or portion of them) (**Exhibit 1**) that it intends to read in by **7:00 p.m.** **[Plaintiff's Proposal: two days]**[Defendants' Proposal: one day] before their intended use. The statement shall be provided in the form of its intended use (*e.g.*, any excerption or redaction applied). The parties shall provide any objections by **[Plaintiff's Proposal: 7:00 p.m. two days]**[Defendants' Proposal: 9:00 p.m. one day] before their intended use. The parties will meet and confer to resolve any objections by **10:00 p.m.** **[Plaintiff's Proposal: two days]**[Defendants' Proposal: one day] day before their intended use.

129.    If good faith efforts to resolve objections fail, the objecting party shall promptly bring to the Court's attention any outstanding objections by email to the Court (jlh_civil@ded.uscourts.gov) by **7:00 a.m.** the morning that the evidence is to be presented.  The parties shall attach to the email digital copies of the document the party intends to read or otherwise present at trial and provide a one- or two-sentence statement about the dispute.  The objecting party will provide the Court with two printed copies of the submission by **8:15 a.m.** that morning.

130.    This provision does not limit the scope of materials or statements that may be used during cross-examination or require the disclosure of any materials or statements that are used during cross-examination.

## XI.    TRIAL

### A.    Length of Trial.

131.    The trials will be timed.  The Courtroom Deputy will keep a running total of trial time used by counsel.

132.    Unless otherwise ordered, time will be charged to a party for its opening statement, its direct, cross, and re-direct examinations of any witness, and its closing argument.

133.    For the jury trial, each side shall be allotted **[Plaintiff's Proposal: 12 (twelve)] [Defendants' Proposal: 13.5 (thirteen-and-a-half)]** hours for opening statements, closing arguments, all direct, cross and rebuttal examinations, and all deposition designations.  Opening statements shall be limited to a maximum of 45 (forty-five) minutes.  Closing statements shall be limited to a maximum of 1 (one) hour **[Defendants' Proposal: inclusive of any rebuttal closing by Plaintiff.]**

134.    For the bench trial, each side shall be allocated **[Plaintiff's Proposal: 2 (two)] [Defendants' Proposal: 3.5 (three-and-a-half) hours]** for opening statements, closing arguments, all direct, cross and rebuttal examinations, and all deposition designations.

[**Defendants' Proposal**: To the extent the Court is concerned about the feasibility of 27 hours in total for the jury trial and 7 hours in total for the inequitable conduct bench trial, Defendants propose that the time allotted for the bench trial may be taken from the total time allotted for the jury trial.] [**Plaintiff's Response:** Given the limited time, CosmoKey does not believe 27 hours is feasible within a five day trial without prejudice to CosmoKey and the jury trial issues. CosmoKey continues to believe a separate trial on inequitable conduct is the only workable solution but also objects to the loss of time in presenting its jury case based on defenses raised by Defendants.]

135.     Evidence and testimony presented in the jury trial will become part of the bench trial record.  Evidence and testimony presented in the bench trial will not become part of the jury trial record.

**B.     Order of Proof at Trial**

136.     The parties have agreed on the following order of proof at trial for the jury trial:

- Plaintiff's Opening Statement;

- Defendants' Opening Statement;

- Plaintiff's case-in-chief on patent infringement and damages;

- Defendants' rebuttal to Plaintiff's case-in-chief on patent infringement and damages, and Defendants' case-in-chief on invalidity and other defenses

- Plaintiff's rebuttal to Defendants' case-in-chief on invalidity

- Plaintiff's closing argument

- Defendants' closing argument

- Plaintiff's closing argument reply

137.     Trial counsel are to be present and ready to proceed no later than **8:30 am** every trial day.  Issues that need to be addressed outside the presence of the jury will be taken up at **8:30 am** (subject to the Court's availability).

### C.     Notice of Intention to Rest

138.     By 6:30 p.m. the night before it intends to rest its case, the resting party shall give the other party notice of its intention to rest.  This notice is intended to ensure that the parties have an opportunity to comply with the other provisions of this Order.

### D.     Jury Selection

139.     The parties request that subject to the Court's availability jury selection take place on the Friday before the jury trial is set to begin.

### E.     Timing of Inequitable Conduct Trial (Bench)

140.     The parties agree that Defendants' inequitable conduct defense should be tried to the bench.  The parties disagree as to when that bench trial should occur.

**Plaintiff's Position**: CosmoKey's position is that if inequitable conduct remains before the Court, it should be heard at a time separate from and later than infringement liability, validity, and damages.  CosmoKey maintains that trying inequitable conduct at the same time as liability, validity, and damages is not efficient and would be unduly prejudicial to CosmoKey.  This is because the witnesses for inequitable conduct are not relevant to other issues at trial and trial is limited to 5 days.  Defendants' proposed schedule highlights the difficulty of providing 34 total hours of Court time in a five day period.  Moreover, any specific inequitable conduct testimony can be provided remotely or by deposition as needed.  In any case, Defendants' allegations lack merit, as CosmoKey previously informed the Court in detail.  *See* D.I. 356 (requesting leave to file summary judgment on Defendants' inequitable conduct defense due to lack of intent and

materiality).  In response to CosmoKey's request for summary judgment, Defendants claimed the issues were not ripe due to outstanding discovery of CosmoKey's prosecution counsel.  D.I. 373 at 1. This discovery has since been completed, and any outstanding discovery disputes have been resolved.  Defendants' inequitable conduct allegations are more appropriately addressed, if at all, through briefing and motion practice.  The parties have nevertheless set out their respective pre-trial disclosures pertaining to inequitable conduct in the parties' submissions now in separate respective sections.  CosmoKey proposes that the parties meet and confer after receiving the jury's verdict to assess whether Defendants' inequitable conduct defense should still be heard, and whether there are any dispositive issues to be raised to narrow any such trial.  As discussed above, CosmoKey does not believe that 27 hours is feasible within a five day trial without prejudice to CosmoKey's trial presentation.  Defendants' proposal to deduct further time from the jury trial to use for the inequitable conduct bench trial is likely to further prejudice CosmoKey.

**Defendants' Position**:  Defendants respectfully submit that an evidentiary hearing is necessary because inequitable conduct requires intent and therefore a credibility determination. Defendants understand that this Court's practice is to address bench trial issues before or after hours during the same days / week as the jury trial.  Defendants further disagree with CosmoKey's position that trying the inequitable conduct defense during the week of the jury trial is inefficient. To the contrary, it would conserve Court, witness, and party resources to try the inequitable conduct defense at the same time as liability, validity, and damages.  First, the witnesses Defendants expect to call live for inequitable conduct (Dominic Adenuga, Kevin Jeffay, and Benjamin Goldberg) are already expected to testify live during the jury trial.  Second, Defendants understand that one of CosmoKey's responses to the inequitable conduct allegation is that Dominic Adenuga believed the information he knew regarding Duo, its technology, and related patent

35

applications was not material to patentability of the '903 patent.  If credited, this is evidence that Defendants do not infringe the '903 patent, among other issues to be decided by the jury.  As noted above, to the extent the Court is concerned about the feasibility of 27 hours in total for the jury trial and 7 hours in total for the inequitable conduct bench trial, the Defendants propose that the time allotted for the bench trial may be taken from the total time allotted for the jury trial.]

## XII.  OTHER MATTERS

141.  **Jury Binders.**  On the first day of trial, each member of the jury will be provided a binder prepared by the parties containing copies of any agreed-upon documents (including CosmoKey's '903 patent, a chart listing the Court's claim constructions, and any agreed-upon glossary of terms) and a notepad and pen for notes.  The parties will provide witness pages for the jurors to insert in the notebooks at the start of each day when witnesses will be called.  The witness page will be an otherwise blank (or lined) page with the name, title, and agreed-upon photographs of the witness.  The parties will also provide the Court two copies of notebooks given to the jurors.

142.  The parties stipulate that the Federal Judicial Center's video entitled "The Patent Process: An Overview for Jurors" will be played as part of the Court's preliminary jury instructions after the jury has been seated.  *See*  https://www.fjc.gov/publications/patent-process-overviewjurors.  The parties will provide the seated jurors with copies of the sample patent referenced in the Federal Judicial Center's patent video.  Time to play the video will not be charged to any party.

143.  **Jury Notes**.  The parties agree that the jurors be permitted to take handwritten notes during the presentations of the parties and these may be taken with them into the deliberation room.  The parties further request that jurors be instructed not to share their respective notebooks with each other and that the notebooks be collected and destroyed after the verdict without review.

144.    **Handling of Confidential Information at Trial**.  The parties anticipate that the majority of the trial will be open to the public and not sealed unless a party specifically requests sealing.  If a party makes such a request, subject to the Court's approval, and for good cause shown, the courtroom shall be cleared of those individuals not qualified under the Protective Order entered in this case, except that each party's corporate representative may remain in the courtroom throughout the entirety of trial.  To the extent such documents are admitted into evidence or published to the jury at trial on monitors while the trial is open to the public, this shall not constitute a violation of the Protective Order.

145.    Use at trial of protected materials shall not waive protections attributed to protected materials under the Protective Order entered in this case at D.I. 57, except that the parties will not seek to redact from the trial transcript testimony provided in open court even if it concerns protected materials under the Protective Order. Further, for avoidance of doubt, the Protective Order remains effective at the conclusion of trial.

146.    The parties may use source code as exhibits at trial, including as demonstrative exhibits.  The parties shall in good faith endeavor to limit any presentation of source code to what needs to be used with a witness for purposes of their examination.

147.    [**Plaintiff's Proposal:** Source code may be offered into evidence in the format in which it is compiled and disclosed as an exhibit either on Plaintiff's Exhibit List, Defendants' Exhibit List, or the parties' Joint Exhibit List.  The parties may offer into evidence printed source code hard copies or their electronic image. The parties are not limited to only offering into evidence the specific code files or source code pages discussed at trial.] [**Defendants' Proposal:** Only the specific code files or source code pages discussed at trial may be offered into evidence to become part of the record, not the entirety of the printed source code hard copies or their electronic image.]

148.    [**Plaintiff's Proposal**: Defendants have stipulated regarding the relationship between Cisco and Duo's source code.  D.I. 252; D.I. 253.  This stipulation will also be introduced as an exhibit at trial and is attached to this order as **Exhibit 18**.  Defendants' objection to introducing this stipulation as an exhibit is unfounded because stipulations relating solely to facts are routinely introduced as exhibits as evidence and the risk of confusion here is low.  This stipulation provides important facts regarding the relationship between Cisco and Duo's source code that will aid the jury in determining whether Defendants have infringed the '903 Patent.  The specific stipulation was entered into in lieu of Defendants providing clearly relevant discovery.  It is manifestly prejudicial to CosmoKey to seek to limit the use of that evidence.  Moreover, the risk of confusion here is low because the stipulation contains only agreed-upon facts.  Even if there was any risk of confusion, it would be substantially outweighed by the probative value provided by this stipulation.   Defendants' "guardrail" proposal fails to address these issues and is unworkable and prejudicial to CosmoKey.]  [**Defendants' Proposal**: Defendants object to the introduction of D.I. 252 as an exhibit as confusing to the jury and unduly prejudicial to the Defendants.  The jury is likely to be confused about the meaning and import of this document and may assign to it unwarranted and inappropriate meanings and significance.   For example, stipulation number 3, "Defendants will not assert that Cisco Accused Products do not infringe based on any implementation of the Cisco Accused Products other than the reasons that Duo's APIs and Duo Accused Products do not infringe," is likely to confuse the jury on Defendants' non-infringement positions and prejudice Defendants.  Defendants propose that D.I. 252 serve as a guardrail for witness testimony, such that the parties may rely on the stipulation as the basis for an objection, sidebar, and/or cross-examination or Court instruction if a witness's testimony contradicts the stipulated points.]

150.    Insofar as the Protective Order restricts the dissemination and use of any material, such restrictions shall not apply to the introduction of evidence at trial, including source code.

151.    **Jury Consultants.**  The parties may have their respective jury consultants present during the totality of voir dire and trial.

152.    **Set-Up of Electronic and Computer Equipment**.  The parties request that the Court grant them access to the Courtroom the business day before trial begins, to allow them to set up electronic and computer devices to be used during trial.

153.    **Witness Names and Glossary**.  On or before **June 6, 2025**, the parties must jointly provide a list of witness names and a glossary of technical terms for the court reporter.

154.    **Judgment as a Matter of Law**.  The parties propose that motions for judgment as a matter of law be made and argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed.  The moving party shall argue its motion orally out of the presence of the jurors at the earliest opportunity allowed by the Court.  The Court will determine, based on the motions, whether to entertain further argument or to require written submissions.

155.    **Supplemental Financial Data.**  Defendants will be producing supplemental financial discovery that the parties intend to list on their exhibit lists, specifically Defendants' updated financial statements through to the end of April 2025.  The parties agree that both parties will be afforded the opportunity to include these materials in their exhibit lists upon receipt of the supplemental financial discovery and neither will object to the inclusion of these documents on each party's respective exhibit list after the filing of the parties' pre-trial order on April 30.

156.    **Pending motions to be resolved.**  The following motions remain pending:

- Defendants' summary judgment motion (D.I. 418);

- The parties' pending *Daubert* motions (D.I. 325, 327, 332, 335);

- CosmoKey's Motion to Strike (D.I. 423);

- CosmoKey's Rule 72 Objections to J. Burke's Order on CosmoKey's Motion for Sanctions (D.I. 413).

157. **Substantive PTO Issues to be resolved.**

- **Ensnarement.** In connection with the pretrial submissions, Defendants have indicated that they intend to assert an ensnarement defense in response to the allegations of infringement under the doctrine of equivalents. [**Plaintiff's Positions:** No such defense was disclosed during expert discovery and the inclusion of such defenses at trial is improper. Defendants have been unable to identify any such disclosure in their expert reports and instead suggest that the theory "tracks the broader theories of the case." CosmoKey disagrees with Defendants' assertions in their Statement of Contested Facts (Ex. 3, p. 4n2) and Statement of Law (Ex. 5, p.4, n.2) that Defendants properly disclosed the bases for this defense, including which doctrine of equivalents theories the defense is pertaining to and what specific prior art Defendants contend has been ensnared. Defendants' identification of two paragraphs in Dr. Jeffay's reply expert report likewise fail to disclose an ensnarement defense. Defendants misapply the ensnarement and have failed to raise such a defense as required by law. CosmoKey has asked Defendants to drop such a belated theory but they have yet to agree to do so. CosmoKey asks that these issues be precluded from trial or that it be given leave to submit a motion to strike such disclosure if it remains listed in Defendants' statements of the issues of fact and law.] [**Defendants' Positions:** CosmoKey

40

cannot claim surprise at Defendants' ensnarement defense: Defendants asserted ensnarement as a defense in their answer and discussed the ensnarement defense in their May 13, 2024 and June 28, 2024 Supplemental Responses to CosmoKey's Interrogatory No. 5. Defendants' technical expert, Dr. Jeffay, has explained repeatedly that CosmoKey's apparent interpretation of the Asserted Claims, whether literally or under the doctrine of equivalents, encompasses the prior art. For example, Dr. Jeffay explained in paragraph 18 of his Reply Invalidity Report (D.I. 435) that "███████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████." *See also, id.*, at ¶ 20. Dr. Jeffay also opined that CosmoKey was ██████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████. D.I. 435, Jeffay Rebuttal Infringement Report at ¶ 160; *see also, id.*, at ¶ 236 (similar). Defendants repeated as recently as their March 2025 Motion for Summary Judgment Reply that CosmoKey's doctrine of equivalents theories were an attempt to reclaim claim interpretations that would read on prior art. D.I. 442 at 12.]

- **Obviousness Combinations.** In connection with the pretrial submissions, Defendants have indicated that they intend to assert certain obviousness

41

combinations that CosmoKey disputes were previously disclosed. [**Plaintiff's Position:** Defendants failed to properly disclose in fact and expert discovery obviousness combinations that Defendants have now included in their Statement of Contested Facts and Statement of Issues of Law. Dr. Jeffay's expert reports do not disclose, including in the passages Defendants seek to point to as evidence of a disclosure, the following obviousness combinations that Defendants now identify and intend to rely on. For example, "Duo Push 2010 System, Oberheide '230, and/or Labrou," "Oberheide '230, PhoneFactor, and/or Labrou," "Labrou, Williams, and/or PhoneFactor," "Oberheide '230, Oberheide '535, and/or Labrou,"and "Labrou and Zettner." And even though the obviousness combinations referenced by Defendants in their position are deficient generally, they fail to show the combination of multiple references as they now contend.]

[**Defendants' Positions**: Defendants' invalidity expert, Dr. Jeffay, provided detailed opinions explaining how the Asserted Claims would have been found obvious based on the prior art references Defendants have identified in their Statement of Contested Facts (including by explaining a POSITA's motivation to combine the references). For example, Dr. Jeffay explained how Duo Push 2010 rendered obvious the Asserted Claims in combination with Labrou at paragraphs 337–350 of his Opening Invalidity Report. D.I. 434-1. Dr. Jeffay explained how Duo Push 2010 and Oberheide '230 rendered obvious the Asserted Claims at paragraphs 364–376, and how Oberheide '230 and Labrou rendered obvious the Asserted Claims at paragraphs 728–738. *See also*, D.I. 434-1, Opening Invalidity Report of Dr. Jeffay at pp. 114–152 (obviousness analysis centered on Duo Push

42

2010); 115–117 (Zettner) 163–181 (Dispensa); 282–303 (Labrou); 356–372 (PhoneFactor); 408–419 (Oberheide '230); 471–478 (Oberheide '535); 502–504 (Williams).]

- **Potential Live Testimony of Dug Song.** In connection with the pretrial submissions, Defendants have identified Mr. Song as a potential "may call" live witness. [**Plaintiff's positions:** As an initial matter, Defendants have refused to say whether Mr. Song *will* appear at trial and provided no explanation why they have they cannot or any information on his availability or related issues. In any case, allowing Mr. Song to testify at trial without having been deposed during the course of discovery is deeply prejudicial to CosmoKey. Despite repeated requests, Defendants refused to make Mr. Song's available for deposition—despite time remaining in the fact discovery period—after the initial date for his deposition had to be rescheduled due to weather-related circumstances. As a result, neither CosmoKey nor the jury will have the benefit of deposition testimony to challenge the substance of Mr. Song's trial testimony, if he appears live. *See In re Alpine Partners (BVI) L.P.*, No. 24-cv-337, 2024 WL 4336824, at *4 (D.N.J. Sept. 24, 2024) ("voluntary trial testimony is not a replacement for pretrial deposition testimony, which has an 'independent purpose of discovering evidence and preserving testimony in a manner that cannot be accomplished at trial.'" (citation omitted)). Defendants' vague offer of a deposition of Mr. Song for less than half the time provided for in the Federal Rules is insufficient to prevent the prejudice that CosmoKey will face if Mr. Song can testify because it will still not provide CosmoKey with the full deposition it was entitled to during fact discovery and to

be appropriately used and determined prior to expert submissions. CosmoKey never agreed to not pursue this deposition or allow the use of such testimony in the manner Defendants now indicate they may pursue. Defendants should not be permitted to benefit from gamesmanship to insulate Mr. Song from having his testimony tested like the other witnesses in this case. Accordingly, CosmoKey objects to Mr. Song's inclusion on Defendants' witness list and any attempts to call him to testify.] **[Defendants' Positions**: CosmoKey had the opportunity to take Mr. Song's deposition during fact discovery. Indeed, Mr. Song's deposition was scheduled for August 8, 2024, but CosmoKey unilaterally cancelled the deposition a day before it was scheduled. Though CosmoKey claims cancellation was required because of weather-related circumstances, it does not explain why the deposition could not proceed remotely, despite Defendants' offer to do so and explicit statement that Mr. Song, a third-party witness, would not be available at a later date. In an August 8, 2024 email, Defendants explicitly reserved the right to call Mr. Song as a witness at trial and stated that Defendants would not object to a three-hour deposition of Mr. Song shortly before trial. In an August 16, 2024 email, CosmoKey stated that it was willing to hold the deposition of Mr. Song in abeyance.]

- **Production and Exhibit List Dispute**

[**Plaintiff's Position:** CosmoKey objects to the inclusion on Defendants' trial exhibit list a 327 page document identified as ███████████████████████████ ███" and listed as Defendants' trial exhibit #863. This document was included for the first time on Defendants' exhibit list at 9pm on April 29, the night before the parties'

pre-trial order and accompanying exhibits were due to be filed. This document has never been produced to CosmoKey and was never identified in any of Defendants' invalidity contentions, discovery responses, or expert disclosures and reports served throughout the litigation. Defendants' position below is the first indication that they believe their expert relied on these materials as they are not cited in any expert reports, nor is there any assessment regarding those logs. To the extent they contend that this was a subject first raised in Dr. Jeffay's deposition, not in his reports, it demonstrates yet another level of prejudice to the inclusion of this document. The inclusion of this document on Defendants' exhibit list is deeply prejudicial and in violation of at least the following deadlines, the Federal Rules of Civil Procedure, and Court orders:

- Judge Connolly's September Order (D.I.114 ) (requiring the identification and production of all source code materials Defendants intend to rely upon for invalidity)

- Defendants' failure to disclose such materials in connection with its responses to CosmoKey's Interrogatory Nos. 1, 3, 5 (refusing to identify changes to alleged Duo Source Code)

- Defendants' June 7, 2024 deadline to serve final supplemental invalidity contentions (D.I. 179) (failing to identify any such document)

- Defendants' June 28, 2024 deadline to complete fact discovery and the general August 23, 2024 deadline to complete all fact discovery (D.I. 295)

- Parties' December 10, 2024 deadline to complete expert discovery (D.I. 319)

- Parties' April 8, 2025 deadline to exchange pre-trial disclosures on the issues for which they bear the burden of proof

- Parties' April 16, 2025 deadline to exchange all unstamped copies of the exhibits listed on each respective exhibit list.

Moreover, Defendants have not yet even provided this document to CosmoKey, so CosmoKey has no awareness of what this document actually is, or the ability to probe the accuracy of Defendants' representations, nor the authenticity or foundation of these alleged materials. Nor is it clear how this is a portion of the file in question.]



[**Defendants' Position**: The document presented in DTX-863 was timely produced. DTX-863 is the ▮▮▮▮▮ portions of the file that has been produced on the source code computer at the following file path: ▮▮▮▮▮ ▮▮▮▮▮. This file has been available for inspection and review by CosmoKey since at least August 8, 2023. *See* August 25, 2023 Letter from B. Rosenthal at 4. This is well before any of the deadlines CosmoKey has referenced. CosmoKey was given access to Defendants' source code computer more than 30 times during discovery and even several times after the close of discovery, including this past month. Dr. Jeffay reviewed this file as part of his analysis and referred to this file in his deposition. Jeffay Tr. 215:17-24 ("▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮"). Defendants have offered to provide CosmoKey with printed copies of the Bates-stamped version of the document in question as soon as practicable. CosmoKey can provide any objections to the exhibit in accordance with the normal timeline for withheld source code exhibits and has suffered no appreciable prejudice.]

- **Narrowing of Issues for Trial.**  Defendants have raised the possibility of narrowing the asserted claims.  In response, CosmoKey inquired as to whether Defendants would also narrow their prior art. The parties have agreed to continue these discussions, including the narrowing of Defendants' defenses in addition to prior art.  If the parties cannot come to an agreement by the Pretrial Conference on May 21, 2025, they reserve the opportunity to discuss the number of claims and defenses, including prior art references, to be presented to the Court.

158.    **Verdict Form.**  The parties have competing proposals for the verdict form. Plaintiff's proposal is included as Exhibit 19.  Defendants' proposal is included as Exhibit 20.

The parties reserve the right to seek leave to supplement or amend this pretrial order based on subsequent events or by agreement.

47

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED: _____

_____
United States District Judge

APPROVED AS TO FORM AND
SUBSTANCE:

POTTER ANDERSON & CORROON LLP

By: /s/David E. Moore
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew M. Moshos (#6685)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    amoshos@potteranderson.com

*Attorneys for Plaintiff CosmoKey Solutions GmbH & Co. KG*

Dated: April 30, 2025
12202644 / 23148.00001

Public Version Dated: May 14, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By: /s/Jennifer Ying
    Jennifer Ying (#5550)
    Travis J. Murray (#6882)
    1201 N. Market Street
    P.O. Box 1347
    Wilmington, DE  19899
    Tel:  (302) 658-9200
    jying@morrisnichols.com
    tmurray@morrisnichols.com

*Attorneys for Defendants Duo Security LLC f/k/a Duo Security, Inc. and Cisco Systems, Inc.*