# PRETRIAL ORDER

# EXHIBIT 16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1477-JLH |
| | ) |
| DUO SECURITY, INC. n/k/a DUO SECURITY | ) |
| LLC and CISCO SYSTEMS, INC., | ) **HIGHLY CONFIDENTIAL-** |
| | ) **ATTORNEY'S EYES ONLY** |
| Defendants. | ) |

## COSMOKEY'S MOTION *IN LIMINE*
## TO PRECLUDE INEQUITABLE CONDUCT ARGUMENTS AND EVIDENCE

Defendants should be precluded from presenting materials for their inequitable conduct theory to the jury.  It is black letter law that inequitable conduct is an issue exclusively for the Court.  *See Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993) ("The defense of inequitable conduct in a patent suit, being entirely equitable in nature, is not an issue for a jury to decide.") (citing *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)).  Defendants' theory, which has no merit, is that the inventor of the '903 patent, Dominic Adenuga, purportedly knew of Defendants' product before the patent issued and withheld material information during prosecution.  *See* Ex. 9 (CK00018679).  CosmoKey vigorously disputes this, and it looks forward to presenting, to the Court, the record showing that prosecution of the '903 patent was entirely proper.  But Defendants also wish to present their inequitable conduct evidence to the jury.  That is not allowed, and the Court should preclude Defendants from introducing any:  (1) argument or evidence offered to assert that Mr. Adenuga knew of Duo's products or patent application before issuance of the '903 patent, or (2) materials regarding prosecution of the '903 patent.[1]

Defendants cannot present their inequitable conduct theory to the jury.  *See Persawvere, Inc. v. Milwaukee Elec. Tool Corp.*, No. 21-cv-400, 2023 WL 8094642, *2 (D. Del. Nov. 21, 2023) ("the Court will not present the issue of inequitable conduct to the jury to decide because inequitable conduct is a matter for the Court to decide") (citing *Paragon Podiatry Lab.*, 984 F.2d at 1190).  The materials Defendants wish to introduce have no relevance to any issues other than inequitable conduct, and they should not be offered to the jury.  Fed. R. Evid. 402 and 403; *Helios Software, LLC v. SpectorSoft Corp.*, No. 12-cv-81, 2015 WL 3653098 *2 (D. Del. May 22, 2015) ("Evidence that relates solely to inequitable conduct is not relevant to any issue that

---

[1] *See* Appendix A (list of inequitable conduct documents and testimony).

1

will be part of the Jury Trial.").

To steer around the relevance bar, Defendants argue that the inequitable conduct evidence they wish to present is relevant to other issues in the case. But that claim is pretextual. The Court should exclude such evidence, as the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403; *see also PharmaStem Therapeutics, Inc. v. Viacell Inc.*, No. 02-148 GMS, 2003 WL 22244704, at *3 (D. Del. Sep. 30, 2003) (excluding inequitable conduct evidence relevant to other issues because, "[e]ven if the jury is instructed to consider the opinion for its limited purposes, there is a strong likelihood that the jury would be confused as to its relevance").

For example: Defendants offer email correspondence with Mr. Adenuga in August 2012. *See* D.I. 195, at 23-25 (identifying these materials in the inequitable conduct discussion of Defendants' answer). ██████████████████████████████

██████████████████ Ex. 9 (CK00018679); *see also* Ex. 35 (Jeffay Reply Rep. at ¶¶ 579-581); Ex. 36 (Jeffay Dep. Tr. at 149:11-16, 158:14-16) (to support Defendants' inequitable conduct defense, their experts have opined that Mr. Adenuga could have clicked on a link in the email directing the user to a website on which Duo hosted a free trial version of an early Duo product).

████████████████████████████████████████████████████

██████████████████████████████████████. Ex. 5 (CK00018676). Defendants have also designated as "jury" evidence several deposition excerpts that clearly only have relevance to inequitable conduct issues.[2] These documents, and the speculative allegations Defendants make about them, have no direct relevance to any issues other than inequitable

---

[2] *See, e.g.,* Ex. 21 (Adenuga 5/22 Designations) at 122:16-125:9, 138:21-25; Ex. 26 (Wiebusch Designations) at 38:3-7; and Ex. 25 (Wangerowski Designations) at 126:20-24.

conduct—for which they have limited probative value nevertheless. *See PharmaStem Therapeutic*, 2003 WL 22244704, at *3 (D. Del. Sep. 30, 2003) ("In this light, the probative value [of] the EPO Decision on the issue of PharmaStem's intent to deceive is outweighed by the substantial risk that admitting the opinion would unfairly prejudice PharmaStem and confuse the jury."). Any suggestion that the documents, created ***before*** issuance of the '903 patent, are informative of infringement of that patent issuing ***years later***, is nonsensical. And a claim by Defendants that these documents are relevant to other issues in the case is purely pretextual: any probative value is substantially outweighed by the danger of unfair prejudice and misleading the jury—suggesting, falsely, that Mr. Adenuga engaged in some kind of misconduct in obtaining the '903 patent. Fed. R. Evid. 403. Courts preclude such evidence, particularly—as is the case here—where the evidence is "ambiguous" and "distant in time from the relevant period for infringement." *St. Jude Med., et. al. v. Volcano Corp.*, No. 10-cv-00631, Dkt. 395, at 1-2 (D. Del. Oct. 9, 2012) (excluding inequitable conduct evidence under Rule 403 "in view of the ambiguous nature of the evidence and distance in time from the relevant time period for infringement"). The minimal claimed relevance is insufficient to overcome the prejudice of showing it to a jury. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 04-cv-1371, 2007 WL 7658923, at *1 (D. Del. Sept. 14, 2007) (excluding evidence as mundane as "hear[ing] that the patents have been called for review by the PTO" as being substantially more prejudicial than probative of other non-inequitable conduct issues).

The Court should preclude Defendants from introducing evidence or argument that Mr. Adenuga, CosmoKey, or their patent agents knew of Duo's products (including an alleged "Duo Push" system) before issuance of the patent, including the testimony and documents identified in Appendix A.

Dated: April 16, 2025

POTTER ANDERSON CORROON LLP

By: ___*/s/ David E. Moore*_____
David E. Moore
Bindu Ann Palapura
1313 North Market Street
Wilmington, Delaware 19899
Phone: + 1 302 984 6000
Fax: + 1 302 658 1192
Email: dmoore@potteranderson.com
Email: bpalapura@potteranderson.com

Scott T. Weingaertner  (*pro hac vice*)
Stefan Mentzer (*pro hac vice*)
John Padro (*pro hac vice*)
Matthew R. Wisnieff (*pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Phone: + 1 212 813 8800
Email: SWeingaertner@goodwinlaw.com
Email: SMentzer@ goodwinlaw.com
Email: JPadro@ goodwinlaw.com
Email: MWisnieff@goodwinlaw.com

# APPENDIX A

| EX NO. | DATE | DESCRIPTION | BEGINNING BATES[1] | ENDING BATES |
|---|---|---|---|---|
| 1 | 6/20/2014 | German version of Adenuga Exhibit 23 | CK00006101 | CK00006105 |
| 2 | 6/20/2014 | ███████████████████ | CK00006101_EN<br>DUO-COSMOKEY-00510330 | CK00006105_EN<br>DUO-COSMOKEY-00510335 |
| 3 |  | Document from Acacia Research Group | CK00011400 | CK00011402 |
| 4 | 8/8/2012 | German version of Adenuga Exhibit 19 | CK00018676 | CK00018678 |
| 5 | 8/8/2012 | ███████████████████ | CK00018676_EN<br>DUO-COSMOKEY-00510380 | CK00018678_EN<br>DUO-COSMOKEY-00510383 |
| 6 | 8/7/2012 | German version of Adenuga Exhibit 16 | CK00018679 | CK00018682 |
| 7 | 8/7/2012 | ███████████████████ | CK00018679_EN<br>DUO-COSMOKEY-00509948 | CK00018682_EN<br>DUO-COSMOKEY-00509952 |
| 8 | 8/14/2012 | ███████████████████ | CK00065970 | CK00065971 |
| 9 | 8/14/2012 | ███████████████████ | CK00065970_EN | CK00065971_EN |
| 10 | 8/22/2012 | ███████████████████ | CK00065973 | CK00065973 |
| 11 | 8/22/2012 | ███████████████████ | CK00065973_EN | CK00065973_EN |
| 12 |  | ███████████████████ | CK00065978 | CK00065979 |
| 13 |  | ███████████████████ | CK00065978_EN | CK00065979_EN |
| 14 | 2/2/2016 | ███████████████████ | GOLDBERG-00000003 | GOLDBERG-00000069 |

---

[1] CosmoKey notes that this document and others were originally produced in German, and both parties have commissioned their own translations of these documents. For the sake of clarity, CosmoKey seeks the exclusion of the original German documents as well as the translations made by both parties. The translations of these documents are marked on this list with the suffix "_EN."

| EX NO. | DATE | DESCRIPTION | BEGINNING BATES[1] | ENDING BATES |
|---|---|---|---|---|
| 15 | 3/28/2014 | ███████████████ | GOLDBERG-00000062 | GOLDBERG-00000065 |
| 16 | 6/28/2024 | CosmoKey's Responses and Objections to Defendants' Fourth Set of Interrogatories to Plaintiff (Nos. 22-25) – Adenuga Exhibit 65 | | |
| 17 | 5/24/2024 | Richard Goldberg Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action – R. Goldberg Exhibit 2 | | |
| 18 | 9/24/2024 | Richard Goldberg Notice of Second Amended Subpoena – R. Goldberg Exhibit 1 | | |
| 19 | | https://www.uspto.gov/web/offices/pac/ mpep/s2001.html | | |
| 20 | | Excerpt from 37 CFR Ch. I (7–1–23 Edition) §§ 11.61–11.99 – R. Goldberg Exhibit 3 | | |
| 21 | 5/22/2024 | Defendants' Affirmative IC & Jury Designations to the May 22, 2024 Deposition Transcript of Dominic Adenuga | | |
| 22 | 5/23/2024 | Defendants' Affirmative IC & Jury Designations to the May 23, 2024 Deposition Transcript of Dominic Adenuga | | |
| 23 | 9/25/2024 | Defendants' Affirmative IC & Jury Designations to the Sept. 25, 2024 Deposition Transcript of Dominic Adenuga | | |
| 24 | 2/12/2025 | Defendants' Affirmative IC & Jury Designations to the Feb. 12, 2025 Deposition Transcript of Richard Goldberg | | |
| 25 | 6/26/2024 | Defendants' Affirmative IC & Jury Designations to the June 26, 2024 Deposition Transcript of Alexander Wangerowski | | |
| 26 | 3/19/2025 | Defendants' Affirmative IC & Jury Designations to the Mar. 19, 2025 Deposition Transcript of Manfred Wiebusch | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COSMOKEY SOLUTIONS GMBH & CO. KG,   )
                                                 )

           Plaintiff,                 )

                                               )

          v.                          )   C.A. No. 18-1477-JLH

                                                 )

DUO SECURITY, INC. n/k/a DUO SECURITY   )
LLC and CISCO SYSTEMS, INC.,             **HIGHLY CONFIDENTIAL-**
                                             )   **ATTORNEY'S EYES ONLY**

           Defendants.             )

# COSMOKEY'S MOTION *IN LIMINE*
## TO PRECLUDE DOCUMENTS SELECTIVELY
## <u>PRESERVED AND PRODUCED BY DEFENDANTS</u>

Defendants knew they used Slack as an essential form of communication about the accused products. And still, they failed to preserve ███████████ Slack and other instant messages that are highly relevant to the issues in this case. Defendants' failure to preserve is spoliation, denying CosmoKey the ability to take discovery on Defendants' pre-suit knowledge of the '903 patent. The Court should preclude Defendants from testifying that they lacked knowledge of the '903 patent, including any testimony professing a lack of knowledge that the inventor Dominic Adenuga informed Defendants of the patent and asked them to take a license. Alternatively, the Court should instruct the jury that Defendants did not preserve internal communications about the accused products.

Defendants' instant messages are relevant to the issues in this case, as evidenced by Defendants' own contention that *other* messages, which they *did* produce, support their defenses. Ex. 27 (Defendants' Second Suppl. Invalidity Contentions at 22 n.4). Defendants' witnesses and documents confirm that Slack messaging is essential to their day-to-day operation as a company: Duo employees "████████████████████████████████████████████ ████████████████████████." Ex. 28 (DUO-COSMOKEY-00084538); *see also* Murray Dep. Tr. 63:3-19 (████████████████████████████ ███████████████████████████████████████ ████). CosmoKey requested that Defendants produce *all* relevant instant messages regarding the accused products (*see, e.g.,* Ex. 30 (CosmoKey's RFP No. 8, seeking "[a]ll . . . electronic discussion"); Ex. 31 (CosmoKey's RFP No. 85, seeking information on document preservation)), but Defendants made no effort to preserve any of their instant messages *except* for the specific messages they contend support their theories. Defendants ████████████████████ ███████████████████████████████████████████

1

████████████████████████████████████████ D.I. 247 (Falsetta Decl.) ¶ 9. In

contrast, Defendants produced chat logs from IRC ███████████████████. D.I. 156 at 3

(admitting Defendants only preserved IRC messages up to 2013). They left a ███████, until

2023, *for which Defendants produced no messages*. This period covers the issuance of the '903

patent on January 26, 2016; Mr. Adenuga's contact of Defendants in November-December 2016;

and the filing of the complaint in 2018. *See*, *e.g.*, D.I. 62 (Second Amended Compl.), ¶¶ 5, 20,

73-77, Ex. B. It is implausible that no chat logs from this time were relevant, in which

Defendants could have discussed—at any time prior to 2023—their awareness of the patent, the

possibility that they infringe, and product design decisions in response.

Defendants' conduct amounts to spoliation. There is no credible dispute that Slack

messages were in Defendants' control, that they contained information relevant to the claims or

defenses asserted in this case, and that there was an "actual suppression or withholding of

evidence" where "the duty to preserve the evidence was reasonably foreseeable to the party."

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 480 (D. Del. 2012),

*aff'd sub nom. Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. 07-cv-127, 2014 WL

545440 (D. Del. Feb. 7, 2014). Defendants' Rule 30(b)(6) witness testified that Defendants

knew Slack messages must be preserved prior to their auto-delete date. Murray Dep. Tr. 60:13-

16 ("So, the point is, after a point, they are inaccessible to us, so we know that anything we want

to save, we have to copy completely out of Slack and into a different product, like the Wiki."). A

duty to preserve these messages arose when Defendants had a reasonable apprehension of suit

following Mr. Adenuga's messages in 2016, and at least as of the time the complaint was filed on

September 25, 2018. *See Magnetar Techs.*, 886 F. Supp. 2d at 480. Defendants *did* preserve the

6 specific messages they contend support their invalidity theories, despite these messages dating

to more than a decade ago.  *See Magnetar Techs*, 886 F. Supp. 2d at 480.  Defendants' Rule

30(b)(6) witness testified that he helped preserve these IRC chat logs, despite IRC being an old

system that "no longer exists," but admitted he did not collect any Slack messages—the system

presently in use.  Ex. 29 (Murray Dep. Tr. 41:2-25).  Thus, there is no "proper[] accounting" for

Defendants' failure to preserve.  *See Orion Drilling Co., LLC v. EQT Prod. Co.*, 826 F. App'x

204, 217 n.21 (3d Cir. 2020) (affirming spoliation sanctions).

Defendants' failure to preserve messages that they knew were relevant from their internal

instant messaging systems has prejudiced CosmoKey.  CosmoKey alleges willful infringement

by Defendants' products and services.  *See* D.I. 62 ¶¶ 55-85.  It is undisputed that Defendants'

employees made decisions about how to design these products and services, and developed

source code, using these instant messaging systems.  *See*, *e.g.*, Ex. 28 (DUO-COSMOKEY-

00084538).  Testimony shows that use of these instant messaging systems was absolutely

integral to these employees' work on the accused products.  *See id.;* Murray Dep. Tr. 58:23-59:3

("Slack and IRC" are "especially important now that post-pandemic, when teams are very

geographically dispersed.").  Defendants have cited virtually nothing to rebut CosmoKey's

allegations, not even disputing that the messages were sent.  A preclusion sanction, or an

instruction to the jury, is an appropriate remedy.  *See Manning v. Safelite Fulfillment, Inc.,* No.

17-cv-2824, 2021 WL 3557582, at *11 (D.N.J. Apr. 29, 2021), *report & recommendation*

*adopted*, No. 17-cv-2824, 2021 WL 3542808 (D.N.J. Aug. 11, 2021) (allowing jury instruction

regarding spoliation under Rule 37(e)(1)).

 Dated: April 16, 2025                                POTTER ANDERSON CORROON LLP


                                                     By:    */s/ David E. Moore*
                                                     David E. Moore
                                                     Bindu Ann Palapura

1313 North Market Street
Wilmington, Delaware 19899
Phone: + 1 302 984 6000
Fax: + 1 302 658 1192
Email: dmoore@potteranderson.com
Email: bpalapura@potteranderson.com

Scott T. Weingaertner (*pro hac vice*)
Stefan Mentzer (*pro hac vice*)
John Padro (*pro hac vice*)
Matthew R. Wisnieff (*pro hac vice*)
Lauren K. Pelletier (*pro hac vice*)
Timothy F. Keegan (*pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Phone: + 1 212 813 8800
Email: SWeingaertner@goodwinlaw.com
Email: SMentzer@ goodwinlaw.com
Email: JPadro@ goodwinlaw.com
Email: MWisnieff@goodwinlaw.com

Fred Feyzi (*pro hac vice*)
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, California 94063
Phone: + (650) 752-3100
Email: FFeyzi@goodwinlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1477-JLH |
| | ) | |
| DUO SECURITY, INC. n/k/a DUO SECURITY | ) | |
| LLC and CISCO SYSTEMS, INC., | ) | **HIGHLY CONFIDENTIAL-** |
| | ) | **ATTORNEY'S EYES ONLY** |
| Defendants. | ) | |

**COSMOKEY'S MOTION *IN LIMINE*
TO PRECLUDE ARGUMENTS AND EVIDENCE
THAT IS REFUTED BY BINDING 30(b)(6) TESTIMONY**

Defendants intend to offer a defense of prior use or invention at trial that is directly refuted by their binding Rule 30(b)(6) testimony.  Specifically, Defendants intend to assert that a system they refer to as "Duo Push 2010" was publicly used, disclosed, or sold before the priority date of the '903 patent—and that the system contains each element of the patent claims, and was not abandoned, suppressed, or concealed.  *See* 35 U.S.C. § 273; 35 U.S.C. § 102(g).  But in the Rule 30(b)(6) testimony of their corporate representative, Jon Oberheide, Defendants disclaimed any knowledge of such a "Duo Push 2010" system, its use, and its sale before the priority date. This sworn testimony, binding on Defendants, is irreconcilable with any claim Defendants now wish to make that "Duo Push 2010" was in public use.  Defendants cannot now proceed with the defense.  The Court should grant CosmoKey's motion and preclude such evidence at trial.

Mr. Oberheide is one of the founders of Duo.  Ex. 32 (Oberheide Dep. Tr.) at 26:3-10. Defendants designated Mr. Oberheide as their corporate representative on 21 topics.  *Id.* at 18:4-19:3.  Defendants designated him to testify on Topic No. 45, "The ***products***, services, editions, and features ***offered by Duo*** and the constituent software, source code, hardware, methods, and processes ***that Duo contends are Prior Art***, including the 'Duo Push' and 'OATH TOPT Standard' cited in Defendants' Supplemental Invalidity Contentions (at 20-21)," and Topic No. 46, "***Defendants' conception, design, development, reduction to practice, use***, ***disclosure***, descriptions, demonstrations, and ***sale of Prior Art prior to October 31, 2011***."  Ex. 33 (CosmoKey's Rule 30(b)(6) Notice to Duo) at 8-9 (emphasis added).  These topics squarely encompass any potential defense under § 273 or § 102(g).

Defendants have yet to clearly define what "Duo Push 2010" is, or to identify a particular product or service they contend embodies this "system."  The closest they have come is the opinion testimony of their expert, Dr. Goldberg, who stated that, when Defendants refer to "Duo

Push 2010" they are referring to "[t]he October 25th, 2010, Duo source code[.]"  Ex. 34

(Goldberg Dep. Tr.) at 171:13-15.  But when asked about this source code, Defendants (through

Mr. Oberheide) testified to having little to no knowledge of what it was or if it existed. *See* Ex.

32 (Oberheide Dep. Tr.) at 32:1-2 ("I don't know what Duo Push 2010 is"); *see also id.* 31:12-

32:11 (Q: "Do you know what versions of source code might refer to those products?" / A: "I do

not.").  Defendants also testified to their unawareness of whether this code was used or even

available in 2010.  *Id.* 216:8-12 ("Q. Do you know when this might have been used, if at all? / A.

Not with any confidence.  There is a date in the file name, but I certainly would not rely on that

for any assessment.").  And when specific portions of the alleged October 25, 2010 source code

were presented at the deposition, Defendants testified that the material and file paths appeared to

be unreliable.  *Id.* 216:2-7 ("Q. And what about that earlier part, ███████████ / A. No

idea. / Q. Okay, Are you able to tell me what build-in version of the code this corresponds to? /

A. No.").  Finally, Defendants testified that they were unaware of any source code used or

presented at any public demonstrations.  *Id.* at 32:9-11, 51:6-8, 76:4-15, 76:16-77:3, 80:1-3,

90:11-92:20, 100:2-7, 103:10-23, 104:21-106:9, 107:1-25. 113:2-114:12.

As Rule 30(b)(6) testimony on topics squarely addressing the factual predicate for any

prior use or disclosure defense, Mr. Oberheide's statements are binding on the Defendants.

*C*ourts have held that to allow a party to offer "a theory of the facts that differs from that

articulated by the designated [Rule 30(b)(6)] representatives" would be inconsistent "with both

the letter and the spirit of Rule 30(b)(6).  *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp.

2d 82, 94, 95 (D.D.C. 1998) (precluding party from supporting summary judgment motion with

facts irreconcilable with 30(b)(6) testimony, reasoning that "a corporation cannot later proffer

new or different allegations that could have been made at the time of the 30(b)(6) deposition").

For that reason, Rule 30(b)(6) testimony can preclude a party from making arguments at trial that are incompatible with the testimony. *See Dataquill Ltd. v. Huawei Techs. Co.*, No. 13-cv-00633, 2015 WL 11109697, at *2 (E.D. Tex. June 11, 2015) (granting motion in limine to preclude any argument on non-infringing alternatives where 30(b)(6) deposition testimony stated there were no alternatives). Similarly, parties may not disclaim awareness of subject matter during a Rule 30(b)(6) deposition only later to offer information. *See Rogers v. Wilmington Tr. Co.*, No. 18-cv-116, 2021 WL 739048, at *13 (D. Del. Feb. 25, 2021), *aff'd*, No. 21-cv-1473, 2022 WL 621690 (3d Cir. Mar. 3, 2022) (citations omitted) ("When a corporate designee for a Rule 30(b)(6) deposition topic lacks the ability to answer questions about the topic, the corporation is bound by the witness's 'not to my knowledge' answers to questions on the topic."); *see also Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, No. 06-cv-0271, 2007 WL 4410370, at *8 (N.D. Tex. Dec. 14, 2007) ("Federal courts have interpreted [Rule 30(b)(6)] as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject.").

Mr. Oberheide's Rule 30(b)(6) testimony disclaiming any knowledge of "Duo Push 2010," the source code they contend reflect a prior art system, or any usage, disclosure, or sale of that purported system before the priority date is binding on Defendants. They cannot now proceed with a defense that is refuted by these positions.

Dated: April 16, 2025                    POTTER ANDERSON CORROON LLP


By:   */s/ David E. Moore*
David E. Moore
Bindu Ann Palapura
1313 North Market Street
Wilmington, Delaware 19899

Phone: + 1 302 984 6000
Fax: + 1 302 658 1192
Email: dmoore@potteranderson.com
Email: bpalapura@potteranderson.com

Scott T. Weingaertner (*pro hac vice*)
Stefan Mentzer (*pro hac vice*)
John Padro (*pro hac vice*)
Matthew R. Wisnieff (*pro hac vice*)
Lauren K. Pelletier (*pro hac vice*)
Timothy F. Keegan (*pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Phone: + 1 212 813 8800
Email: SWeingaertner@goodwinlaw.com
Email: SMentzer@ goodwinlaw.com
Email: JPadro@ goodwinlaw.com
Email: MWisnieff@goodwinlaw.com

Fred Feyzi (*pro hac vice*)
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, California 94063
Phone: + (650) 752-3100
Email: FFeyzi@goodwinlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1477-JLH-CJB |
| | ) |
| DUO SECURITY, INC. n/k/a DUO SECURITY | ) JURY TRIAL DEMANDED |
| LLC and CISCO SYSTEMS, INC., | ) |
| | ) |
| Defendants. | ) |

## <u>DECLARATION OF MATTHEW R. WISNIEFF</u>

I, Matthew R. Wisnieff, declare the following:

1.      I am a counsel at Goodwin Procter LLP.  I am admitted to practice law in the

State of New York and I have been admitted *pro hac vice* to practice before the United States

District Court for the District of Delaware in this action.

2.      I represent Plaintiff CosmoKey Solutions GmbH & Co. KG ("CosmoKey") in this

matter.   I submit this declaration in support of CosmoKey's Motions *in Limine*.

3.      Attached as **Exhibit 1** is a true and correct copy of German language document

produced by CosmoKey in this litigation with the Bates-number, CK00006101.

4.      Attached as **Exhibit 2** is a true and correct copy of an English translation of a

document produced by Defendants in this litigation with the Bates-number, DUO-COSMOKEY-

00510330 (CK00006101_EN).

5.      Attached as **Exhibit 3** is a true and correct copy of a document produced by

CosmoKey in this litigation with the Bates-number, CK00011400.

6.      Attached as **Exhibit 4** is a true and correct copy of a German language document

produced by CosmoKey in this litigation with the Bates-number, CK00018676.

1

7.      Attached as **Exhibit 5** is a true and correct copy of an English translation of a document produced by Defendants in this litigation with the Bates-number, DUO-COSMOKEY-00510380 (CK00018676_EN).

8.      Attached as **Exhibit 6** is a true and correct copy of a German language document produced by CosmoKey in this litigation with the Bates-number, CK00018679.

9.      Attached as **Exhibit 7** is a true and correct copy of an English translation of a document produced by Defendants in this litigation with the Bates-number, DUO-COSMOKEY-00509948 (CK00018679_EN).

10.      Attached as **Exhibit 8** is a true and correct copy of a German language document produced by CosmoKey in this litigation with the Bates-number, CK00065970.

11.      Attached as **Exhibit 9** is a true and correct copy of Exhibit 3 to the March 19, 2025 deposition of Manfred Wiebusch, which is an English translation of a  document produced by CosmoKey in this litigation with the Bates-number, CK00065970_EN.

12.      Attached as **Exhibit 10** is a true and correct copy of a German language document produced by CosmoKey in this litigation with the Bates-number, CK00065973.

13.      Attached as **Exhibit 11** is a true and correct copy of Exhibit 67 to the September 25, 2024 deposition of Dominic Adenuga, which is an English translation of a  document produced by CosmoKey in this litigation with the Bates-number, CK00065973_EN.

14.      Attached as **Exhibit 12** is a true and correct copy of a German language document produced by CosmoKey in this litigation with the Bates-number, CK00065978.

15.      Attached as **Exhibit 13** is a true and correct copy of Exhibit 69 to the September 25, 2024 deposition of Dominic Adenuga, which is an English translation of a document produced by CosmoKey in this litigation with the Bates-number, CK00065978_EN.

16.     Attached as **Exhibit 14** is a true and correct copy of Exhibit 5 to the February 12, 2025 deposition of Richard Goldberg, which is a document produced by Robert Goldberg in this litigation with the Bates-number, GOLDBERG-00000003.

17.     Attached as **Exhibit 15** is a true and correct copy of Exhibit 5 to the March 19, 2025 deposition of Manfred Wiebusch, which is a document produced by Robert Goldberg in this litigation with the Bates-number, GOLDBERG-00000062.

18.     Attached as **Exhibit 16** is a true and correct copy of Exhibit 65 to the September 25, 2024 deposition of Dominic Adenuga, which is CosmoKey's Responses and Objections to Defendants' Fourth Set of Interrogatories to Plaintiff (Nos. 22-25), dated June 28, 2024

19.     Attached as **Exhibit 17** is a true and correct copy of Exhibit 2 to the February 12, 2025 deposition of Richard Goldberg, which is Defendants' Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Richard M. Goldberg, dated May 31, 2024.

20.     Attached as **Exhibit 18** is a true and correct copy of Exhibit 1 to the February 12, 2025 deposition of Richard Goldberg, which is Defendants' Notice of Second Amended Subpoena to Testify at a Deposition in a Civil Action to Richard M. Goldberg, dated February 11, 2024.

21.     Attached as **Exhibit 19** is a true and correct copy of USPTO, *2001 Duty of Duty of Disclosure, Candor, and Good Faith [R-08.2017]* (Oct. 30, 2024), https://www.uspto.gov/web/offices/pac/mpep/s2001.html.

22.     Attached as **Exhibit 20** is a true and correct copy of Exhibit 3 to the February 12, 2025 deposition of Richard Goldberg, which is an excerpt of 37 CFR Ch. I (7–1–23 Edition) §§ 11.61-11.99.

23.     Attached as **Exhibit 21** is a true and correct copy of Defendants' Affirmative IC & Jury Designations to the May 22, 2024 Deposition Transcript of Dominic Adenuga.

24.     Attached as **Exhibit 22** is a true and correct copy of Defendants' Affirmative IC & Jury Designations to the May 23, 2024 Deposition Transcript of Dominic Adenuga.

25.     Attached as **Exhibit 23** is a true and correct copy of Defendants' Affirmative IC & Jury Designations to the Sept. 25, 2024 Deposition Transcript of Dominic Adenuga.

26.     Attached as **Exhibit 24** is a true and correct copy of Defendants' Affirmative IC & Jury Designations to the Feb. 12, 2025 Deposition Transcript of Richard Goldberg.

27.     Attached as **Exhibit 25** is a true and correct copy of Defendants' Affirmative IC & Jury Designations to the June 26, 2024 Deposition Transcript of Alexander Wangerowski.

28.     Attached as **Exhibit 26** is a true and correct copy of Defendants' Affirmative IC & Jury Designations to the Mar. 19, 2025 Deposition Transcript of Manfred Wiebusch.

29.     Attached as **Exhibit 27** is a true and correct copy of Defendants' Second Supplemental Invalidity Contentions, dated June 7, 2024.

30.     Attached as **Exhibit 28** is a true and correct copy of a document produced by Defendants in this litigation with the Bates-number, DUO-COSMOKEY-00084538.

31.     Attached as **Exhibit 29** is a true and correct copy of excerpts of the transcript of the deposition of Ben Murray, taken August 14, 2024.

32.     Attached as **Exhibit 30** is a true and correct copy of an excerpt of CosmoKey's Amended First Set of Requests for Production (Nos. 1-69), dated August 4, 2023.

33.     Attached as **Exhibit 31** is a true and correct copy of an excerpt of CosmoKey's Second Set of Requests for Production (Nos. 70-91), dated May 3, 2024.

34.    Attached as **Exhibit 32** is a true and correct copy of excerpts of the transcript of the Rule 30(b)(6) deposition of Jon Oberheide, taken August 15, 2024.

35.    Attached as **Exhibit 33** is a true and correct copy of CosmoKey's Notice of Rule 30(b)(6) Deposition of Duo Security LLC, dated May 10, 2024.

36.    Attached as **Exhibit 34** is a true and correct copy of excerpts of the transcript of the deposition of Benjamin Goldberg, Ph.D., taken December 5, 2024.

37.    Attached as **Exhibit 35** is a true and correct copy of excerpts of the Reply Expert Report of Kevin Jeffay, Ph.D. Regarding Invalidity of U.S. Patent No. 9,246,903, served on November 15, 2024.

38.    Attached as **Exhibit 36** is a true and correct copy of excerpts of the transcript of the deposition of Kevin Jeffay, Ph.D, taken December 11, 2024.

Executed this 16th day of April, 2025.                    /s/*Matthew R. Wisnieff*
                                                          Matthew R. Wisnieff

# EXHIBITS 1-15

# HAVE BEEN REDACTED IN THEIR ENTIRETY

# EXHIBIT 16

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

COSMOKEY SOLUTIONS GMBH & CO. KG,

           Plaintiff,

         v.

DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC.,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 18-1477 (JLH)

**CONFIDENTIAL**

## COSMOKEY'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FOURTH SET OF INTERROGATORIES TO PLAINTIFF (NOS. 22-25)

Pursuant to Federal Rules of Civil Procedure 26 and 33 and Local Civil Rule 26.1, Plaintiff CosmoKey Solutions GmbH & Co. KG ("CosmoKey") responds and objects to the Fourth Set of Interrogatories (Nos. 22–25) dated May 29, 2024 of Defendants Duo Security LLC ("Duo") and Cisco Systems, Inc. ("Cisco") (collectively, "Defendants").

## GENERAL OBJECTIONS

1.    CosmoKey incorporates by reference its Objections to Defendants' Definitions and Instructions and its General Objections set forth in CosmoKey's Responses and Objections to Duo's First, Second, and Third Sets of Interrogatories as well as its Objections to Defendants' Definitions and Instructions and its General

Exhibit
65  9/25/2024

Objections set forth in CosmoKey's September 26, 2023 Supplemental Responses

and Objections to Duo's First Set of Interrogatories, as if set forth fully herein.

2.    CosmoKey objects to the Definition of "Duo" as vague and ambiguous.

## SPECIFIC RESPONSES AND OBJECTIONS

**INTERROGATORY NO. 22:**

Describe in detail Your communications with Richard M. Goldberg, or any other attorney or patent agent, relating to the prosecution of the applications for the Asserted Patent or Counterparts, concerning Duo or any product, service, or application made, sold, or offered for sale by Duo, including all facts and circumstances relating to any such communications or information. Your response should include a complete description of all information You provided to Richard M. Goldberg, or any other attorney or patent agent, concerning Duo or any product, service, or application made, sold, or offered for sale by Duo.

**RESPONSE NO. 22**

CosmoKey objects to this Interrogatory as overly broad, unduly burdensome,

not proportional to the needs of the case, and not relevant to the parties' claims and

defenses to the extent it seeks "communications with . . . any other attorney or patent

agent," "all facts and circumstances relating to any such communications or

information" and "a complete description of all information."  CosmoKey further

objects to this Interrogatory as vague and ambiguous to the extent it requests

information "relating to the prosecution . . .concerning Duo."  CosmoKey further

objects to this interrogatory to the extent it seeks information protected by the

attorney-client privilege, the work product doctrine, and any other applicable

privilege or protection.

Subject to the foregoing General and Specific Objections, CosmoKey responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), CosmoKey identifies the file history for the asserted '903 patent, produced at CK0000051. This document reflects all non-privileged communications between CosmoKey and its patent agent. Regarding communications with Richard Goldberg and other patent prosecution counsel, no non-privileged communications exist.

## INTERROGATORY NO. 23:

Describe in detail Your communications with Richard M. Goldberg, or any other attorney or patent agent, relating to the prosecution of the applications for the Asserted Patent or Counterparts, concerning Prior Art to the '903 patent, including all facts and circumstances relating to any such communications or information. Your response should include a complete description of all information You provided to Richard M. Goldberg, or any other attorney or patent agent, concerning any Prior Art to the '903 patent or any other Counterparts.

## RESPONSE NO. 23

CosmoKey objects to this Interrogatory as overly broad, unduly burdensome, not proportional to the needs of the case, and not relevant to the parties' claims and defenses to the extent it seeks communications with "any other attorney or patent agent," "all facts and circumstances relating to any such communications or information," "a complete description of all information," "any Prior Art," and "any other Counterparts." CosmoKey further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product

doctrine, and any other applicable privilege or protection.  CosmoKey objects to this

interrogatory as entirely duplicative of Interrogatory No. 22.

Subject to the foregoing General and Specific Objections, CosmoKey responds

as follows:

Pursuant to Fed. R. Civ. P. 33(d), CosmoKey identifies the file history for the

asserted '903 patent, produced at CK0000051.  This document reflects all non-

privileged communications between CosmoKey and its patent agent.  Beyond this,

this interrogatory is duplicative of Interrogatory No. 22 and is  overly broad, unduly

burdensome, and not proportional to the needs of the case as the interrogatory seeks

information unrelated to the claims and defenses at issue in this action.  Defendants

are not entitled to all privileged communications with patent counsel for the '903

patent "concerning Prior Art to the '903 patent, including all facts and circumstances

relating to any such communications or information," as such a request of

information seeks information protected by attorney-client privilege and attorney

work product and information beyond that relevant to Defendants' defenses.  As such,

CosmoKey objects to providing further information in response to this interrogatory.

## INTERROGATORY NO. 24:

Describe in detail Your investigation into Duo and the products developed or
offered by Duo and any analysis conducted in your investigation.  Your response
should include a detailed description of your investigation following the August 7,
2012 email Dominic Adenuga received from Nils Toedtmann (CK00018676) as well
as a detailed description of the research referred to in Dominic Adenuga's June 20,
2014 email to Christian Tacke (CK00006101).  Your response should include a

complete description of the sources You reviewed during Your investigation and the results of Your investigation.

**RESPONSE NO. 24**

CosmoKey objects to this Interrogatory as overly broad, unduly burdensome, not proportional to the needs of the case, and not relevant to the parties' claims and defenses to the extent it seeks information regarding "any analysis" and "a complete description of the sources [CosmoKey] reviewed." CosmoKey further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, and any other applicable privilege or protection. CosmoKey further objects to this Interrogatory as vague and ambiguous to the extent it seeks information regarding an "investigation."

Subject to the foregoing General and Specific Objections, CosmoKey responds as follows:

This interrogatory seeks information that is protected by attorney-client privilege and attorney work product, and CosmoKey objects to providing privileged information in response to this interrogatory.

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████

With regard to the 2014 communications with Mr. Tacke, on information and belief, Mr. Adenuga referred to the earlier 2012 assessment as described above.

**INTERROGATORY NO. 25:**

Identify all entities, other than Defendants, which You allege would infringe any Asserted Claim of the Asserted Patent.

**RESPONSE NO. 25**

CosmoKey objects to this Interrogatory as overly broad, unduly burdensome, not proportional to the needs of the case, and not relevant to the parties' claims and defenses in this case to the extent it seeks information regarding alleged infringement by entities other than the named defendants in this action. CosmoKey further objects to this Interrogatory as vague and ambiguous to the extent it requests information regarding "all entities." CosmoKey further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, and any other applicable privilege or protection. CosmoKey also objects to the extent it seeks information that is publicly available and/or equally accessible to Defendants.

Subject to the foregoing General and Specific Objections, CosmoKey responds as follows:

Defendants' Interrogatory seeks information that is not proportional to the needs of the case and not relevant to the parties' claims and defenses. CosmoKey has not alleged infringement of the '903 patent in connection with any other parties in any action. To the extent this interrogatory seeks information beyond this, the interrogatory seeks information that is protected by the attorney-client privilege, the work product doctrine, and any other applicable privilege or protection, and thus is not a proper subject of discovery. Thus, CosmoKey cannot respond further beyond its objections at this time.

Dated: June 28, 2024

OF COUNSEL:
Scott T. Weingaertner
Stefan Mentzer
John Padro
Matthew R. Wisnieff
Lauren Kuehn Pelletier
Timothy Keegan
GOODWIN PROCTER
LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 459-7349
Fred Feyzi
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, California 94063
Tel: (650) 752-3100

POTTER ANDERSON & CORROON LLP
By: */s/ Andrew L. Brown*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com
*Attorneys for Plaintiff CosmoKey
Solutions GmbH & Co. KG*

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew L. Brown, hereby certify that on June 28, 2024, true and correct copies of the

within document were served on the following counsel of record at the addresses and in the

manner indicated:

## <u>VIA ELECTRONIC MAIL</u>

Jack B. Blumenfeld
Jennifer Ying
Travis J. Murray
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Elizabeth Rogers Brannen
STRIS & MAHER LLP
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
elizabeth.brannen@strismaher.com
justin.barnes@strismaher.com

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166 -0193
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
rjin@gibsondunn.com
csim@gibsondunn.com

Jaysen S. Chung
Julian Manasse-Boetani
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
jschung@gibsondunn.com
jmanasse-boetani@gibsondunn.com

*/s/ Andrew L. Brown*
Andrew L. Brown

6077361 / 19335.00001

# EXHIBIT 17

# EXHIBIT 2

**Exhibit
2**

02/12/2025

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### District of Delaware

| | |
|---|---|
| CosmoKey Solutions GmbH & Co. KG | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 18-1477 (JLH) |
| DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC. | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Richard M. Goldberg, Law Office of Richard M. Goldberg, 25 East Salem St. Suite 419, Hackensack, New Jersey, 07601

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Gibson, Dunn & Crutcher LLP 200 Park Avenue, New York, NY 10166-0193 USA | Date and Time: 06/14/2024 9:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     05/31/2024

|   _CLERK OF COURT_   |   |   |
|---|---|---|
|   | OR | |
| _Signature of Clerk or Deputy Clerk_ | | /s/ Jaysen S. Chung |
| | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_
**Defendants Duo Security, LLC & Cisco Systems, Inc.** , who issues or requests this subpoena, are:

Jaysen S. Chung, Gibson, Dunn & Crutcher, LLP, One Embarcadero Center Suite 2600, San Francisco, CA 94111-3715 USA
jschung@gibsondunn.com, 415.393.8271

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 18-1477 (JLH)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                          *Server's signature*

                                              _____
                                                          *Printed name and title*

                                              _____
                                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SUBPOENA *DUCES TECUM* ISSUED TO RICHARD M. GOLDBERG**
***CosmoKey Solutions GmbH v. Duo Security LLC*, C.A. No. 18-cv-1477 (D. Del.)**

## ATTACHMENT A

## DEFINITIONS

1.      "ACTION" means the lawsuit styled *CosmoKey Solutions GmbH & Co. KG v. Duo Security LLC*, C.A. No. 18-1477 in the United States District Court for the District of Delaware.

2.      "AFFILIATE" means any Person that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, a Person. For purposes of this definition, the term "control" (and the correlative terms, "controlled by" and "under common control with") shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies, whether through ownership of securities or other interests, by contract or otherwise.

3.      "ASSERTED PATENT," "PATENT-IN-SUIT," and "'903 PATENT" shall mean U.S. Patent No. 9,246,903.

4.      "CISCO" shall refer to Cisco Systems, Inc. and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

5.      "COMMUNICATIONS" means any oral or written utterance, notation or statement of any nature whatsoever, by or to whomsoever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, electronic mail, and other understandings, including any drafts or non-identical copies, between or among two or more persons.

1

6.    "DEFENDANTS" shall refer to DUO and CISCO collectively, as each term is defined herein.

7.    "DOCUMENT(S)" should be interpreted in the broadest possible sense and at a minimum shall be synonymous in meaning with and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, and also includes anything that would be a "writing" or "recording" as defined by Rule 1001(1) of the Federal Rules of Evidence.

8.    "DUO" shall refer to Duo Security LLC and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

9.    "INFORMATION" shall include individual Documents and records (including associated metadata) whether on paper, film, or other media, as discrete files stored electronically, optically, or magnetically, or as a record within a database, archive or container file, including emails, messages, word processed Documents, digital presentations, spreadsheets, database content, etc.

10.   "NAMED INVENTOR" refers to Dominic Adenuga.

11.   "PERSON" means any natural person or legal entity, including any business or governmental entity, organization, or association.

12.   "PLAINTIFF" shall refer to the responding Plaintiff CosmoKey Solutions GmbH & Co. KG f/k/a Money and Data Protection Lizenz GmbH & Co. KG, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, assigns, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

13.    "PRIOR ART" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

14.    "RELATE," "RELATING TO," or "REGARDING" means consisting of, referring to, reflecting, concerning, or being any way logically or factually connected with the matter discussed.

15.    "RELATED PATENTS" means all United States and foreign patents and patent applications (including all published and unpublished, pending, and abandoned applications) relating to the Patents-in-Suit, including patents or patent applications: (1) from or through which the Patents-in-Suit directly or indirectly claim priority; (2) that claim priority to, or common priority with, the Patents-in-Suit; or (3) that are otherwise identified in the Patents-in-Suit as related to those patents.  With respect to the ASSERTED PATENT, "RELATED PATENTS" includes, without limitation, European Patent Application No. 11/187,273, PCT Application No. PCT/EP2012/071472, and any national stage entry applications associated therewith.

16.    "THING(S)" means any tangible item, and should be construed as broadly as possible under the Federal Rules of Civil Procedure.

17.    "THIRD PARTY" or "THIRD PARTIES" means any Person other than PLAINTIFF or DEFENDANTS.

18.    "YOU" or "YOUR" shall mean RICHARD M. GOLDBERG, as well as any subsidiaries, administrators, attorneys, agents, representatives, servants, employees, or any other

Person acting or purporting to act on behalf of RICHARD M. GOLDBERG, including, but not limited to, all employees and former employees.

19.     "INCLUDE(S)" or "INCLUDING" are used in their broadest sense and encompass "including but not limited to" and "including without limitation."

20.     The terms "all," "any," or "each" encompass any and all of the matter discussed.

21.     The terms "and" and "or," when used herein, shall be construed conjunctively or disjunctively as necessary to bring within the scope of the subject Request all responses that might otherwise be construed to be outside of its scope.

22.     The use of present tense includes the past tense and vice versa.

23.     The use of singular form includes the plural and vice versa.

## **INSTRUCTIONS**

1.     This request seeks disclosure to the full extent of the Federal Rules of Civil Procedure and shall be interpreted as inclusive rather than exclusive.

2.     The following requests call for the production of all Documents available to You, including all Documents in Your actual or constructive possession, custody, or control.

3.     A request for the production of a Document shall call for the production of the entire Document, with all attachments and enclosures, and not for portions thereof, regardless of whether You consider the attachments and enclosures to be relevant or responsive to these requests.

4.     A request for the production of a Document shall call for the production of the original Document or copy of the original and any non-identical copies of the original.

5.     All Documents existing in electronic format shall be produced in multiple page, searchable PDF format at a resolution of at least 300 dpi in accordance with the following:

a) PDF files shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending of each document.

b) For documents that already exist in PDF format prior to production (i.e., that the producing party receives from a client or third party in PDF format), the producing party may provide them in that same PDF format, whether searchable or non-searchable. For documents converted to PDF format prior to production, the producing party shall make reasonable efforts to convert to searchable PDF.

c) Email attachments and embedded files must be mapped to their parent by the Document or by production number. If attachments and embedded files are combined with their parent Documents, then "BeginAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment or embedded Document must be included.

6.      Documents that do not exist in electronic format are to be produced as they are ordinarily kept with any identifying labels, file markings, or similar identifying features, or shall be organized and labeled to correspond to the categories requested herein. If there are no Documents in response to a particular request or if you withhold any responsive Documents or categories of Documents based on any objections, you shall state so in writing.

7.      If You object in whole or in part to any of the following requests, please state in complete detail the basis for Your objection and all facts upon which You rely to support Your objection. In addition, identify all Documents for which You are interposing any objection and produce Documents responsive to that portion of the Request to which You do not object.

8.      If You cannot comply with any of the following Requests in full after exercising due diligence to locate the relevant Documents, so state and produce Documents responsive to the Requests to the extent possible. Specify Your inability to produce the remainder and state whatever Information or knowledge You may have regarding the unproduced Documents and all steps taken to secure the same.

9.      If You know or have reason to believe certain Documents exist but they are not in Your possession, custody, or control, so state, and provide as complete a description of the substance and location of the Document(s) as You can. Whenever You are unable to state a full response or fully produce Documents in response to these discovery requests based upon Your own personal knowledge and what is in Your actual or constructive possession, custody, or control, You are instructed to so state, and instead respond (and produce Documents) to the extent possible what You believe the correct response to be and the Documents upon which You base Your response, and identify the Person(s) or entities You believe to have the remaining Documents which You are not producing.

10.     If any Document called for by these requests for production is withheld under claim of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, You are required to furnish a privilege log with Your response with the following Information about the Document:

        a.      the identity of the Document and a description of the general nature of each Document for which the claim of privilege or immunity is asserted that is sufficiently specific to allow the court to determine whether the Document is or is not, in fact, privileged;

b.    the date, "from" field, "to" field, "cc" field, "subject" field, and the present

location and custodian of the Documents;

c.    each and every basis on which claim of privilege or immunity is asserted, and

the specific request(s) to which the Document is responsive.

11.    Whenever a Document is not produced in full, state with particularity the reason it

is not being produced in full, and describe, to the best of Your knowledge, Information and belief,

and with as much particularity as possible, those portions of the Document which were not

produced.

12.    If You contend that any of the DOCUMENTS are confidential, you may designate

them as such in accordance with the Protective Order entered in this action, a copy of which is

attached as Exhibit 1.

## SPECIFIC REQUESTS FOR PRODUCTION

1.    All DOCUMENTS and COMMUNICATIONS RELATING TO the ASSERTED

PATENT or RELATED PATENTS.

2.    ALL DOCUMENTS and COMMUNICATIONS RELATING TO the research or

development of the subject matter claimed in the ASSERTED PATENT or RELATED

PATENTS, INCLUDING but not limited to DOCUMENTS and COMMUNICATIONS

RELATING TO the conception and reduction to practice (both actual and constructive) of the

purported invention(s) described and/or claimed in the ASSERTED PATENT or RELATED

PATENTS.

3.    All DOCUMENTS and COMMUNICATIONS RELATING TO the preparation,

filing, or prosecution of the application for the ASSERTED PATENT or RELATED PATENTS,

INCLUDING, but not limited to, all drafts and drawings and all COMMUNICATIONS with the NAMED INVENTOR and all COMMUNICATIONS with any other patent agent or attorney for an ASSERTED PATENT or RELATED PATENTS.

4.      All DOCUMENTS and COMMUNICATIONS RELATING TO any filings or correspondence with any government agencies, domestic or foreign, RELATING TO the ASSERTED PATENT or RELATED PATENTS.

5.      All DOCUMENTS and COMMUNICATIONS RELATING TO any PRIOR ART collected, identified, or considered in connection with the applications for the ASSERTED PATENT or RELATED PATENTS by YOU or anyone else involved in the preparation, filing, or prosecution of such applications, INCLUDING DOCUMENTS and COMMUNICATIONS RELATING TO the circumstances through which the PRIOR ART was identified.

6.      All PRIOR ART sent to YOU by the NAMED INVENTOR, the PLAINTIFF, or any other attorney or agent in connection with the preparation, filing, or prosecution of the applications for the ASSERTED PATENT or RELATED PATENTS.

7.      All DOCUMENTS and COMMUNICATIONS, INCLUDING WITH the NAMED INVENTOR or PLAINTIFF, RELATING TO DUO, any THING made, sold or offered for sale by DUO, or any product, service, or application made, sold or offered for sale by DUO.

8.      All invention disclosures or other DOCUMENTS RELATING TO the decision to seek patent protection for any subject matter claimed in the ASSERTED PATENT or RELATED PATENTS.

9.      All freedom to operate opinions, or any other analysis, opinion, or evaluation relating to any PRIOR ART or patents, regarding any product, service, or application developed or offered by PLAINTIFF.

10.     All DOCUMENTS and COMMUNICATIONS RELATING TO this ACTION.

11.     ALL agreements (draft or executed) involving YOU REGARDING the ASSERTED PATENT or RELATED PATENTS.

12.     ALL agreements (draft or executed) involving YOU REGARDING this ACTION.

13.     ALL agreements (draft or executed) between YOU and PLAINTIFF or YOU and the NAMED INVENTOR.

14.     ALL COMMUNICATIONS between YOU and PLAINTIFF or YOU and the NAMED INVENTOR.

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COSMOKEY SOLUTIONS GMBH  )
& CO. KG,                 )
                          )
     Plaintiff,  )  C.A. No. 18-1477-CFC
                          )
     v.          )  **JURY TRIAL DEMANDED**
                          )
DUO SECURITY, INC.,       )
                          )
     Defendant.  )

## ~~[PROPOSED]~~ PROTECTIVE ORDER

WHEREAS, it may be necessary or desirable to take discovery of information which is believed to be confidential and proprietary by the holder thereof; and

WHEREAS, the parties hereto desire to obtain a protective order to prevent dissemination and unnecessary disclosure of such information on the public record;

WHEREAS, such information likely will include, among other things, information about sensitive products and/or services, proprietary design and development materials of products and/or services, source code, strategic decision-making information, and financial, marketing and sales information;

IT IS HEREBY ORDERED, pursuant to Federal Rules of Civil Procedure, Rule 26(c), that the following provisions shall govern the handling of such confidential information and documents in these proceedings.

1.    PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve

production of confidential, proprietary, or private information for which special

protection from public disclosure and from use for any purpose other than

prosecuting this litigation may be warranted.  Accordingly, the Court enters the

following Protective Order.  This Order does not confer blanket protections on all

disclosures or responses to discovery and that the protection it affords from public

disclosure and use extends only to the limited information or items that are entitled

to confidential treatment under the applicable legal principles.  This Order also

does not entitle the Parties to file confidential information under seal in any

manner other than that mandated by Local Rule of Practice and Procedure 5.1.3.

2.    DEFINITIONS

2.1    Disclosure or Discovery Material: all items or information, regardless

of the medium or manner in which it is generated, stored, or maintained (including,

among other things, testimony, transcripts, and tangible things), that are produced

or generated in disclosures or responses to discovery in this matter.

2.2    Party: any party to this action, including all of its officers, directors,

employees, consultants, retained experts, including Experts, as defined below, and

Outside Counsel of Record (and their support staffs).

2

2.3    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.4    Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.5    Challenging Party: a Party or Non-Party that challenges the designation of Information or items under this Order.

2.6    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.7    Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

2.8    Outside Counsel of Record: attorneys who are not employees of a Party to this action but are retained to represent or advise a Party to this action and have appeared in this action on behalf of that Party or are employed by a law firm which has appeared on behalf of that Party in this action.

2.9    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its Counsel to serve as an expert witness or as an expert consultant in this action, and who are not regular employees of a Party.

3

2.10  Professional Vendors: persons or entities retained by a Party to provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.11  Source Code: extremely sensitive information representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms and structure of software or hardware designs, as well as bioinformatics algorithms or similar information.

2.12  Litigation: The term "Litigation" shall mean the above-captioned case, Civ. No. 18-1477-CFC, in the United States District Court for the District of Delaware, including any appeals therefrom.

3.  SCOPE OF PROTECTED MATERIALS

"Protected Material" includes any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or as "HIGHLY CONFIDENTIAL – SOURCE CODE," including Source Code, as defined below.

3.1  "CONFIDENTIAL": Discovery Material (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, proprietary, and/or commercially sensitive information including but

not limited to competitively sensitive technical, marketing, financial, sales, or other confidential business information.

3.2    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY": Discovery Material or tangible things that contain or reflect confidential, proprietary, and/or commercially-sensitive information[1] that should not be accessible to any employees, officers, or directors of a named Party or of any parent, subsidiary, or affiliate of any named Party.

3.3    "HIGHLY CONFIDENTIAL – SOURCE CODE":  Discovery Material that contains or reflects information that constitutes Source Code that the Producing Party reasonably believes the disclosure of which would create substantial risk of serious harm that could not be avoided by less restrictive means. To the extent production of Source Code or sequence information becomes necessary in this case, including but not limited to the information described in Section 2.11, a Producing Party may designate such Source Code as "HIGHLY CONFIDENTIAL – SOURCE CODE."

---

[1] The Parties agree that each party may need to review certain financial information designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to evaluate damages and assess potential settlement.  Each party may request the limited disclosure of specific materials or information on a case-by-case basis.  The Parties agree not to unreasonably withhold disclosures of those materials.  The parties will confer on any such requests and, to the extent they cannot agree, may raise this issue or related issues with the Court.

3.4    Additional Categories. The Parties may agree to add additional

categories of Protected Material (in addition to material designated

"CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE") from time to time

as may be necessary or appropriate. If the Parties cannot resolve the issue of

whether this order should be amended, the Parties may utilize procedures set forth

in below Section 12 of the Parties' Scheduling Order (D.I. 45) to resolve the

matter. Disclosure of the Protected Material, however, shall still be made, but with

the highest level of confidentiality available under this Order, pending resolution

of the objection by Parties or the Court, as the case may be.

The protections conferred by this Order cover not only Protected Material,

but also (1) any information copied or extracted from Protected Material; and (2)

all copies, excerpts, summaries, or compilations of Protected Material.

However, the protections conferred by this Order and Protected Materials

generally do not cover the following information: (a) any information that is in the

public domain at the time of disclosure to a Receiving Party or becomes part of the

public domain after its disclosure to a Receiving Party as a result of publication not

involving a violation of this Order, including becoming part of the public record

through trial or otherwise; and (b) any information known to the Receiving Party

through proper means prior to the disclosure or obtained by the Receiving Party

after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Nothing in this Order is intended to preclude Counsel from advising Counsel's client based on Protected Material.

4.   DESIGNATING PROTECTED MATERIAL

4.1   Manner and Timing of Designations. Except as otherwise provided in this Order or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

(a)   for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains Protected Material.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for

7

inspection shall be deemed "HIGHLY CONFIDENTIAL – SOURCE CODE."
After the inspecting Party has identified the documents it wants copied and
produced, the Producing Party must determine which documents, or portions
thereof, qualify for protection under this Order. Then, before producing the
specified documents, the Producing Party must affix the appropriate legend
"CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES
ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that
contains Protected Material. Information which becomes available to any party via
inspection, measuring, analyzing, or testing of any document or thing designated as
"CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES
ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to this
Paragraph or which is prepared or derived by utilizing information designated as
"CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES
ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" and supplied under
this Order, shall also be considered "CONFIDENTIAL," "HIGHLY
CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY
CONFIDENTIAL – SOURCE CODE" under this Order.

   (b) for testimony given in a deposition or in other pretrial or trial
proceedings, it may be designated by any Party as "CONFIDENTIAL," "HIGHLY
CONFIDENTIAL e ATTORNEYS' EYES ONLY," or "HIGHLY

CONFIDENTIAL – SOURCE CODE" as appropriate in accordance with this Order. Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order. Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as confidential. Nothing in this provision shall deemed as prohibiting any Party from availing itself of the procedures set forth in Section 5 for challenging the designation of deposition testimony as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

Parties shall give the other Parties notice if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other Parties can ensure that only authorized individuals who have signed the "Acknowledgment of Protective Order," in the form attached as EXHIBIT A, are present at those proceedings. Parties shall give the other Parties notice if they anticipate having individuals attend a deposition, hearing, or other proceeding if such individuals have not signed the "Acknowledgement of Protective Order" and

otherwise complied with this Order with respect to the receipt of Protected Material. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material and the level of protection being asserted by the Designating Party. If only a portion of the transcript is designated, the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material. The Designating Party shall inform the court reporter of these requirements.

If the deposition is videotaped, the video technician shall mark the original and all copies of the videotape to indicate that the contents of the videotape are subject to this Order, substantially along the lines of "This videotape contains confidential testimony used in this case. Its contents may not be viewed, displayed, or revealed except by order of the Court or pursuant to written stipulation of the Parties."

      (c)     for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent

place on the exterior of the container or containers in which the information or
item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE
CODE."

       (d)    The Parties agree to meet and confer in good faith prior to trial
to establish procedures concerning the use of "CONFIDENTIAL," "HIGHLY
CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY
CONFIDENTIAL – SOURCE CODE" at trial. Nothing in this Order shall
preclude any Party from moving the Court to seal the courtroom, trial exhibits, or
the trial transcript in order to preserve the confidential nature of any
"CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES
ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" used at trial.

    4.2    Exercise of Restraint and Care in Designating Material for Protection.
Each Party or Non-Party that designates information or items for protection under
this Order must take care to limit any such designation to specific material that
qualifies under the appropriate standards.

    If it comes to a Designating Party's attention that information or items that it
designated for protection do not qualify for protection at all or do not qualify for
the level of protection initially asserted, that Designating Party must promptly
notify all other parties that it is withdrawing the previous designation.

4.3    Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items, or an inadvertent failure to designate materials correctly does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party shall treat the disclosed information as if it had been initially designated as Protected Material upon receipt of written notice from the Producing Party.  To the extent the Receiving Party has already disclosed such information, such disclosure does not violate this Protective Order, but the Receiving Party shall make reasonable efforts to promptly collect any copies of disclosed material that have been provided to individuals other than those authorized under this Protective Order and shall destroy or return them to the Producing Party.

5.    CHALLENGING CONFIDENTIALITY DESIGNATIONS.

5.1    Timing of Challenges. Any Party may challenge the other Party's designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

12

5.2    Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for the challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to the designation is being made in accordance with this specific paragraph of this Order. The Parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient) within seven (7) days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or if it establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

5.3    Judicial Intervention. If the Parties cannot resolve a designation challenge without court intervention, the Party seeking to maintain the challenged designation shall utilize the procedures set forth in Section 12 of the Parties' Scheduling Order (D.I. 45) to request court intervention within seven (7) days of

13

the meet and confer. All Parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge. The Designating Party who has made a claim that a document qualifies as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" shall have the burden of proving that the material it designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" contains or discloses the Designating Party's confidential and proprietary business information, processes, operations, research, technical or developmental information, production, marketing, sales, shipments or other proprietary data or confidential information of commercial value, including, but not limited to, trade secrets, or is subject to confidentiality obligations to third parties.

6.     ACCESS TO AND USE OF PROTECTED MATERIAL

6.1     Basic Principles. Except as expressly permitted by Section 10, a Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this Litigation and for no other purpose— including, without limitation, for purpose of preparing, filing, or prosecuting any patent application, continuation, or divisional patent application, reissue patent

14

application, or request for reexamination of the asserted patent(s) or any others, including oppositions thereto, or for preparing for, prosecuting, defending, or settling another litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.

When the Litigation has been terminated, a Receiving Party must comply with the provisions of Section 12 below.

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

6.2    Disclosure of Protected Information, CONFIDENTIAL.  Unless agreed to by the Designating Party in writing or the Court directs otherwise, Protected Material marked "CONFIDENTIAL" may be disclosed only to:

(a)    the Court, its technical advisor, its personnel, and the jury in this Litigation;

(b)    Any mediators or settlement officers who are assigned per order of the Court to hear any matter that is a part of this Litigation, and their staff;

(c)    court reporters and videographers and necessary stenographic and clerical personnel thereof engaged for depositions, inspections, and other proceedings in this Litigation involving information designated as "CONFIDENTIAL";

       (d)     the Receiving Party's Outside Counsel of Record, their staff, and their commercial copying vendors, data processing vendors, electronic discovery vendors, and/or database services;

       (e)     subject to Section 7, approved persons or entities engaged by a Party or counsel as consultants, experts, translators, or interpreters to consult, testify, translate, or interpret in the case, excluding employees, officers or directors of a named Party or of any parent, subsidiary, or affiliate of any named Party, and provided that, prior to receiving the "CONFIDENTIAL" information, such persons or entities execute an undertaking in the form attached as EXHIBIT A agreeing to be bound by the terms of this Order;

       (f)     persons or entities engaged by a Party or counsel for a Party to provide jury or trial consulting services, provided that, prior to receiving the marked documents, such persons or entities execute an undertaking in the form attached as EXHIBIT A, agreeing to be bound by the terms of this Order. Where a company or firm is retained for such litigation support, it shall be sufficient for purposes of this Order that a representative of such company or firm sign the attached Acknowledgement on behalf of the company or firm. Such representative shall be responsible for ensuring that any employee, consultant, or representative of that company or firm who receives "CONFIDENTIAL" information abides by the provisions of this Order;

(g)     persons engaged by a Party or counsel for a Party to prepare graphic or visual aids, or demonstrative exhibits, or Professional Vendors provided that, prior to receiving the marked documents, such persons execute an undertaking in the form attached as EXHIBIT A, agreeing to be bound by the terms of this Order. Where a company or firm is retained for such litigation support, it shall be sufficient for purposes of this Order that a representative of such company or firm sign the attached Acknowledgement on behalf of the company or firm. Such representative shall be responsible for ensuring that any employee, consultant, or representative of that company or firm who receives "CONFIDENTIAL" information abides by the provisions of this Order;

(h)     No more than two (2) in-house counsel of the Receiving Party (1) who have no involvement in competitive decision-making, and (2) have responsibility for making decisions dealing directly with the litigation of this Action or who are assisting outside counsel in the litigation of this Action provided that, prior to receiving the marked documents, such persons execute an undertaking in the form attached as EXHIBIT A, agreeing to be bound by the terms of this Order, and return the executed EXHIBIT A to the Producing Party;

(i)     the author or recipient of the document or the original source of the information contained in the document or a custodian or other person who otherwise possessed or knew the information; and

17

Case 1:18-cv-01477-CEB-CJB   Document 57   Filed 03/28/23   Page 4 of 48 PageID #: 936
Case 1:18-cv-01477-CEB-CJB   Document 57   Filed 03/28/23   Page 4 of 48 PageID #: 31936

PageID #: 31937

(j)     mock jurors or focus group members, provided that, prior to receiving the marked documents, such persons execute an undertaking in the form attached as EXHIBIT B, agreeing to be bound by the terms of this Order.

6.3     Disclosure of Protected Information, HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.  Unless agreed to by the Designating Party in writing or the Court directs otherwise, Protected Material marked "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" may be disclosed only to individuals listed in Section 6.2(a), 6.2(b), 6.2(c), 6.2(d), 6.2(e), 6.2(f), 6.2(g), 6.2(i), and 6.2(j).

6.4     Access to Source Code and Sequence Information Production.

(a)     Any Source Code or Sequence Information produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours (which for purposes of this paragraph shall be 9:30 a.m. through 5:00 p.m. local time, on weekdays that are not Federal holidays) or at other mutually agreeable times, at the offices of the Producing Party's counsel or another mutually agreed upon location or means. The Source Code or Sequence Information shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, or a remote thin client over a secured connection to Defendant's source code repository (that is, the computers may not

18

be linked to any network, including a local area network ("LAN"), an intranet or

the Internet) ("Secured Computer"). When source code is provided on a Secured

Computer that is a remote thin client, it must function identically to a standalone

computer.  The standalone computer may only be located at the offices of the

Producing Party's outside counsel or another mutually agreed upon location.  The

Receiving Party shall not copy, remove, or otherwise transfer any portion of the

Source Code or Sequence Information onto any recordable media or recordable

device. The Producing Party may visually monitor the activities of the Receiving

Party's representatives during any Source Code or Sequence Information review,

but only to ensure that there is no unauthorized recording, copying or transmission

of the Source Code or Sequence Information. A receiving Party shall provide at

least five (5) business days' notice that it will be sending individuals authorized to

review Source Code prior to any such review. All persons viewing Source Code

shall sign on each day they view Source Code a log that will include the names of

persons who enter the Source Code review room to view the Source Code and

when they enter and depart. The Producing Party shall be responsible for providing

and maintaining said log. No outside electronic devices, recordable media or

recordable devices, including without limitation laptops, tablet devices, sound

recorders, computers, cellular telephones, peripheral equipment, cameras, CDs,

DVDs, or drives of any kind, shall be permitted into the Source Code review room,

except as provided in subsection 6.4(h) below, and except that reviewers will be permitted to maintain contact with a cellular phone or similar device for purposes of being notified of personal or family matters, which will be put away when not being accessed for that purpose.

      (b)    The Source Code provider shall provide a manifest of the contents to be reviewed by the Receiving Party of the secured computer. This manifest, which will be supplied in at least electronic form, will list the name and location of produced Source Code on the Secured Computer.

      (c)    No copies of all or any portion of the Source Code may leave the Source Code review room except as otherwise provided herein. Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein. The Receiving Party may request pages to be printed by "printing to PDF" and saving the pages to a designated folder on the Source Code computer. The producing Party shall deliver to the receiving Party up to four (4) hard-copy (i.e., non-electronic) copies of all requested Source Code in paper form including bates numbers and the label "HIGHLY CONFIDENTIAL – SOURCE CODE" within five (5) business days of the receiving Party's request. The receiving Party shall only request printing of limited portions of the Source Code only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report), or for deposition or trial. The

producing Party shall not unreasonably deny a receiving Party's request to print

additional copies, providing that the request is for good cause and for use that

otherwise complies with this Order. The receiving Party shall maintain a log of all

copies of the source code (received from a producing Party) that are provided by

the receiving Party to any qualified person. The log shall include the names of a

custodian for each copy and locations where the copies are stored. Any printed

portion that consists of more than twenty (20) pages of a continuous block of

Source Code shall be presumed to be excessive, and the burden shall be on the

receiving Party to demonstrate the need for such a printed copy. No more than 500

pages of the total Source Code may be printed, except pursuant to agreement of the

Parties or Court order. To the extent the receiving Party requests more than 500

total pages of Source Code or more than 20 consecutive pages of Source Code be

printed, the parties shall meet and confer. To the extent they are unable to reach

agreement, the receiving Party may utilize the discovery dispute procedure as set

forth in the Scheduling Order, and the burden shall be on the Receiving Party to

demonstrate the need for such requested pages. The receiving Party shall not

request printed Source Code in order to review blocks of Source Code elsewhere in

the first instance, i.e., as an alternative to reviewing that Source Code

electronically on the Source Code Computer, as the Parties acknowledge and agree

that the purpose of the protections herein would be frustrated by printing portions

21

of Source Code for review and analysis elsewhere, and that printing is permitted only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report).

        (d)    The secured computer shall include software utilities which will allow counsel and experts to view, search, and analyze the source code. The producing Party shall install reasonably available commercial tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist, are presently used in the ordinary course of the producing Party's business, and do not require payment of additional license fees.  In no event shall the receiving Party use any compilers, interpreters or simulators in connection with the producing Party's Source Code absent the consent of the producing Party. The receiving Party may request that additional software tools be installed on the Secured Computer to assist the receiving Party's review of the Source Code.  The receiving Party shall be responsible for providing the tools or licenses to the tools that it wishes to use to the producing Party at least five (5) business days prior to the first date on which access to the Secured Computer is sought so that the producing Party may install such tools on the Secured Computer. The producing Party shall use best efforts to install the requested tools on the Secured Computer but is not obligated to ensure that the requested tools are operational on the Secured Computer.  If the Parties are unable to agree on the

22

additional requested software tools, the receiving Party may seek an Order from the Court after making a good faith effort to resolve the dispute.

(e)     The Receiving Party shall maintain a record of any individual who has inspected any portion of the Source Code or Sequence Information in electronic or paper form. The Receiving Party shall maintain all paper copies of any printed portions of the Source Code or Sequence Information in a secured, locked area. The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual, and the deposition record will identify the exhibit by its production numbers.

(f)     Access to Protected Material designated HIGHLY CONFIDENTIAL – SOURCE CODE shall be limited to outside counsel and up to

three (3) outside consultants or experts[2] (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to Paragraph 6.2(e) above. To the extent a Party shall seek access to HIGHLY CONFIDENTIAL – SOURCE CODE for more than three outside consultants or experts, the parties shall meet and confer. To the extent they are unable to reach agreement, the receiving Party may utilize the discovery dispute procedure as set forth in the Scheduling Order, and the burden shall be on the Receiving Party to demonstrate the need for such additional access. A receiving Party may include excerpts of Source Code in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document ("Source Code Documents") only to the extent necessary, provided that the Source Code Documents are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders.

(g)     Access to and review of Source Code shall be strictly for the purpose of investigating the claims and defenses at issue in this case.  No person

---

[2] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert.

shall review or analyze any Source Code for purposes unrelated to this case, and no person may use any knowledge gained as a result of reviewing Source Code in this case in any other pending or future dispute, proceeding, or litigation.

(h)     Solely for the purpose of investigating the claims and defenses at issue in this case as described in subparagraph 6.4(g) the Receiving Party shall be entitled to take notes (electronic or non-electronic) relating to the Source Code but may not copy the Source Code into such notes.  To the extent the Receiving Party desires to take notes electronically, the producing Party shall provide a stand-alone note-taking computer (e.g., a computer, which is distinct from the Source Code Computer, that is not linked to any network, including a LAN, an intranet or the Internet, and has image making functionality of any type disabled, including but not limited to camera or video functionality) ("note-taking computer") in the Source Code review room for the receiving Party's use in taking such notes.  The notes shall not contain verbatim copies of lines of source code, but may contain file, path, function and variable names, and line number information.  Producing party shall install commercially reasonable tools that are sufficient for taking and saving of encrypted notes on the note-taking computer, and do not require payment of additional license fees.  The producing Party shall not deny receiving Party's reasonable requests for specific note-taking tools.  The producing Party shall also provide a maximum of three (3) encrypted USB drives onto which the receiving

Party may copy such notes at the end of a source code review session, unless otherwise agreed upon by the receiving and producing Party. Whether the copying of such notes from the note-taking computer onto the encrypted USB drive(s) occurs inside or outside of the Source Code review room will be at the discretion of the producing Party. The producing Party may observe the copying of such notes from the note-taking computer onto the encrypted USB drive(s) but may not access or review the content of such notes. The receiving Party shall be responsible for deleting any notes and any files containing information remaining on the computer that refer to, reference, or otherwise permit the review or reconstruction in whole or part of, such notes, including without limitation any temporary files or file fragments, remaining on the note-taking computer. The receiving Party's notes shall be treated in accordance with the requirements of Fed. R. Civ. P. 26(b)(4)(B) or (C) as appropriate. Any notes (electronic or non-electronic) relating to the Source Code will be treated as HIGHLY CONFIDENTIAL - SOURCE CODE, and shall further be subject to subparagraph 6.4(j).

(i)     Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. No other copying or transcribing of Source Code Material is allowed beyond that described in this Protective Order. No person shall copy, e-mail,

transmit, upload, download, print, photograph or otherwise duplicate any portion of the Source Code Material, unless explicitly permitted by this Protective Order; and

(j)     Within thirty (30) calendar days after the issuance of a final, non-appealable decision resolving all issues in the case, the receiving Party must, at the producing Party's option, either serve upon the producing Party, or certify the destruction of, all copies of the producing Party's Source Code Material.  In addition, all persons to whom the copies of the Source Code Material were provided must certify in writing that all copies of the Source Code Material were returned to the receiving Party's counsel who provided them the information and that they will make no use of the Source Code Material or of any knowledge gained from the Source Code Material in any future endeavor.

6.5     Nothing in this Protective Order shall prohibit counsel or a party from disclosing a document containing information designated "CONFIDENTIAL," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," "HIGHLY CONFIDENTIAL – SOURCE CODE" at deposition, at trial, or at any other court hearing or mediation related to the above-captioned action upon court order or prior agreement of the Parties. In the event of such disclosure or use of a "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" document or other information, the corresponding testimony relating to such a document in the

27

context of a deposition, shall be designated as, respectively, "CONFIDENTIAL,"
"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY
CONFIDENTIAL – SOURCE CODE."

7.   CONDITIONS ON ACCESS TO PROTECTED MATERIAL.

7.1   Consultants and Experts. Prior to a Receiving Party giving, showing,
disclosing, making available or communicating Protected Material of a Producing
Party to any expert or consultant under Section 7, the Receiving Party shall serve a
written notice on the Producing Party that includes: (i) the person's name and
business address; (ii) the person's present employer and title (along with a job
description); (iii) the person's up-to-date curriculum vitae or resume; (iv) a list of
the cases (by name and number of the case, filing date, and location of court) in
which the person has offered expert testimony, including through a declaration,
report, or testimony at a deposition or trial for the past five years; (v) a list of each
person or entity for which the expert or consultant has served as an expert or
consulted for in the preceding five years, including whom the expert or consultant
has received compensation or funding for work in this or her areas of expertise;[3]

---

[3] If the Expert believes any of this information is subject to a confidentiality
obligation to a third party, then the Expert should provide whatever information the
Expert believes can be disclosed without violating any confidentiality agreements,
and the Party seeking to disclose to the Expert shall be available to meet and confer
with the producing Party regarding any such engagement.

and (vi) any previous or current relationship (personal or professional) with any of the Parties. If the up-to-date curriculum vitae or resume of the expert or consultant provides the information required under this paragraph, then the information need not be separately provided. The Receiving Party shall include with such notice, a copy of the Acknowledgment of Protective Order, in the form attached as EXHIBIT A, signed by the proposed expert or consultant agreeing to be bound by the terms of this Order.

7.2     Objections to Proposed Experts or Consultants. The Producing Party shall be entitled to object to such disclosure to the expert or consultant seven (7) business days after receipt of the Acknowledgment of Protective Order executed by such expert or consultant by stating specifically in writing the reasons why the expert or consultant should not receive the Protected Material. Outside Counsel of Record for the Producing Party and Outside Counsel of Record for the Receiving Party shall meet and confer within seven (7) business days after the Producing Party serves its objection, for the purpose of attempting to resolve the objection.  If the objection is not resolved by the Parties, the Producing Party must initiate the dispute resolution procedures set forth in Section 12 of the Scheduling Order (D.I. 45). Within seven (7) business days after such meet and confer. Otherwise, the Producing Party shall be deemed to have withdrawn its objection. In any such request before the Court, the Producing Party shall set forth the Parties' meet-and-

confer efforts and shall bear the burden of showing the need for confidentiality and the grounds for its objection. No disclosure of Protected Material of the Producing Party shall be made to the proposed expert or consultant until the Parties resolve the matter, the objection is withdrawn, or the Court permits such disclosure. The filing and pendency of objections shall not limit, delay, or defer any disclosures of Protected Material to persons as to whom no such objection has been made, nor shall it delay or defer any other pending discovery unless the level of confidentiality bears directly on the objecting Party's ability to conduct such discovery.

7.3     Authorization and Acknowledgment. To the extent required by Section 7, each person authorized to receive Protected Material under this Order (excluding Judges, Magistrate Judges, judicial law clerks, and clerical personnel of the Court before which this Litigation is pending or qualified court reporters, as well as third party contractors and their employees involved solely in document management, delivery or copying services for this Litigation) to whom Protected Material is to be given, shown, disclosed, made available or communicated in any way, shall first execute an Acknowledgment of Protective Order in the form attached as EXHIBIT A, agreeing to be bound by the terms of this Order, acknowledging that Protected Material is subject to this Order, that the person is authorized under Section 7 to receive Protected Material marked as

30

"CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" has read this Order,

that such person agrees to comply with, and be bound by, this Order, and that such

person is aware that contempt sanctions may be entered for violation of this Order.

8. **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

8.1    If a Party is served with a subpoena or a court order issued in other

litigation that compels disclosure of any information or items designated in this

Litigation as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS'

EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE,"

the Party shall:

(a)    promptly notify in writing the Designating Party. Such

notification shall include a copy of the subpoena or court order;

(b)    promptly notify in writing the Party who caused the subpoena

or order to issue in the other litigation that some or all of the material covered by

the subpoena or order is subject to this Protective Order. Such notification shall

include a copy of this Stipulated Protective Order; and

(c)    cooperate with respect to all reasonable procedures sought to be

pursued by the Designating Party whose Protected Material may be affected.

8.2    If the Designating Party timely seeks a protective order, the Party

served with the subpoena or court order shall not produce any information

designated in this Litigation as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material — and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Litigation to disobey a lawful directive from another court.

9.   **A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION**

9.1   The terms of this Order are applicable to information produced by a Non-Party in this Litigation and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

9.2   In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party to not produce the Non-Party's confidential information, then the Party shall:

(a)     promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(b)     promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(c)     make the information requested available for inspection by the Non-Party.

9.3     If the Non-Party fails to object or seek a protective order from this court within fourteen (14) days of receiving the notice and accompanying information, the Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

9.4     If a Party seeks discovery from a Non-Party, either the Non-Party or the Parties may invoke the terms of this Order with respect to any confidential information provided by the Non-Party to the Parties by so advising all Parties to

the above-captioned cases in writing. Any such Non-Party shall have standing to appear in the above-captioned cases to file motions and oppose motions, as necessary, to protect such Non-Party's rights in its confidential information.

10.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIALS

10.1   Nothing in this Order shall require production of documents, information or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. The Parties agree to exclude from discovery all draft expert reports and communications between a Party and an expert or consultant, as well as any staff, support personnel, contract laboratory, or agent of such expert or consultant, unless such communication includes facts provided by, or documents provided and generated by, the Party who has engaged the expert or consultant, as well as any staff, support personnel, contract laboratory, or agent of such expert or consultant, and such facts or documents are relied upon by the expert or consultant in his or her expert report, declaration, or testimony submitted or provided in this Litigation.

10.2   Counsel shall exert their best efforts to identify information (including documents or material) protected from discovery by the attorney-client privilege, the work-product doctrine or any other applicable privilege or immunity prior to the disclosure of any such documents or material. Pursuant to Federal Rule of

Evidence 502(d), if information subject to a claim of attorney-client privilege,

work-product doctrine, or other privilege, doctrine, right, or immunity is

nevertheless inadvertently or unintentionally produced, such production shall in no

way prejudice or otherwise constitute a waiver or estoppel as to any such privilege,

doctrine, right or immunity in this or any other action.

10.3   If a Producing Party unintentionally or inadvertently discloses

information that it believes is protected privileged or otherwise immune from

discovery, the Party shall promptly so advise the Receiving Party in writing,

request the information be returned. If that request is made, no Party to this

Litigation shall thereafter assert on this basis that the disclosure waived any

privilege or immunity. If a Receiving Party receives information that the Receiving

Party believes may be subject to a claim of privilege or protection from discovery,

the Receiving Party shall promptly identify the information to the Producing Party.

10.4   When a Producing Party or Receiving Party identifies such privileged

or protected information, a Receiving Party: (i) shall not use, copy, or otherwise

disseminate the documents or materials, nor shall it disclose their substance for any

purpose; (ii) shall immediately take reasonable steps to retrieve the information

from others to which the Receiving Party disclosed the information; (iii) shall

immediately take all reasonable steps to destroy or return all copies to the

Producing Party; and (iv) shall confirm to the Producing Party the destruction

under (iii) above of all copies of the information not returned to the Producing Party by providing a written certification five (5) business days after receiving such request.

    10.5   No one shall use the fact or circumstances of production of the information in this Litigation to argue that any privilege or protection has been waived. Notwithstanding this provision, no Party or its Outside Counsel of Record shall be required to return or destroy any information that may exist on any disaster recovery backup system.

    10.6   Within ten (10) business days after receiving the documents or confirmation of their destruction from the Receiving Party, the Producing Party shall provide to the Receiving Party a list identifying all such inadvertently produced documents and things and provide details sufficient to allow the Receiving Party to assess the claim of attorney-client privilege, work-product, or other applicable privilege or immunity. To the extent that only a portion of a returned document or thing contains information that is protected by the attorney-client privilege or by work-product immunity, the Producing Party shall also provide to the Receiving Party replacements for the returned documents or things with the protected information redacted from such documents or things.

    10.7   Within five (5) days after receiving the list described in Paragraph 10.6, the Receiving Party shall notify the Producing Party in writing if it disputes

that any such document or thing was inadvertently produced or is protected by the
attorney-client privilege, work-product immunity, or any other applicable privilege
or immunity.

   10.8   Counsel shall endeavor in good faith to resolve any disputes over any
claimed privileges or immunities before presenting the matter to the Court for
resolution. If the Parties are unable to resolve the disputes, within fifteen (15)
business days after receiving the basis for the claim of privilege or immunity the
Receiving Party shall move the Court to compel the production of the returned
documents. The Receiving Party shall not use the substantive content of the
inadvertently produced document or thing to challenge its status as privileged or
immune, but may require the Producing Party to submit the document or thing
under seal for in camera review by the Court. If the Receiving Party does not move
the Court within fifteen (15) business days, the Receiving Party waives the
opportunity to challenge the claim of privilege for that document. The Parties agree
that any motions to compel and the related briefs will be filed under seal. The
Producing Party shall have the burden of proving that the documents in dispute are
protected by the applicable privilege or immunity.

   10.9   The disposition of documents containing information derived from
such inadvertently produced documents shall be addressed on a case-by-case basis
by agreement of counsel or by order of the Court.

10.10 To the extent that any such inadvertently produced material has been used, included, referenced or summarized in a pleading, deposition or other proceeding, nothing in this paragraph shall require a Receiving Party to purge, redact or excise any such information that has been used in good faith before a request for the return of the unintentionally produced material. Upon a request for return of the inadvertently produced material, the Receiving Party shall refrain from any further use or dissemination of the inadvertently produced material pending determination of the privilege status of the inadvertently produced material pursuant to this Order and all applicable laws and rules.

10.11 In the event that the Receiving Party discovers material it knows or reasonably should know to be inadvertently or unintentionally produced or disclosed that is protected by the attorney-client privilege or work-product immunity before it has been notified by the Producing Party, the Receiving Party must promptly notify, in writing, the Producing Party of the suspected inadvertent or unintentional disclosure.

10.12 The Parties shall confer regarding the content and timing of exchange of privilege logs. In no event shall the Parties be required to log documents, materials, information, communications, or things generated or modified after the filing of the original complaint. Additionally, in no event shall the Parties be

required to log documents, materials, information, communications, or things
without good cause.

11.   MISCELLANEOUS.

11.1   Privilege.  Consistent with the protections described herein, activities
undertaken in compliance with the duty to preserve information are protected from
disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

Each Party will review documents for privileged information (or other
information subject to a recognized immunity from discovery) prior to production,
and a Party may satisfy its review obligations through a reasonable electronic
search for potentially privileged documents. Documents that contain both
privileged and non-privileged information will be produced with the privileged
information redacted in such a way as to show the location of the redaction within
the document and the reason therefore (e.g., "Redacted – Privileged" or
equivalent).  Documents or portions thereof withheld on privilege grounds will be
identified in a privilege log in accordance with Fed. R. Civ. P. 26(b)(5), provided,
however, that neither Party shall be required to log privileged documents that were
created or received on or after the date of filing of the Complaint in the litigation.
Additionally, portions of documents withheld on privilege grounds need not be
identified in a privilege log as long as sufficient information remains on the face of

the document to provide the opposing Party with the type of information that would otherwise be included on a privilege log entry.

Privilege logs will be produced within forty-five (45) days following the production of the documents from which the privileged documents are withheld, unless otherwise agreed to in writing by the Parties. The log shall contain the following categories of information, to the extent known or reasonably available and to the extent providing this information will not destroy the privilege: (1) the name(s) of the person(s) who created and received the document or a copy of it; (2) the date of the document; (3) a description of the nature of the document sufficient to enable the receiving Party to assess the applicability of the privilege or protection; (4) privilege(s) claimed; and (5) the names and titles or designation as in-house or outside counsel of legal personnel on whom the claimed privilege is based. Should a Party seek to modify this list of categories of information, the parties shall meet and confer. To the extent they are unable to reach agreement, the receiving Party may utilize the discovery dispute procedure as set forth in the Scheduling Order.

11.2   Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

11.3   Rights to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to

disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

11.4   Export Control. Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere. The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

11.5   Filing Protected Material. Any Protected Material that is filed with the Court, including a pretrial filing, or an exhibit thereto, that discloses or relies on confidential documents, information or material, shall be filed under seal. The filing party shall be responsible for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" on the caption of the filing. The filing party is responsible for filing with the Court a public redacted version within seven (7) days of the original sealed filing, consistent with District of Delaware Local Rule 5.1.3., or as otherwise ordered by the Court, and shall confer with counsel for the other party regarding any proposed redactions before filing.

12.   FINAL DISPOSITION

12.1    Final disposition shall be deemed to be the later of (i) dismissal of all claims and defenses in this action, with or without prejudice; and (ii) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law (the "Final Disposition").

12.2    Even after Final Disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.

12.3    Within ninety (90) days after the Final Disposition of this Litigation, each Receiving Party must return all Protected Material to the Producing Party, or to its representative Outside Counsel of Record, or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 3.

13.    OTHER PROCEEDINGS

By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or Party subject to this Order who becomes subject to a motion to disclose another Party's Protected Material pursuant to this Order shall promptly notify that Party of the motion so that the Party may have an opportunity to appear and be heard on whether that information should be disclosed, as noted above in Section 10.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD**

Dated:  March 27, 2023

| | |
|---|---|
| POTTER ANDERSON CORROON LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| */s/ Bindu A. Palapura* | */s/ Jennifer Ying* |
| David E. Moore (#3983)<br>Bindu A. Palapura (#5370)<br>Andrew L. Brown (#6766)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, DE  19801<br>(302) 984-6000<br>dmoore@potteranderson.com<br>bpalapura@potteranderson.com<br>abrown@potteranderson.com | Jack B. Blumenfeld (#1014)<br>Jennifer Ying (#5550)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jying@morrisnichols.com |
| OF COUNSEL:<br>Scott T. Weingaertner<br>Stefan Mentzer<br>John Padro | OF COUNSEL:<br>Brian A. Rosenthal<br>Katherine Dominguez<br>Allen Kathir<br>Hyunjong Ryan Jin<br>GIBSON, DUNN & CRUTCHER LLP |

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

*Counsel for Plaintiff CosmoKey
Solutions GmbH & Co. KG*

200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

Ryan K. Iwahashi
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5300

Jaysen S. Chung
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
(415) 393-8200

*Counsel for Defendant Duo Security,
Inc.*

SO ORDERED, this __2nd__ day of __March__, 2023.

_____
Chief, United States District Judge

# EXHIBIT A

## ACKNOWLEDGEMENT OF PROTECTIVE ORDER

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 18-1477-CFC |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| DUO SECURITY, INC., | ) ) | |
| Defendant. | ) | |

I, _____, state that:

My present residential address is _____

\_\_\_\_\_.

My present employer is _____, and

the address of my present employer is _____.

My present occupation, job description, or title is _____

\_\_\_\_\_.

I have read and reviewed in its entirety the annexed Stipulated Protective

Order ("Protective Order") that has been signed and entered in this matter.

I hereby agree to be bound by and comply with the terms of the Protective

Order, and not to disseminate or disclose any information subject to the Protective

Order that I review or about which I am told, to any person, entity, party, or agency for any reason, except in accordance with the terms of the Protective Order. At the termination of this Litigation or at any time requested by Outside Counsel of Record for the Party by whom I am engaged, I will return or destroy all documents and other materials, including notes, computer data, summaries, abstracts, or any other materials containing or reflecting "CONFIDENTIAL", "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" Discovery Material which have come into my possession.

I understand that contempt sanctions may be entered for violation of this Protective Order and further agree to submit to the jurisdiction of this Court for the purposes of enforcement of the terms of this Protective Order.

DATED this _____ day of _____, 20__.

Signature:     _____

Printed Name:     _____

## EXHIBIT B

## ACKNOWLEDGEMENT OF PROTECTIVE ORDER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 18-1477-CFC |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| DUO SECURITY, INC., | ) ) | |
| Defendant. | ) | |

1.      This agreement is made between:

_____ [NAME OF COUNSEL or

CONSULTANT] and

_____ [NAME OF PARTICIPANT], residing at

_____ [ADDRESS OF PARTICIPANT].

2.      I understand that, in connection with the project in which I am

participating today, I may receive information that is confidential, and that I

may not share or disclose that information with anyone (including members

of my family) outside of this group.

47

3.      I agree not to disclose any information I learn here today to anyone outside of this group, or not to use such information in any way outside of my participation in this project today.

4.      I agree that, at the end of the project today, I will not keep or take with me any documents or other materials shown to me, or any notes or other records I may make about those documents or other materials shown to me today.

DATED this _____ day of _____, 20__.

Signature:          _____

Printed Name:          _____

# EXHIBIT 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1477 (JLH) (CJB) |
| | ) | |
| DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC., | ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SECOND AMENDED SUBPOENA

PLEASE TAKE NOTICE that the second amended subpoena attached hereto as Exhibit 1

will be served upon Richard M. Goldberg.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Travis J. Murray*

_____
Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants Duo Security LLC*
*f/k/a Duo Security, Inc. and Cisco Systems, Inc.*

OF COUNSEL:

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Jaysen S. Chung
Julian Manasse-Boetani
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
(415) 393-8200

**Exhibit 1**
02/12/2025

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA  92612-4412
(949) 451-3800

February 11, 2025

# EXHIBIT 1

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Delaware

| | | |
|---|---|---|
| CosmoKey Solutions GmbH & Co. KG | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 18-1477 (JLH) |
| DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:      Richard M. Goldberg, via email to counsel: Lauren Kuehn Pelletier, Goodwin Proctor LLP, 620 Eighth Avenue, New York, NY 10018 (LPelletier@goodwinlaw.com)

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: remote videoconferencing means | Date and Time: 02/12/2025 10:00 am Eastern |
|---|---|

The deposition will be recorded by this method:   Stenographic and audiotape and/or videotape; LiveNote

❒ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    02/11/2025

| CLERK OF COURT | OR | /s/ Jaysen S. Chung |
|---|---|---|
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Defendants Duo Security, LLC & Cisco Systems, Inc.          , who issues or requests this subpoena, are:
Jaysen S. Chung, Gibson, Dunn & Crutcher, LLP, One Embarcadero Center Suite 2600, San Francisco, CA 94111-3715 USA
jschung@gibsondunn.com, 415.393.8271

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.    18-1477 (JLH)

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
       **(i)** is a party or a party's officer; or
       **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
       **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
       **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

       **(i)** fails to allow a reasonable time to comply;
       **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
       **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
       **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

       **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
       **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
       **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
       **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
       **(i)** expressly make the claim; and
       **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 11, 2025, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on February

11, 2025, upon the following in the manner indicated:

David E. Moore, Esquire                                    *VIA ELECTRONIC MAIL*
Bindu A. Palapura, Esquire
Andrew M. Moshos, Esquire
POTTER, ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Scott T. Weingaertner, Esquire                            *VIA ELECTRONIC MAIL*
Stefan Mentzer, Esquire
John Padro, Esquire
Matthew Wisnieff, Esquire
Lauren Kuehn Pelletier, Esquire
Timothy Francis Keegan, Esquire
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018
*Attorneys for Plaintiff*

Farzad Feyzi, Esquire                                     *VIA ELECTRONIC MAIL*
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA  94063
*Attorneys for Plaintiff*

*/s/ Travis J. Murray*
_____
Travis J. Murray (#6882)

# EXHIBIT 19

## 2001 Duty of Disclosure, Candor, and Good Faith [R-08.2017]

*37 CFR 1.56  Duty to disclose information material to patentability.*

*[Editor Note: Para. (c)(3) below is applicable only to patent applications filed under 35 U.S.C. 111(a) or 363 on or after September 16, 2012.]*

- (a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application. There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by **§§ 1.97(b) (mpep-9020-appx-r.html#d0e321624) -(d) (mpep-9020-appx-r.html#d0e321674)** and **1.98 (mpep-9020-appx-r.html#d0e321738)** . However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. The Office encourages applicants to carefully examine:

  - (1) Prior art cited in search reports of a foreign patent office in a counterpart application, and
  - (2) The closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

- (b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

  - (1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or
  - (2) It refutes, or is inconsistent with, a position the applicant takes in:

    - (i) Opposing an argument of unpatentability relied on by the Office, or
    - (ii) Asserting an argument of patentability.

  - (3) A *prima facie* case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

- (c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

  - (1) Each inventor named in the application;
  - (2) Each attorney or agent who prepares or prosecutes the application; and
  - (3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application.

- (d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.
- (e) In any continuation-in-part application, the duty under this section includes the duty to disclose to the Office all information known to the person to be material to patentability, as defined in paragraph (b) of this section, which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application.

*37 CFR 1.56 (pre-AIA) Duty to disclose information material to patentability.*
*[Editor Note: Para. (c)(3) below is not applicable to patent applications filed under 35 U.S.C. 111(a) or 363 on or after Sept. 16, 2012.]*

*****

- (c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

  - *****

- (3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

*****

37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407) defines the duty to disclose information to the Office.

## 2001.01 Who Has Duty To Disclose [R-07.2022]

*37 CFR 1.56  Duty to disclose information material to patentability.*
*****

- (c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

  - (1) Each inventor named in the application;
  - (2) Each attorney or agent who prepares or prosecutes the application; and
  - (3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application.

*****

*37 CFR 1.56 (pre-AIA)  Duty to disclose information material to patentability.*
*****

- (c) Individuals associated with the filing or prosecution of a patent application within the meaning of this section are:

  - (1) Each inventor named in the application;
  - (2) Each attorney or agent who prepares or prosecutes the application; and
  - (3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application.

*****

The duty to disclose applies to matters pending before the USPTO and extends broadly to "[e]ach individual associated with the filing and prosecution of a patent application" and "[e]ach individual associated with the patent owner in a reexamination proceeding." 37 CFR 1.56(c) (mpep-9020-appx-r.html#aia_d0e319415) and 1.555(a) (mpep-9020-appx-r.html#d0e330662). For patent applications, including reissue applications, these individuals include each inventor named in the application, each attorney or agent who prepares or prosecutes the application, and "[e]very other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application." This is intended to make clear that the duty does not extend to typists, clerks, and similar personnel who assist with an application. For reexamination proceedings, these individuals include "the patent owner, each attorney or agent who represents the patent owner, and every other individual who is substantively involved on behalf of the patent owner in a reexamination proceeding." 37 CFR 1.555(a) (mpep-9020-appx-r.html#d0e330662).

The duty of disclosure applies only to individuals, not to organizations. For instance, the duty of disclosure would not apply to a corporation or institution as such. However, it would apply to individuals within the corporation or institution who were substantively involved in the preparation or prosecution of the application, and actions by such individuals may affect the rights of the corporation or institution.

## 2001.02 [Reserved]

## 2001.03 To Whom Duty of Disclosure Is Owed [R-08.2017]

37 CFR 1.56(a) (mpep-9020-appx-r.html#d0e319407) states that the "duty of candor and good faith" is owed "in dealing with the Office" and that all associated with the filing and prosecution of a patent application have a "duty to disclose to the Office" material information. This duty "in dealing with" and "to" the Office extends, of course, to all dealings which such individuals have with the Office, and is not limited to representations to or dealings with the examiner. For example, the duty would extend to proceedings before the Patent Trial and Appeal Board and the Office of the Commissioner for Patents.

## 2001.04 Information Under 37 CFR 1.56(a) [R-07.2022]

*37 CFR 1.56  Duty to disclose information material to patentability.*

- (a) A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. Information material to the patentability of a claim that is cancelled or withdrawn from consideration need not be submitted if the information is not material to the patentability of any claim remaining under consideration in the application. There is no duty to submit information which is not material to the patentability of any existing claim. The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by

§§ 1.97(b) (mpep-9020-appx-r.html#d0e321624) , 1.97(c) (mpep-9020-appx-r.html#d0e321674) and 1.98 (mpep-9020-appx-r.html#d0e321738) . However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. The Office encourages applicants to carefully examine:

- (1) Prior art cited in search reports of a foreign patent office in a counterpart application, and
- (2) The closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

*****

The language of 37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407) (and 37 CFR 1.555 (mpep-9020-appx-r.html#d0e330648) ) emphasizes that there is a duty of candor and good faith which is broader than the duty to disclose material information. 37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407) further states that "no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct." Specifically, the duty of candor and good faith, and by extension the duty to disclose, applies to positions taken by applicants or parties involving the claimed subject matter.

If a party to a USPTO proceeding discovers that an earlier position taken in a submission to the USPTO or another Government agency was incorrect or inconsistent with other statements made by the party, the party must promptly correct the record. See, e.g., *In re Tendler*, Proceeding No, D2013-17 (USPTO Jan. 1, 2014) (suspending a practitioner for four years for failure to correct the written record after learning of inaccuracies in a declaration the practitioner had filed). In the context of prosecution, an applicant must disclose to the USPTO any information that refutes, or is inconsistent with, a position the applicant takes in: (i) opposing an argument of unpatentability relied on by the Office, or (ii) asserting an argument of patentability. See 37 CFR 1.56(b)(2) (mpep-9020-appx-r.html#aia_d0e319444) . Patent owners may bring information, including prior art and incorrect or inconsistent positions, to the attention of the USPTO through supplemental examination, *ex parte* reexamination, reissue applications, or submissions under 37 CFR 1.501 (mpep-9020-appx-r.html#d0e329877) . During prosecution, third parties may have an opportunity to disclose information to the USPTO through third party submissions under 37 CFR 1.290 (mpep-9020-appx-r.html#ar_d1d8ad_19135_fd) and protests under 37 CFR 1.291 (mpep-9020-appx-r.html#d0e325685) . After issuance, third parties may disclose information directed to issued patents to the USPTO via submissions under 37 CFR 1.501 (mpep-9020-appx-r.html#d0e329877) , or in *ex parte* reexamination. A finding of "fraud," "inequitable conduct," or violation of duty of disclosure through bad faith or intentional misconduct with respect to any claim in an application or patent, renders all the claims thereof unpatentable or invalid. See MPEP § 2016 (s2016.html#d0e196894) .

The Office strives to issue valid patents. The Office has both an obligation not to unjustly issue patents and an obligation not to unjustly deny patents. Innovation and technological advancement are best served when an inventor is issued a patent with the scope of protection that is deserved. The rules serve to remind individuals associated with the preparation and prosecution of patent applications of their duty of candor and good faith in their dealings with the Office, and will aid the Office in receiving, in a timely manner, the information it needs to carry out effective and efficient examination of patent applications. Moreover, an incentive exists to submit material information to the Office because it may result in enhanced patent quality and may avoid later questions of materiality and intent to deceive.

The definition of materiality in 37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407) is intended to provide the Office with the information it needs in order for the examiner to make a proper and independent determination on patentability. The patent examiner should make the patentability determination after considering the relevant facts properly of record in the particular case.

37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407) states that each individual associated with the filing and prosecution of a patent application has a duty to disclose all information known to that individual to be material to patentability as defined in the section. Thus, the duty applies to contemporaneously or presently known information. The fact that information was known years ago does not mean that it was recognized that the information is material to the present application.

The term "information" as used in 37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407) means all of the kinds of information required to be disclosed and includes any information which is "material to patentability." Materiality is defined in 37 CFR 1.56(b) (mpep-9020-appx-r.html#d0e319407) and discussed herein at MPEP § 2001.05 (s2001.html#d0e195810) . In addition to prior art such as patents and publications, 37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407) includes, for example, information on enablement, possible prior public uses, sales, offers to sell, derived knowledge, prior invention by another, inventorship conflicts, litigation statements, and the like. "Materiality is not limited to prior art but embraces *any* information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234, 66 USPQ2d 1481, 1486 (Fed. Cir. 2003) (emphasis in original) (finding article which was not prior art to be material to enablement issue).

Patent examiners also have the ability to require submission of information that may be reasonably necessary to properly examine or treat a matter in a pending or abandoned application, but not necessarily "material to patentability." 37 CFR 1.105(a)(1) (mpep-9020-appx-r.html#aia_d0e322271) . The information that must be submitted to comply with a requirement for information under 37 CFR 1.105 (mpep-9020-appx-r.html#d0e322262) may not be material to patentability in itself under 37 CFR 1.56 (mpep-9020-appx-r.html#aia_d0e319407) , but it is necessary to obtain a complete record from which a determination of patentability may be made. See MPEP § 704.12(a) (s704.html#d0e56242) . Therefore, when an examiner has a reasonable basis to conclude that an individual identified under 37 CFR 1.56(c) (mpep-9020-appx-r.html#aia_d0e319463) or any assignee has information that would aid in the examination of the application or treatment of some matter, the examiner may require submission of information that is not necessarily material to patentability. This requirement could include submission of information or information submitted to other Government agencies such as the FDA. See MPEP § 2015 (s2015.html#ch2000_d22347_2a6eb_38b) . For example, when examining a claim directed to a process of manufacturing a particular drug product that was effectively filed more than one year after FDA approval of the drug product, an examiner may appropriately require an applicant to submit to the USPTO information submitted to the FDA (e.g., in a New Drug Application or Biologics License Application) on how the drug product was manufactured.

The term "information" is intended to be all encompassing similar in scope of the term as discussed with respect to **37 CFR 1.291(a) (mpep-9020-appx-r.html#d0e325685)** (see **MPEP § 1901.02 (s1901.html#d0e193964)** ). **37 CFR 1.56(a) (mpep-9020-appx-r.html#d0e319407)** also states: "The Office encourages applicants to carefully examine: (1) prior art cited in search reports of a foreign patent office in a counterpart application, and (2) the closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office."

It should be noted that the rules are *not* intended to require information *favorable* to patentability such as, for example, evidence of commercial success of the invention. Similarly, the rules are not intended to require, for example, disclosure of information concerning the level of skill in the art for purposes of determining obviousness.

**37 CFR 1.56(a) (mpep-9020-appx-r.html#d0e319407)** states that the duty to disclose information exists until the application becomes abandoned. The duty to disclose information, however, does not end when an application becomes allowed but extends until a patent is granted on that application. The rules provide for information being considered after a notice of allowance is mailed and before the issue fee is paid (**37 CFR 1.97(d) (mpep-9020-appx-r.html#d0e321609)** ) (see **MPEP § 609.04(b), subsection III (s609.html#d0e53830)** ). The rules also provide for an application to be withdrawn from issue:

- (A) because one or more claims are unpatentable (**37 CFR 1.313(c)(1) (mpep-9020-appx-r.html#d0e326317)** );
- (B) for express abandonment so that information may be considered in a continuing application before a patent issues (**37 CFR 1.313(c)(3) (mpep-9020-appx-r.html#d0e326317)** ); or
- (C) for consideration of a request for continued examination (RCE) under **37 CFR 1.114 (mpep-9020-appx-r.html#d0e322625)** (**37 CFR 1.313(a) (mpep-9020-appx-r.html#d0e326317)** and **(c)(2) (mpep-9020-appx-r.html#d0e326366)** ). Note that RCE practice does not apply to utility or plant applications filed before June 8, 1995 or to design applications. See **MPEP § 706.07(h) (s706.html#d0e70778)** .

See **MPEP § 1308 (s1308.html#d0e133618)** for additional information pertaining to withdrawal of an application from issue.

In a continuation-in-part application, individuals covered by **37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407)** have a duty to disclose to the Office all information known to be material to patentability which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application. See **37 CFR 1.56(e) (mpep-9020-appx-r.html#d0e319407)** .

**37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407)** provides that the duty of disclosure can be met by submitting information to the Office in the manner prescribed by **37 CFR 1.97 (mpep-9020-appx-r.html#d0e321609)** and **1.98 (mpep-9020-appx-r.html#d0e321738)** . See **MPEP § 609 (s609.html#d0e52594)** *et seq.* Applicants are provided certainty as to when information will be considered, and applicants will be informed when information is not considered. Note, however, if even a document was cited to or considered in a prior examination or related Office proceeding, the Office may order reexamination based on the document if it raises a substantial new question of patentability. See **MPEP § 2242 (s2242.html#d0e225368)** and **MPEP § 2258.01 (s2258.html#d0e230030)** .

**37 CFR 1.555 (mpep-9020-appx-r.html#d0e330648)** provides for the duty of disclosure in reexamination proceedings. For a discussion of information material to patentability in a reexamination proceeding, see **MPEP § 2280 (s2280.html#d0e234039)** or **MPEP § 2684 (s2684.html#d0e267936)** . For supplemental examination and any *ex parte* reexamination proceeding ordered under **35 U.S.C. 257 (mpep-9015-appx-l.html#al_d1b138_208e1_350)** , information material to patentability is defined by **37 CFR 1.56 (mpep-9020-appx-r.html#aia_d0e319407)** . See **37 CFR 1.625(d)(4) (mpep-9020-appx-r.html#ar_d1d8bb_14b5a_124)** and **MPEP § 2820 (s2820.html#ch2800_d1ff00_2731c_345)** .

## 2001.05 Materiality Under 37 CFR 1.56(b) [R-07.2022]

*37 CFR 1.56 Duty to disclose information material to patent ability.*
*****

- (b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

  - (1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or
  - (2) It refutes, or is inconsistent with, a position the applicant takes in:

    - (i) Opposing an argument of unpatentability relied on by the Office, or
    - (ii) Asserting an argument of patentability.

A *prima facie* case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

*****

Under the rule, information is not material unless it comes within the definition of **37 CFR 1.56(b)(1) (mpep-9020-appx-r.html#aia_d0e319437)** or **(2) (mpep-9020-appx-r.html#aia_d0e319444)** . Generally, when information is clearly cumulative or not material, there is no duty to disclose the information to the Office. "[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability." **37 CFR 1.56(b) (mpep-9020-appx-r.html#aia_d0e319433)** . In close cases where the materiality or consistency of the information is in question, the applicant should consider submitting this information to the USPTO. The Office believes that most applicants will wish to submit the information even though they may not be required to do so, to strengthen the patent and avoid the risks of an incorrect judgment on their part on materiality. The USPTO holds those individuals subject to this duty to the highest standards.

**2001.06 Sources of Information under 37 CFR 1.56 [R-07.2022]**

All individuals covered by **37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407)** (reproduced in **MPEP § 2001.01 (s2001.html#d0e195539)** ) have a duty to disclose to the U.S. Patent and Trademark Office all material information they are *aware* of regardless of the source of or how they become aware of the information. See *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1383, 60 USPQ2d 1482, 1490 (Fed. Cir. 2001) ("Once an attorney, or an applicant has notice that information exists that appears material and questionable, that person cannot ignore that notice in an effort to avoid his or her duty to disclose."). Materiality controls whether information must be disclosed to the Office, not the circumstances under which or the source from which the information is obtained. If material, the information must be disclosed to the Office. The duty to disclose material information extends to information such individuals are aware of prior to or at the time of filing the application or become aware of during the prosecution thereof before the application is granted.

Individuals covered by **37 CFR 1.56 (mpep-9020-appx-r.html#aia_d0e319407)** may be or become aware of material information from various sources such as, for example, co-workers, trade shows, communications from or with competitors, potential infringers, or other third parties, related foreign applications (see **MPEP § 2001.06(a) (s2001.html#d0e195900)** ), prior or copending United States patent applications (see **MPEP § 2001.06(b) (s2001.html#d0e195923)** ), related litigation and/or post-grant proceedings (see **MPEP § 2001.06(c) (s2001.html#d0e195990)** ), preliminary examination searches and supporting information related to regulatory review (see **MPEP § 2001.06(e) (s2001.html#d0e196020)** ).

## 2001.06(a) Prior Art Cited in Related Foreign Applications [R-08.2012]

Applicants and other individuals, as set forth in **37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407)** , have a duty to bring to the attention of the Office any material prior art or other information cited or brought to their attention in any related foreign application. The inference that such prior art or other information is material is especially strong where it has been used in rejecting the same or similar claims in the related application. See *Gemveto Jewelry Co. v. Lambert Bros., Inc.*, 542 F. Supp. 933, 216 USPQ 976 (S.D. N.Y. 1982) wherein a patent was held invalid or unenforceable because patentee's foreign counsel did not disclose to patentee's United States counsel or to the Office prior art cited by the Dutch Patent Office in connection with the patentee's corresponding Dutch application. The court stated, 542 F. Supp. at 943, 216 USPQ at 985:

Foreign patent attorneys representing applicants for U.S. patents through local correspondent firms surely must be held to the same standards of conduct which apply to their American counterparts; a double standard of accountability would allow foreign attorneys and their clients to escape responsibility for fraud or inequitable conduct merely by withholding from the local correspondent information unfavorable to patentability and claiming ignorance of United States disclosure requirements.

## 2001.06(b) Information Relating to or From Copending United States Patent Applications [R-08.2017]

The individuals covered by **37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407)** have a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other copending United States applications which are "material to patentability" of the application in question. This may include providing the identification of pending or abandoned applications filed by at least one of the inventors or assigned to the same assignee as the current application that disclose similar subject matter that are not otherwise identified in the current application. As set forth by the court in *Armour & Co. v. Swift & Co.*, 466 F.2d 767, 779, 175 USPQ 70, 79 (7th Cir. 1972):

[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent.

See also **MPEP § 2004 (s2004.html#d0e196215)** , paragraph 9.

Accordingly, the individuals covered by **37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407)** cannot assume that the examiner of a particular application is necessarily aware of other applications which are "material to patentability" of the application in question, but must instead bring such other applications to the attention of the examiner. See *Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 560 (S.D.N.Y. 2015), and *Dayco Prod., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1365-69, 66 USPQ2d 1801, 1806-08 (Fed. Cir. 2003). For example, if a particular inventor has different applications pending which disclose similar subject matter but claim patentably indistinct inventions, the existence of other applications must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are "material to patentability" of the subsequent application. See *Dayco Prod.*, 329 F.3d at 1369, 66 USPQ2d at 1808.

If the application under examination is identified as a continuation, divisional, or continuation-in-part of an earlier application, the examiner will consider the prior art properly cited in the earlier application. See **MPEP § 609 (s609.html#d0e52594)** and **MPEP § 719.05 (s719.html#d0e94319)** , subsection (II)(A), example J. The examiner must indicate in the first Office action whether the prior art in a related earlier application has been reviewed. Accordingly, no separate citation of the same prior art need be made in the later application, unless applicant wants a listing of the prior art printed on the face of the patent.

## 2001.06(c) Information From Related Litigation and/or Trial Proceedings [R-08.2017]

The America Invents Act (AIA) added trial proceedings to be conducted by the Patent Trial and Appeal Board (PTAB) including *inter partes* review proceedings, post-grant review, covered business method reviews, and derivation. In many instances, these trial proceedings yield information that may be considered material to pending related patent applications. Where the subject matter for which a patent is being sought is or has been involved in litigation and/or a trial proceeding, or the litigation and/or trial proceeding yields information material to currently pending applications, the existence of such litigation and any other material

information arising therefrom must be brought to the attention of the examiner or other appropriate official at the U.S. Patent and Trademark Office. In particular, material information that is raised in trial proceedings that is relevant to related applications undergoing examination should be submitted on an Information Disclosure Statement for the examiner's consideration. Examples of such material information include evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of "fraud," "inequitable conduct," and "violation of duty of disclosure." Another example of such material information is any assertion that is made during litigation and/or trial proceeding which is contradictory to assertions made to the examiner. *Environ Prods., Inc. v. Total Containment, Inc.*, 43 USPQ2d 1288, 1291 (E.D. Pa. 1997). Such information might arise during litigation and/or trial proceeding in, for example, pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony.

Where a patent for which reissue is being sought is, or has been, involved in litigation and/or trial proceeding which raised a question material to examination of the reissue application, such as the validity of the patent, or any allegation of "fraud," "inequitable conduct," or "violation of duty of disclosure," the existence of such litigation and/or trial proceeding must be brought to the attention of the examiner by the applicant at the time of, or shortly after, filing the application. Such information can be disclosed either in the reissue oath or declaration, or in a separate paper, preferably accompanying the application, as filed. Litigation and/or trial proceedings that begin after filing of the reissue application should be promptly brought to the attention of the Office. The details and documents from the litigation and/or trial proceedings, insofar as they are "material to patentability" of the reissue application as defined in 37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407) , should accompany the application as filed, or be submitted as promptly thereafter as possible. See *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1258-59, 43 USPQ2d 1666, 1670-71 (Fed. Cir. 1997) (patent held unenforceable due to inequitable conduct based on patentee's failure to disclose a relevant reference and for failing to disclose ongoing litigation).

For example, the defenses raised against validity of the patent, or charges of "fraud" or "inequitable conduct" in the litigation, would normally be "material to the examination" of the reissue application. It would, in most situations, be appropriate to bring such defenses to the attention of the Office by filing in the reissue application a copy of the court papers raising such defenses. At a minimum, the applicant should call the attention of the Office to the litigation, the existence and the nature of any allegations relating to validity and/or "fraud," or "inequitable conduct" relating to the original patent, and the nature of litigation materials relating to these issues. Enough information should be submitted to clearly inform the Office of the nature of these issues so that the Office can intelligently evaluate the need for asking for further materials in the litigation. See MPEP § 1442.04 (s1442.html#d0e141089) .

If litigation papers of a live litigation relating to a pending reissue application are filed with the Office, the Solicitor's Office should be notified of the filing of the litigation papers in the application file. If the litigation is not live, the litigation papers are processed by the Technology Center assigned the reissue application.

## 2001.06(d) Information Relating to Claims Copied From a Patent [R-08.2017]

Where claims are copied or substantially copied from a patent, 37 CFR 41.202(a) (mpep-9020-appx-r.html#d0e359555) requires the applicant, at the time he or she presents the claim(s), to identify the patent and the numbers of the patent claims. Clearly, the information required by 37 CFR 41.202(a) (mpep-9020-appx-r.html#d0e359555) as to the source of copied claims is material information under 37 CFR 1.56 (mpep-9020-appx-r.html#d0e319407) and failure to inform the USPTO of such information may violate the duty of disclosure.

## 2001.06(e) Information Relating to Regulatory Review [R-07.2022]

Where relevant documentation is submitted to a regulatory review body, such as the U.S. Food & Drug Administration (FDA), and is material to any pending patent application or reexamination proceeding, such documentation should be submitted for Office review. While the considerations made by the FDA for approving clinical trials are different from those made by the USPTO in determining whether a claim is patentable, submissions, particularly any assertion that is made which is contradictory to assertions made to the examiner, may be material to ongoing patent proceedings. *Belcher Pharmaceuticals, LLC v. Hospira, Inc.*, 11 F.4th 1345, 1353-54, 2021 USPQ2d 909 (Fed. Cir. 2021). See also MPEP § 2164.05 (s2164.html#d0e215797) . Duty of disclosure may require that if the actual filing date of an application is after the date of the applicant's date of marketing approval by FDA, and the applicant intends to list any resulting patent in the orange book for that product, informing the USPTO during examination of the application of that intent and applicant should consider providing the Paragraph IV "factual and legal basis" notice to USPTO.

Accordingly, each party presenting a paper to the USPTO, whether a practitioner or non-practitioner, has a duty to perform an inquiry that is reasonable under the circumstances. This reasonable inquiry may comprise reviewing documents that are submitted to or received from other Government agencies, including the FDA. If any reviewed document is material to the patentability of a pending matter before the Office, such as a patent application (including a reissue application), or a reexamination proceeding, the party has a duty to submit the information to the USPTO. 37 CFR 1.56 (mpep-9020-appx-r.html#aia_d0e319407) , 1.555 (mpep-9020-appx-r.html#d0e330648) , and 11.18(b)(2) (mpep-9020-appx-r.html#d0e351262) . A duty of reasonable inquiry may exist based on circumstances known to the party presenting the paper to the USPTO. Failing to inquire when the circumstances warrant it could result in sanctions or other action under 37 CFR 11.18(c) (mpep-9020-appx-r.html#d0e351282) , which may include: 1) striking the offending paper; (2) referring a practitioner's conduct to the Director of Enrollment and Discipline for appropriate action; (3) precluding a party or practitioner from submitting a paper, or presenting or contesting an issue; (4) affecting the weight given to the offending paper; or (5) terminating the proceedings in the Office. See, e.g., *In re Hao*, Proceeding No. D2021-14 (USPTO Apr. 27, 2022) (involving disciplinary sanctions predicated on non-compliance with 37 CFR 11.18 (mpep-9020-appx-r.html#d0e351236) ). See also MPEP § 2015 (s2015.html#ch2000_d22347_2a6eb_38b) .

[top] (#top)

---

# EXHIBIT 20

transcripts of the disciplinary proceeding and any fee paid for the services of the reporter;

(ii) All expenses paid by the OED Director or the Office that would qualify as taxable costs recoverable in civil proceedings; and

(iii) The charges determined by the OED Director to be "reasonable costs" of investigation, hearing, and review. These amounts shall serve to defray the costs, other than fees for services of attorneys and experts, of the Office of Enrollment and Discipline in the preparation or hearing of the disciplinary proceeding and costs incurred in the administrative processing of the disciplinary proceeding.

(3) A practitioner may only be granted relief from an order assessing costs under this section, whether in whole or in part or by grant of an extension of time to pay these costs, upon grounds of hardship, special circumstances, or other good cause at the discretion of the OED Director.

(e) *Petitions for reinstatement—Action by the OED Director denying reinstatement.* If the excluded or suspended practitioner is found unfit to resume practice before the Office, the OED Director shall first provide the excluded or suspended practitioner with an opportunity to show cause in writing why the petition should not be denied. If unpersuaded by the showing, the OED Director shall deny the petition. In addition to the reinstatement provisions set forth in this section, the OED Director may require the excluded or suspended practitioner, in meeting the requirements of paragraph (c)(1) of this section, to take and pass the registration examination; attend ethics, substance abuse, or law practice management courses; and/or take and pass the Multistate Professional Responsibility Examination.

(f) *Right to review.* An excluded or suspended practitioner dissatisfied with a final decision of the OED Director regarding his or her reinstatement may seek review by the USPTO Director pursuant to §11.2(d).

(g) *Resubmission of petitions for reinstatement.* If a petition for reinstatement is denied, no further petition for reinstatement may be filed until the expiration of at least one year fol-

lowing the denial unless the order of denial provides otherwise.

(h) *Reinstatement proceedings open to public.* (1) Proceedings on any petition for reinstatement shall be open to the public. Before reinstating any excluded or suspended practitioner, the OED Director shall publish a notice that such practitioner seeks reinstatement and shall permit the public a reasonable opportunity to comment or submit evidence regarding such matter.

(2) Up to 90 days prior to the expiration of the period of suspension or exclusion, a practitioner may file a written notice of his or her intent to seek reinstatement with the OED Director and may request that such notice be published. In the absence of such a request, notice of a petition for reinstatement will be published upon receipt of such petition.

[86 FR 28465, May 26, 2021]

### §§ 11.61–11.99  [Reserved]

## Subpart D—USPTO Rules of Professional Conduct

Source: 78 FR 20201, Apr. 3, 2013, unless otherwise noted.

### § 11.100  [Reserved]

Client-Practitioner Relationship

### § 11.101  Competence.

A practitioner shall provide competent representation to a client. Competent representation requires the legal, scientific, and technical knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

### § 11.102  Scope of representation and allocation of authority between client and practitioner.

(a) Subject to paragraphs (c) and (d) of this section, a practitioner shall abide by a client's decisions concerning the objectives of representation and, as required by §11.104, shall consult with the client as to the means by which they are to be pursued. A practitioner may take such action on behalf of the client as is impliedly authorized

**Exhibit 3**

02/12/2025

# EXHIBITS 21-27

# HAVE BEEN REDACTED IN THEIR ENTIRETY

# EXHIBIT 28

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 29

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 30

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 18-1477-CFC |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## COSMOKEY'S AMENDED FIRST SET OF
## REQUESTS FOR PRODUCTION (NOS. 1-69)

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff CosmoKey Solutions GmbH & Co. KG ("CosmoKey") requests that Defendants Duo Security, Inc. n/k/a Duo Security LLC ("Duo") and Cisco Systems, Inc. ("Cisco" and, collectively with Duo, "Defendants") produce documents and things in response to the following requests for production.

CosmoKey served these original requests on Duo on March 2, 2023 and directed its request to both Duo and Cisco. However, Defendants did not agree to provide documents from Cisco. To address this dispute, the parties agreed that CosmoKey would serve amended requests for production on Defendants and that both Defendants would respond to these requests and would be providing discovery. These responses should be served no later than August 17, 2023.

6.     Documents sufficient to show all source code repositories used in the development or use of the accused products, including gitlab, github, or other source code repositories, and all policies related to version control on those repositories and the preservation of such source code repositories.

7.     All documents describing or showing the design, structure, function, and operation of the software and source code for each of the accused products, including high-level and low-level software specifications and requirements, functional specifications, class specifications and guides, coding style guides, design documents, version control logs or design or change documents for adding in features to existing code base or feature, implementation documents and guides, story boards, application guides, programmer reference guides, reference manuals, software architecture guides, verification and test plans, hierarchical summaries, simulation models for software or features, design review documents, code review documents, agile development documents, as well as all notes created during software design.

8.     All documents relating to conception, design, research, development, testing, modification, manufacture, and use of each of the accused products and of the software and source code for each of the accused products, including wikis, dashboards, drawings, graphs, charts, technical files, engineering notebooks, databases, libraries, meeting minutes, product proposals, design reviews, test setup

9

diagrams, test procedures, internal memoranda, correspondence, articles, presentation materials, reports, notes, workbooks, printouts, electronic discussion forums, and communications.

9. Documents and things relating to interactions with the manufacturers, designers, and sellers of the accused products.

10. All documents relating to the marketing of each of the accused products.

11. All documents relating to the offer for sale, sale, and distribution of the accused products from January 2013 to the present.

12. Documents sufficient to identify each customer of each product, service, and feature offered, sold, licensed, or distributed by Defendants, or by Defendants in conjunction with other parties, that uses or employs multi-factor authentication, including the accused products, and including documents sufficient to show the time periods during which each person or entity was a customer for each product, service, and feature.

13. All documents relating to the implementation or use of the accused products, including user manuals, product manuals, instruction manuals, service manuals, installation instructions, testing logs, customer information, installation dates and locations, use logs, customer data, reports, alerts, and correspondence regarding any person's use of any accused product.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Scott T. Weingaertner
Stefan Mentzer
John Padro
Matthew Wisnieff
Lauren Kuehn Pelletier
Timothy Keegan
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:  (212) 459-7349

Farzad (Fred) Feyzi
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
Tel:  (650) 752-3100

Dated:  August 4, 2023
10953483 / 19335.00001

By:   _/s/ Andrew L. Brown_____
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff CosmoKey Solutions GmbH & Co. KG*

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew L. Brown, hereby certify that on August 4, 2023, true and correct

copies of the within document were served on the following counsel of record at

the addresses and in the manner indicated:

## <u>VIA ELECTRONIC MAIL</u>

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

Elizabeth Rogers Brannen
Justin M. Barnes
STRIS & MAHER LLP
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
elizabeth.brannen@strismaher.com
justin.barnes@strismaher.com

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166 -0193
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
rjin@gibsondunn.com

Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
jschung@gibsondunn.com

*/s/ Andrew L. Brown*
Andrew L. Brown

# EXHIBIT 31

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 18-1477-JLH |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>COSMOKEY'S SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 70-91)</u>

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff CosmoKey Solutions GmbH & Co. KG ("CosmoKey") requests that Defendants Duo Security, Inc. n/k/a Duo Security LLC ("Duo") and Cisco Systems, Inc. ("Cisco") (collectively, "Defendants") produce documents and things in response to the following requests for production.

## <u>DEFINITIONS AND INSTRUCTIONS</u>

CosmoKey incorporates by reference the Definitions and Instructions in CosmoKey's Amended First Set of Requests for Production (Nos. 1-69) dated August 4, 2023.  In addition:

1.      "Infringing Duo Editions" means Duo Free, Duo Federal, Duo Premier, Duo Advantage, and Duo Essentials.[1]

---

[1] "Duo Federal" refers to both "Duo Federal MFA" and "Duo Federal Access."  Defendants previously referred to "Duo Premier" as "Duo Beyond."  References to "Duo Beyond" refer to "Duo Premier" and *vice versa*.  Defendants previously referred to "Duo Advantage" as "Duo Access."  References to "Duo Access" refer to "Duo Advantage" and *vice versa*. Defendants previously referred to "Duo Essentials" as "Duo MFA" by Defendants.  References to "Duo MFA" refer to "Duo Essentials" and *vice versa*.

83.   All documents relied upon and used to prepare (a) the documents cited by Defendants in response to Interrogatory No. 8, (b) the document available at DUO-COSMOKEY-00103554 at -555, and (c) the document available at DUO-COSMOKEY-00008466.

84.   Documents containing the same or similar information as contained in DUO-COSMOKEY-00008466 for each year 2015 through 2019.

85.   All documents related to Defendants' document preservation policies in effect for the period 2010 through the present, including (a) any litigation holds provided in relation to CosmoKey, U.S. Patent No. 9,246,903, or this proceeding, and (b) documents sufficient to identify the policies, requirements, and expectations for individuals to preserve documents in their possession, custody, or control, including emails, Slack messages, and other instant messages.

86.   The policies governing the use of company resources and limitations on the use of personal devices by employees for company work in effect during the period 2010 to the present.

87.   All documents, agreements and communications with non-parties concerning this litigation, the asserted '903 patent, CosmoKey, or Defendants' alleged development of Duo Push prior to October 31, 2011, including all communications and agreements with former employees such as Dug Song and Jon Oberheide.

88.   All documents provided to or provided by third parties or former employees related to this litigation, the asserted '903 patent, CosmoKey, or Defendants' alleged development of Duo Push prior to October 31, 2011, including any alleged prior art.

89.   All analytics and metrics data regarding the Accused Offerings, and any version of "Duo Push" from 2010 to the present.

90.    All documents and things showing the development of "Duo Push," including "Duo Push 2010" as used in Defendants' invalidity contentions, and any other alleged prior art that Defendants claim they developed, used, disclosed, described, demonstrated, or sold before the filing date of the '903 patent (collectively, the "Alleged Duo Prior Art").

91.    All documents and things showing all efforts to disclose, describe, demonstrate, commercialize, or use "Duo Push," including "Duo Push 2010" as used in Defendants' invalidity contentions, and any other alleged prior art that Defendants claim they developed, used, disclosed, described, demonstrated, or sold before the filing date of the '903 patent (collectively, the "Alleged Duo Prior Art").

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Scott T. Weingaertner
Stefan Mentzer
John Padro
Matthew Wisnieff
Lauren Kuehn Pelletier
Timothy Keegan
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:  (212) 813-8800

Farzad (Fred) Feyzi
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
Tel:  (650) 752-3100

By:    _/s/ Andrew L. Brown_____
           David E. Moore (#3983)
           Bindu A. Palapura (#5370)
           Andrew L. Brown (#6766)
           Hercules Plaza, 6th Floor
           1313 N. Market Street
           Wilmington, DE  19801
           Tel:  (302) 984-6000
           dmoore@potteranderson.com
           bpalapura@potteranderson.com
           abrown@potteranderson.com

*Attorneys for Plaintiff CosmoKey Solutions GmbH & Co. KG*

Dated: May 3, 2024
11490710 / 19335.00001

7

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew L. Brown, hereby certify that on May 3, 2024, true and correct copies of the

within document were served on the following counsel of record at the addresses and in the

manner indicated:

## <u>VIA ELECTRONIC MAIL</u>

Jack B. Blumenfeld
Jennifer Ying
Travis J. Murray
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Elizabeth Rogers Brannen
Justin M. Barnes
STRIS & MAHER LLP
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
elizabeth.brannen@strismaher.com
justin.barnes@strismaher.com

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166 -0193
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
rjin@gibsondunn.com
csim@gibsondunn.com

Jaysen S. Chung
Julian Manasse-Boetani
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
jschung@gibsondunn.com
jmanasse-boetani@gibsondunn.com

*/s/ Andrew L. Brown*
Andrew L. Brown

6077361 / 19335.00001

# EXHIBIT 32

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 33

## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 18-1477 (JLH) |
| DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>COSMOKEY'S NOTICE OF RULE 30(b)(6) DEPOSITION OF DUO SECURITY LLC</u>

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), CosmoKey Solutions GmbH & Co. KG ("CosmoKey") will take the deposition of Defendant Duo Security, Inc. n/k/a Duo Security LLC ("Duo") on June 5, 2024 at 9:00 AM, at the offices of Goodwin Procter LLP, 620 Eighth Avenue, New York, New York, 10018.  Examination of the designated representatives will be directed, but not limited, to the topics set forth below.  The deposition will be taken before a notary public or other person authorized by law to administer oaths and will be recorded by stenographic means and by video.  The deposition will continue from day to day until completed.  You are invited to attend and cross-examine.

CosmoKey requests that Duo identify in writing, at least one week before the deposition, the names of the representatives who will testify on its behalf and the topics on which each representative will testify.

## DEFINITIONS

Plaintiff incorporates by reference the definitions set forth in Plaintiff CosmoKey's Amended First Set of Requests for the Production of Documents, Second Set of Requests for the Production of Documents, and Amended First Set of Interrogatories. In addition:

1.    "Cisco" means Cisco Systems, Inc.

2.    "Defendants" means Duo and Cisco collectively.

3.    "Infringing Duo Editions" means Duo Free, Duo Federal, Duo Premier, Duo Advantage, and Duo Essentials.[1]

4.    "Infringing Duo Instrumentalities" means "Duo MFA," "Duo Push" (and a variation of Duo Push, "Verified Duo Push"), "Duo Mobile," "Duo Web," "Duo Traditional Prompt," "Duo Universal Prompt," "Duo SSO," and "Duo Passwordless."

5.    "Infringing Cisco Products" means the products that include Duo's multi-factor authentication technology in addition to or connection with Cisco's own Cisco-branded security products/services, including (at least) Cisco's SecureX platform, Cisco Secure Access, Cisco Umbrella, Secure Client, and Cisco Identity Services Engine.

6.    "Accused Offerings" means the Infringing Duo Editions, Infringing Duo Instrumentalities, and Infringing Cisco Products collectively.

7.    "Prior Art" means any product, service, feature, patent, publication, or other evidence that Defendants contend embodies the subject matter of the '903 patent and which Defendants have relied on or intend to rely on to assert that the '903 patent is not valid or that

---

[1] "Duo Federal" refers to both "Duo Federal MFA" and "Duo Federal Access." Defendants previously referred to "Duo Premier" as "Duo Beyond." References to "Duo Beyond" refer to "Duo Premier" and *vice versa*. Defendants previously referred to "Duo Advantage" as "Duo Access." References to "Duo Access" refer to "Duo Advantage" and *vice versa*. Defendants previously referred to "Duo Essentials" as "Duo MFA" by Defendants. References to "Duo MFA" refer to "Duo Essentials" and *vice versa*.

Defendants do not infringe the '903 patent. The term "Prior Art" includes but is not limited to all prior art identified by Defendants in Defendants' Supplemental Invalidity Contentions served on December 13, 2023.

**TOPICS**

1.      Each product, service, edition, and feature offered, sold, or distributed by Defendants, or by Defendants in conjunction with other parties, that uses or employs multi-factor authentication, including the Accused Offerings.

2.      For each product, service, edition, and feature identified in response to Topic No. 1, (a) the date it first was used, (b) the date it first was offered, sold, or distributed; and (c) the dates during which it was offered, sold, and distributed.

3.      The products, services, editions, and features with which the Accused Offerings are bundled, including the time periods when Defendants' bundled products were offered, sold or distributed.

4.      The conception, research, development, design, testing, and modification of the Accused Offerings, including each version of the Accused Offerings, any design changes made to the Accused Offerings, and any source code and change logs reflecting such changes.

5.      Any design changes, implemented or considered, for the Accused Offerings, and any multi-factor authentication offering developed by Defendants, including any design changes considered from 2010 to the present whether or not such changes were ultimately implemented.

6.      The structure, function, operation, and use of the Accused Offerings, including each version of the Accused Offerings.

7.      Defendants' version control system, change logs, and related policies for preserving source code and data concerning Defendants' multi-factor authentication services and features, including the source code made available by Defendants in this action.

3

8.      Defendants' offers for sale, sales, and distribution of each Accused Offering, from January 2015 to the present.

9.      Defendants' training materials and user guidance distributed to customers concerning the use of, or technical support for, the Accused Offerings.

10.     Defendants' financial statements, from January 2015 through the present, including without limitation the data underlying such statements, the systems and processes Defendants use to record and information for use in their financial statements, and the persons responsible for preparing the financial statements.

11.     Duo's accounting policies and procedures for recording financial information with respect to the Accused Offerings, including for recognizing and calculating revenue, and methodologies for allocating costs and expenses.  For clarity, this Topic includes Duo's policies and procedures prior to its acquisition by Cisco.

12.     Cisco's accounting policies and procedures for recording financial information with respect to the Accused Offerings, including for recognizing and calculating revenue, and methodologies for allocating costs and expenses.  For clarity, this Topic includes Cisco's policies and procedures prior to its acquisition of Duo.

13.     From January 2015 through the present, the sales, revenue, costs, and profits from the sale, licensing, and distribution of the Accused Offerings, in the aggregate and on a product-by-product basis, and—to the extent the Accused Offerings have been bundled with other products, services, editions, or features—on a bundled-product basis.

14.     From January 2015 through the present, the projected sales, revenue, costs, and profits from the sale, licensing, and distribution of the Accused Offerings, in the aggregate and on

a product-by-product basis, and—to the extent the Accused Offerings have been bundled with other products, services, editions, or features—on a bundled-product basis.

15.    The actual and projected rates of growth of sales of the Accused Offerings, from _ through the present.

16.    The actual and projected profitability of the Accused Offerings, including as budgets, projections, and hurdle rates, from January 2015 through the present.

17.    The costs, variable or fixed, of the Accused Offerings, including the annual research and development expenditures and capital investments made in connection with the Accused Offerings, and the allocation of such amounts, from January 2015 through the present.

18.    The prices, rates, and fees charged for each Accused Offering and for products with which the Accused Offerings are bundled, including any list prices, discounts, and rebates.

19.    The policies and practices by which Defendants determined and set prices, rates, and fees each of the Accused Offerings, and for products with which the Accused Offerings are bundled.

20.    The information contained in (a) the document DUO-COSMOKEY-00103554 and (b) the document DUO-COSMOKEY-00008466, including the source of the information, where such information is kept, the persons responsible for collecting and analyzing such information, and the persons who prepared the document.

21.    The information contained in the documents Defendants cited in response to Interrogatory No. 8, including the source of the information, where such information is kept, the persons responsible for collecting and analyzing such information, and the persons who prepared the documents.

22.    The customers of the products, services, editions, and features offered, sold, or distributed by Defendants that uses or employs multi-factor authentication, including the Accused Offerings.

23.    For each Accused Offering, and for each Duo and Cisco product that includes or offers an Accused Offering, the number, in the aggregate and on a product-by-product basis, of (a) users; (b) customers; and (c) users per customer, on a monthly, quarterly, and annual basis from January 2015 through the present, both in the aggregate and on a product-by-product basis. This topic includes, without limitation, each product Defendants disclosed in response to Interrogatory No. 1.

24.    The total number, in the aggregate and on a product-by-product basis, of authentications requested and the number of authentications completed, both in the aggregate and broken down by factor including (a) Duo Push; (b) policy-enabled 2FA (including where the user was assigned bypass status or enabled Duo Remembered Devices on an account); (c) phone and SMS; (d) one-time password (OTP); (e) hardtoken; (f) WebAuthn / U2F; and (g) other factors or authentication types, from January 2015 through the present.

25.    Defendants' policies, procedures, and practices for recording information about users, customers, and authentications, including user and authentication allocation methodologies, from 2015 through the present.

26.    The actual and projected market for the Accused Offerings and for multi-factor authentication products, services, editions, and features, from 2015 through 2031, including the size of the market, customer and user base, demand, and growth.

27.    Defendants' efforts to market the Accused Offerings to customers and users, including Defendants' marketing and promotional materials related to the Accused Offerings, and

including Defendants' efforts to market bundled products and services that include the Accused Offerings.

28.    Defendants' understanding of the reasons why customers purchase, license, and use used the Accused Offerings.

29.    The diligence undertaken by Duo and Cisco prior Cisco's acquisition of Duo.

30.    Appraisals or valuations of Duo's multi-factor authentication technology, products, services, editions, or features, including any assessments or valuation in connection with Cisco's acquisition of Duo and in connection with third parties' actual or potential investments in, or acquisitions of, Duo.

31.    Defendants' licensing of patents or technology from other parties, or to other parties, related to multi-factor authentication, including Duo's policies, procedures, and practices for licensing license patents or technology.

32.    License agreements, covenants, releases, and settlements entered into by Defendants relating to network security technology, including without limitation multi-factor authentication (MFA) technology, products or services.

33.    Defendants' policies, procedures, and practices to avoid patent infringement.

34.    The factual bases for Defendants' non-infringement contentions in this litigation.

35.    The factual bases for Defendants' invalidity contentions in this litigation.

36.    The factual bases for the alleged non-infringing alternatives identified by Defendants in response to Interrogatory No. 4.

37.    The factual bases for the alleged design-arounds identified by Defendants in response to Interrogatory No. 4.

38.     Any non-privileged evaluations, valuations, and opinions regarding the '903 patent, Related Patents, and Related Applications, including any non-privileged evaluations comparing the claims of any of the '903 patent, Related Patents, and Related Applications to any of Defendants' products, services, or features, including the Accused Offerings.

39.     Any non-privileged evaluations, valuations, and opinions of any Prior Art related to any claims of the '903 patent, Related Patents, and Related Applications.

40.     Duo's first awareness of the '903 patent, Related Patents, Related Applications, Dominic Adenuga, CosmoKey, and any person or entity associated with CosmoKey.

41.     Cisco's first awareness of the '903 patent, Related Patents, Related Applications, Dominic Adenuga, CosmoKey, and any person or entity associated with CosmoKey.

42.     CosmoKey's December 14, 2016 LinkedIn messages to Duo; CosmoKey's August 21, 2018 letter to Duo; Duo's September 11, 2018 letter response to CosmoKey; and Defendants' non-privileged communications regarding this correspondence.

43.     Any diligence conducted by, on behalf of, or at the direction of Duo or Cisco before CosmoKey filed the complaint in this action (ECF No. 1) concerning the '903 patent, Related Patents, and Related Applications.

44.     Any patents issued or assigned to, and patent applications by, Duo or Cisco that relate to or embody multi-factor authentication technology or the Accused Offerings.

45.     The products, services, editions, and features offered by Duo and the constituent software, source code, hardware, methods, and processes that Duo contends are Prior Art, including the "Duo Push" and "OATH TOPT Standard" cited in Defendants' Supplemental Invalidity Contentions (at 20-21).

46.     Defendants' conception, design, development, reduction to practice, use, disclosure, descriptions, demonstrations, and sale of Prior Art prior to October 31, 2011.

47.     Defendants' research, development, and design of Prior Art prior to October 31, 2011, including the research, development, and design underlying the subject matter of U.S. Provisional Patent Application No. 61/309,885 and U.S. Patent App. No. 13/039,209 and the dates of such research, development, and design.

48.     Duo's development of "Duo Push 2010," including the chronology of the development, the individuals involved, and each individual's role.

49.     Any alleged public use, disclosure, demonstration, sale, or offer for sale of Duo Push prior to October 31, 2011 and the dates of such public uses, disclosures, demonstrates, sales, and offers for sale, including the facts concerning investor meetings, customer meetings, the Merit Member Conference at Ann Arbor, Michigan on May 27, 2010, the October 27, 2010 at the Security Innovation Network Showcase, the Xconomy 5X5 Forum at Boston, Massachusetts on December 8, 2010, and any blog posts and/or YouTube videos concerning Duo Push prior to October 31, 2011.

50.     Customer adoption or use of Duo Push prior to October 31, 2011, including the platforms on which Defendants contend that Duo Push was made available as alleged in Defendants' Supplemental Invalidity Contentions (at 22) and the dates of such customer alleged adoption and availability.

51.     The development, preparation, recording, and distribution of the "Duo Security in 30 seconds" video linked from a December 15, 2010 Duo blog post, available at https://www.youtube.com/watch?v=7N8pBVAWLwU, and any accompanying blog posts publications, and documentation, including *Duo Security Two-Factor Authentication Demo in 30*

9

*Seconds*,    Duo    Security    Blog,    Dec.    15,    2010,    available    at
https://web.archive.org/web/20230127050219/https://duo.com/blog/duo-security-two-factor-
authentication-demo-in-30-seconds.

52.    Prior attempts and failures of Duo or other persons or entities to make the advances
or to solve the problems made or solved by the subject matter of the '903 patent.

53.    Non-privileged communications, including those between Duo and Cisco, related
to this litigation, IPR2019-01638, IPR2019-01639, the '903 patent, Related Patents, Related
Applications, and CosmoKey.

54.    The corporate relationship between Duo Security LLC f/k/a Duo Security, Inc. and
Cisco Systems, Inc., including any intercompany agreements and how revenue, customer, and user
information is collected, kept, and analyzed.

55.    The organizational structure of Duo and Cisco relating to the research,
development, design, engineering, testing, and manufacture of the Accused Offerings.

56.    The organizational structure of Duo and Cisco relating to the marketing, pricing,
sale, distribution, and finances of the Accused Offerings.

57.    Defendants' management, version control, and archival practices associated with
Defendants' source code repositories, including any procedures for maintaining, documenting
changes, and ensuring the preservation and readability of code stored within said repositories.

58.    Defendants' collection and production of documents, information, and source code
in this litigation, including the persons at each Duo and Cisco responsible for such efforts, and the
repositories where such documents, information, and source code are kept in the ordinary course
of Defendants' regularly-conducted business.

59.    Defendants' document retention policies and practices in connection with this litigation, including Defendants' litigation holds in connection with this litigation, Defendants' deletion policies and practices, and Defendants' back-up storage databases, for documents, messages, emails, and metadata.

60.    Defendants' efforts, policies, and practices to retain documents, information, and source code in connection with this litigation, including efforts to retain instant messages and metadata associated with documents, when Defendants retention efforts relating to this litigation began, and the persons responsible for such efforts.

61.    The authenticity of documents, information, and things Defendants have produced in this litigation, including whether the documents produced were created or maintained in the ordinary course of Defendants' regularly-conducted business.

Dated: May 10, 2024                    POTTER ANDERSON CORROON LLP

                                       By: /s/ Scott T. Weingaertner
                                       David E. Moore
                                       Bindu Ann Palapura
                                       Andrew L. Brown
                                       1313 North Market Street
                                       Wilmington, Delaware 19801
                                       Phone: + 1 302 984 6000
                                       Fax: + 1 302 658 1192
                                       Email: dmoore@potteranderson.com
                                       Email: bpalapura@potteranderson.com
                                       Email: abrown@potteranderson.com

                                       Scott T. Weingaertner  (*pro hac vice*)
                                       Stefan Mentzer (*pro hac vice*)
                                       John Padro (*pro hac vice*)
                                       Matthew R. Wisnieff (*pro hac vice*)
                                       Lauren Kuehn Pelletier (*pro hac vice*)
                                       Timothy Keegan (*pro hac vice*)
                                       GOODWIN PROCTER LLP

The New York Times Building
620 Eighth Avenue
New York, New York 10018
Phone: + 1 212 813 8800
Email: SWeingaertner@goodwinlaw.com
Email: SMentzer@ goodwinlaw.com
Email: JPadro@ goodwinlaw.com
Email: MWisnieff@goodwinlaw.com
Email: LPelletier@goodwinlaw.com
Email: TKeegan@goodwinlaw.com

Farzad (Fred) Feyzi (*pro hac vice*)
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
Tel:  (650) 752-3100
Email: FFeyzi@goodwinlaw.com

## CERTIFICATE OF SERVICE

I, Timothy Keegan, hereby certify that on May 10, 2024, true and correct copies of the

within document were served on the following counsel of record at the addresses and in the

manner indicated:

## VIA ELECTRONIC MAIL

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
jying@mnat.com

Elizabeth Rogers Brannen
Justin M. Barnes
STRIS &MAHER LLP
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
elizabeth.brannen@strismaher.com
justin.barnes@strismaher.com

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166 -0193
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
rjin@gibsondunn.com

Ryan Iwahashi
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
riwahashi@gibsondunn.com

Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
jschung@gibsondunn.com

*/s/ Timothy Keegan*
Timothy Keegan

13

# EXHIBIT 34

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 35

**HIGHLY CONFIDENTIAL – SOURCE CODE**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 18-1477-JLH-CJB |
| DUO SECURITY LLC, FKA DUO SECURITY, INC. and CISCO SYSTEMS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

---

## REPLY EXPERT REPORT OF KEVIN JEFFAY, Ph.D.
## REGARDING INVALIDITY OF
## U.S. PATENT NO. 9,246,903

---

Dated:  November 15, 2024

Respectfully submitted,

Kevin Jeffay, Ph.D.

HIGHLY CONFIDENTIAL – SOURCE CODE

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   QUALIFICATIONS AND PROFESSIONAL EXPERIENCE ...............................2

III.  MATERIALS AND OTHER INFORMATION CONSIDERED ............................2

IV.   RELEVANT LEGAL PRINCIPLES .......................................................................3

V.    THE '903 PATENT ....................................................................................................3

      A.    Background of the Technology and State of the Art ...............................3

      B.    Summary of the '903 Patent ....................................................................3

      C.    CosmoKey's Prior Statements Concerning the '903 Patent ...................3

      D.    Level of Ordinary Skill in the Art ...........................................................3

      E.    Claim Construction ..................................................................................4

      F.    Summary of Accused Products .................................................................4

      G.    Analysis Under CosmoKey's Apparent Interpretation of the Claims ....4

      H.    Duo Source Code ......................................................................................6

VI.   REPLY TO DR. SHAMOS'S OPINIONS REGARDING INVALIDITY OF THE
      '903 PATENT UNDER SECTIONS 102(A) AND 103 ...........................................6

      A.    Invalidity Based on the Prior Art Duo Push Systems ..............................6

            1.    The Prior Art Duo Push Systems Were Publicly Available .........6

            2.    The Source Code for the Duo Push Systems Is Reliable ............16

            3.    Reply To Dr. Shamos's Element-by-Element Discussion ..........19

            4.    Motivation to Combine ...............................................................96

      B.    Invalidity Based on Dispensa .................................................................103

            1.    Reply To Dr. Shamos's Element-by-Element Analysis ...........103

            2.    Motivation to Combine .............................................................117

      C.    Invalidity Based on Labrou .....................................................................121

            1.    Reply To Dr. Shamos's Element-by-Element Analysis ...........122

            2.    Motivation to Combine .............................................................133

      D.    Invalidity Based on PhoneFactor ...........................................................137

            1.    Reply To Dr. Shamos's Element-by-Element Analysis ...........138

            2.    Motivation to Combine .............................................................150

      E.    Invalidity Based on Oberheide 230 ........................................................152

**HIGHLY CONFIDENTIAL – SOURCE CODE**

| | | | |
|---|---|---|---|
| | 1. | Element-by-Element Analysis | 153 |
| | 2. | Motivation to Combine | 171 |
| F. | | Invalidity Based on Oberheide 535 | 173 |
| | 1. | Element-by-Element Analysis | 174 |
| | 2. | Motivation to Combine | 189 |
| G. | | Invalidity Based on Williams | 190 |
| | 1. | Element-by-Element Analysis | 190 |
| | 2. | Motivation to Combine | 199 |

**VII. REPLY TO DR. SHAMOS'S OPINIONS REGARDING INVALIDITY UNDER SECTION 112** ............................................................................**200**

| | | | |
|---|---|---|---|
| A. | | Lack of Adequate Written Description | 200 |
| | 1. | Claim 1: The Authentication Function Elements: "checking an authentication function"; "ensuring that the authentication function is normally inactive and is activated by the user only preliminarily for the transaction"; "thereafter ensuring that the authentication function is automatically deactivated" | 200 |
| | 2. | Claim 8: "the active state of the authentication function" | 206 |
| B. | | Indefiniteness | 206 |
| | 1. | Claim 1: The Authentication Function Elements: "checking an authentication function"; "ensuring that the authentication function is normally inactive and is activated by the user only preliminarily for the transaction"; "thereafter ensuring that the authentication function is automatically deactivated" | 207 |
| | i. | Claim 8: "the active state of the authentication function" | 212 |

**VIII. REPLY TO DR. SHAMOS'S OPINIONS REGARDING INEQUITABLE CONDUCT** ............................................................................**212**

| | | | |
|---|---|---|---|
| A. | | Oberheide 230 Would Have Been Material to Prosecution of the '903 Patent | 213 |
| B. | | The Duo Website Disclosed the Prior Art Duo Push Systems, Which were Material | 216 |
| C. | | The Duo Push Systems Were Known to CosmoKey and Material to Prosecution | 220 |

**IX. CONCLUSION AND RESERVATION OF RIGHTS** ............................................**221**

**HIGHLY CONFIDENTIAL – SOURCE CODE**

Oberheide 230.  Therefore, either CosmoKey's apparent interpretations are correct, in which case

the Asserted Claims would have been rejected during prosecution had CosmoKey or Mr. Adenuga

disclosed Oberheide 230 to the USPTO, or CosmoKey's apparent interpretations are not correct,

in which case the Accused Products cannot infringe any of the Asserted Claims for the reasons I

discuss in my Rebuttal Report.  *See* Rebuttal Report, Section VI.

572.    Therefore, as I explained in detail in my Opening Report, the '903 Patent is at least

obvious in view of Oberheide 230.  CosmoKey and Mr. Adenuga were aware of this reference

during prosecution but chose not to provide it to the USPTO during prosecution.  Had Oberheide

230 been disclosed to the USPTO during prosecution, it is my opinion that it would have resulted

in rejection of all Asserted Claims.

**B.    The Duo Website Disclosed the Prior Art Duo Push Systems, Which were
Material**

573.    Dr. Shamos next addresses what he describes as "the two links allegedly made

available to Mr. Adenuga" regarding Duo's technology during the prosecution of the '903 patent.

Shamos Report, ¶¶861–869.  I understand that these links were to Duo's website, which Dr.

Shamos admits Mr. Adenuga was aware of during the prosecution of the '903 patent.  *See Id.*, ¶855

(citing        https://blog.duosecurity.com/2011/06/duo-push-two-factor-auth/        and

http://www.duosecurity.com/duo-push).  Dr. Shamos concludes that the information at these links

would not have been material to prosecution because "it would not have been possible to assess

the operation and design of the content in these websites without further information and that this

information was not available on the two links in question."  *Id.*, ¶867.

574.    To start, Dr. Shamos misrepresents the content of these webpages.  For instance, I

understand    that    Defendants    produced    a    copy    of    the    webpage    at    the    link

https://blog.duosecurity.com/2011/06/duo-push-two-factor-auth/  as  it  existed  at  the  time  Mr.

**HIGHLY CONFIDENTIAL – SOURCE CODE**

Adenuga would have accessed it.  DUO-COSMOKEY-01058120.  This blog post announces the

formal launch of Duo Push on June 8, 2011.  The website explains that "Duo Push leverages the

capabilities of modern smartphones to create a more secure and user-friendly two-factor

authentication experience. Specifically, Duo Push utilizes the native push notifications (APNS,

C2DM, etc) to provide real-time notification of transaction and login requests to a user's

smartphone, a secure out-of-band (OOB) communications protocol to display the full verified

details of the request to the user, and simple one-touch responses to allow the user to approve or

deny the request on the smartphone itself." *Id.*

575.    The website then states that "[t]he best way to understand how Duo Push works is

to see it in action," and provides a demonstration of how Duo Push could be used to log into a

Juniper Networks SSL VPN using authentication provided by the Duo Mobile application on a

user's mobile device specifically using Duo Push.  *Id.*



HIGHLY CONFIDENTIAL – SOURCE CODE

*Id.*



*Id.*

576.     The website also confirms that "Duo Push is now integrated into [Duo's] existing Duo Mobile application on the Android and iPhone platforms." *Id.*

577.     The website also provides a link for a "Free Trial" and encouraged users to download and try out Duo push for free: "[I]f you'd like to try out Duo Push to protect your web app, VPN device, or UNIX server, sign up today for free!." *Id.* As I explained in my Opening Report, the Duo Mobile application was available for public download on the Apple App Store at least as of March 8, 2011. Opening Report, ¶134. By clicking "sign up today for free" on Duo's webpage, I understand based on my discussion with Mr. Murray that a user in June 2011 would be directed to a form to create a new Duo administration account. The Duo administration account would allow an administrator to set up multifactor authentication integrations with a company's systems, such as VPNs and email accounts, for which employees could use to the Duo Mobile application (and thus Duo Push) for authentication

578.     The Duo website link that Mr. Adenuga was aware of during the prosecution of the '903 patent thus not only disclosed the exact functionalities of Duo Push that CosmoKey accuses

HIGHLY CONFIDENTIAL – SOURCE CODE

in this case and confirmed that they were publicly available for Android and iOS operation systems, but further included a direct link for a public, free download everything required to implement multifactor authentication using the Duo Mobile application (including Duo Push).

579.    Thus, there is no basis for Dr. Shamos to contend that "it would not have been possible to assess the operation and design of the content in these websites without further information and that this information was not available on the two links in question."  Shamos Report, ¶867.  Indeed, even if the website did not disclose the full functionality of Duo Push (which it does), the full functionality of the Accused Products in this case was a ***single click*** away on this website—had Mr. Adenuga chosen to look at the "Free Trial" link displayed prominently on that webpage, he would have been able to download the free, public version of Duo Push itself.

580.    The disclosures on the website produced at DUO-COSMOKEY-01058120 also confirm that this information was material to the prosecution of the '903 patent.  The website includes a full walk-through of the functionalities of Duo Push, including precisely the functionalities that CosmoKey now accuses of infringement in this case.  Indeed, at the "Free Trial" link on that website, CosmoKey could have obtained the prior art version of the same products it now accuses of infringement, which as I explained in my Rebuttal Report operated the same way as the Accused Products in all material respects.  Rebuttal Report, ¶329; *generally* Section IX.

581.    Finally, I note that Dr. Shamos also states that "Mr. Adenuga testified that he was not aware of the operation of Duo Push, and based on the patent application he could find, believed it operated differently than the invention of the '903 Patent."  Shamos Report, ¶868.  To start, I find it difficult to believe that Mr. Adenuga was not aware of the operation of Duo Push, given his interest in MFA technology and given my explanation above that the websites he knew about

HIGHLY CONFIDENTIAL – SOURCE CODE

included a full description of the operation of Duo Push and included a free, public download link for Duo Push. In any event, I also understand that Mr. Adenuga testified that any alleged analyses of materiality of Duo technology or patents (to the extent they were conducted at all during prosecution of the '903 patent) were conducted by CosmoKey's German patent counsel, Mr. Manfred Wiebusch. 9/25/2024 Adenuga Tr., 22:21–28:9; 33:11–40:13.

582. I understand that CosmoKey has not produced documents from Mr. Wiebusch in this case. In the event such documents are produced and/or Mr. Wiebusch is eventually deposed in this case, I reserve the right to supplement my opinions in this section to address any new information discovered.

### C.    The Duo Push Systems Were Known to CosmoKey and Material to Prosecution

583. Finally, Dr. Shamos separately addresses Duo Push 2010 and Duo Push 2011 (which I sometimes collectively refer to as the Prior Art Duo Push Systems). Shamos Report, ¶¶870–878.

584. Dr. Shamos first contends that "Duo Push 2010 and Duo Push 2011 lack sufficient documentation to demonstrate they exist or were prior art." *Id.*, ¶857. As I explained both above and in my Opening Report, there is no basis whatsoever for Dr. Shamos's contention. *Supra* [Duo Push Systems Section]; Opening Report, Section X.A. For instance, I understand that CosmoKey has been provided with the full source code for both Duo Push 2010 and Duo Push 2011, and I further explained at length in my Opening Report that the products embodying this code were commercially sold as early as 2010. *See* Opening Report, Section X.A.1.

585. Dr. Shamos also contends that Mr. Oberheide, then-CTO of Duo, testified that "he has never heard of" Duo Push 2010 or Duo Push 2011. Shamos Report, ¶871. This mischaracterizes Mr. Oberheide's testimony. To start, "Duo Push 2010" and "Duo Push 2011" are

**HIGHLY CONFIDENTIAL – SOURCE CODE**

589.    This report represents my analysis, opinions, and conclusions at this time and is based on information available to me as of the date above. The citations listed in this report are illustrative, and as part of my analysis, I also considered the additional documents and other information listed in Section III  If additional information or testimony becomes available to me, I may revise or supplement my analysis, opinions, and conclusions, and I may modify or supplement my report as necessary. I may testify at trial regarding any related matter raised by the parties after the date of this report if asked to do so by the Court or the parties' attorneys. I may be asked to develop additional schedules or exhibits for trial purposes related to my analysis, opinions, and conclusions. This report is intended solely for use in the above-referenced litigation and is not to be used for any other purpose.

590.    I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

# EXHIBIT 36

HIGHLY CONFIDENTIAL SOURCE CODE
Transcript of Kevin Jeffay, Ph.D.
Conducted on December 11, 2024

1 (1 to 4)

---

**1**

```
1   IN THE UNITED STATES DISTRICT COURT
2     FOR THE DISTRICT OF DELAWARE
3     - - - - - - - - - - - - x
4   COSMOKEY SOLUTIONS      :
5   GMBH & CO. KG,          :
6         Plaintiff,    :   CA No.
7   V.                     :   18-1477-JLH-CJB
8                          :
9   DUO SECURITY, INC.     :
10  N/k/a DUO SECURITY      :
11  LLC AND CISCO           :
12  SYSTEMS, INC.,          :
13        Defendants.      :
14    - - - - - - - - - - - - x
15    Videotaped Deposition of KEVIN JEFFAY, Ph.D.
16            HIGHLY CONFIDENTIAL
17              SOURCE CODE
18           New York, New York
19        Wednesday, December 11, 2024
20               8:54 A.M.
21
22  Job No.: 563244
23  Pages: 1 - 328
24  Reported By: Anita M. Trombetta, RMR, CRR,
25  California CSR No. 14647
```

---

**2**

```
1
2   Videotaped deposition of KEVIN JEFFAY, Ph.D., held
3   at the offices of:
4
5
6         Gibson, Dunn & Crutcher LLP
7         200 Park Avenue
8         New York, NY 10166
9         212.351.4000
10
11
12  Pursuant to notice, before Anita M. Trombetta, a
13  Certified Shorthand Reporter in the State of
14  California, RMR, CRR, and Notary Public in and for
15  the State of New York.
16
17
18
19
20
21
22
23
24
25
```

---

**3**

```
1   A P P E A R A N C E S:
2
3   ON BEHALF OF PLAINTIFF:
4   JOHN PADRO, ESQ.
5   LAUREN KUEHN PELLETIER, ESQ.
6   GOODWIN PROCTER LLP
7       The New York Times Building
8       620 Eighth Avenue
9       New York, New York 10018
10      (212) 813-8800
11
12  ON BEHALF OF DEFENDANTS
13  NATHAN SCHARN, ESQ.
14  GIBSON, DUNN & CRUTCHER LLP
15      3161 Michelson Drive, Suite 1200
16      Irvine, California 92612-4412
17      (949) 451-3994
18
19
20
21  ALSO PRESENT:
22
23      Nya Estep,  Planet Depos Videographer
24
25
```

---

**4**

```
1   --------------------I N D E X------------------
2   WITNESS - KEVIN JEFFAY, Ph.D.
3   EXAMINATION BY                      Page
    ATTORNEY PADRO                        7
    --------------E X H I B I T S-----------------
4   Exhibit      Description           Page
5   Exhibit 1    Reply Report on         27
6                Invalidity of Dr.
7                Jeffay
8   Exhibit 2    '903 Patent             36
9   Exhibit 3    Reply Expert            50
10               Report of
11               Dr. Benjamin
12               Goldberg
13  Exhibit 4    Opening Report on       86
14               Invalidity of Dr.
15               Jeffay
16  Exhibit 5    Oberheide '230         102
17  Exhibit 6    Oberheide '535         126
18  Exhibit 7    Document Bearing       147
19               Bates Bates Number
20               DUO-COSMOKEY-
21               00513092
22  Exhibit 8    Document Bearing       148
23               Initial Bates
24               DUO-COSMOKEY-
25               00513173
```

---

Case 1:18-cv-01477-JLH-CJB   Document 480-16   Filed 05/14/25   Page 162 of 311
PageID #: 32031
HIGHLY CONFIDENTIAL SOURCE CODE
Transcript of Kevin Jeffay, Ph.D.
Conducted on December 11, 2024

38 (149 to 152)

---

149

1    be missing something.
2        Q  What does it seem to be missing?
3        A  Well, I can't tell.
4        Q  And I'll just note this is a document that
5    was produced by defendant.
6        A  Sure.
7            So what Mr. Murray said was that -- so at
8    the end of the document here, there is an
9    invitation to see how the system works and how you
10   can essentially demo it yourself.
11           And Mr. Murray had researched the website
12   and said that, as of 2011, if you clicked on this
13   link, "sign up today for free," on Page 5 of this
14   document, that you would have been sent to another
15   page that -- where you could create a -- a Duo
16   account and use the product.
17       Q  Okay.  And this is -- Mr. Murray
18   researched this in 2024?
19           ATTORNEY SCHARN:  So I'll just object to
20   the lack of foundation.  And misstating the
21   record.
22       A  I'm sorry.  Could you ask your question
23   again?
24       Q  You indicated that Mr. Murray had
25   researched this and said this document was

150

1    available in 2011.
2        A  Yes.
3        Q  He did this research in 2024?
4            ATTORNEY SCHARN:  Objection.  Form.
5    Foundation.
6        A  I believe that's correct.  I...
7        Q  Okay.  Now, was Mr. Murray at Duo when
8    this supposed post was made?
9            ATTORNEY SCHARN:  Objection.  Form.
10       A  As I say, I don't recall, sitting here
11   today, the date that Mr. Murray joined Cisco or
12   Duo.
13       Q  And if Mr. -- would it surprise you if
14   Mr. Murray joined Duo or Cisco in 2012?
15       A  I was going to say, my recollection was
16   that it was early in the teens, but I did not
17   recall a specific year.
18           So, no, I don't think it would surprise me
19   if the year was 2012.
20       Q  So Mr. Murray had no direct knowledge
21   about this document in 2011, correct?
22           ATTORNEY SCHARN:  Objection.  Form.  Calls
23   for speculation.
24       A  Yeah, I don't know what Mr. Murray knew
25   about in 2011.

151

1        Q  Okay.  Did you ask him where he was
2    getting his information about this particular blog
3    post?
4            ATTORNEY SCHARN:  Objection.  Form.
5    Misstates the record.
6        A  I think he had knowledge of this being on
7    the website and that the website had the ability
8    for users to sign up for free accounts and
9    confirmed that this was on the website in 2011, at
10   least in 2011, by using the Wayback Machine.
11       Q  Do you know if there is any declaration
12   from the Wayback Machine testifying that this was
13   available in 2011?
14           ATTORNEY SCHARN:  Objection.  Form.
15       A  I don't, no.
16       Q  Do you know if Mr. Murray performed any
17   analysis of this?
18       A  I'm sorry.  Performed any analysis of
19   what?
20       Q  Of whether this was available in 2011.
21           ATTORNEY SCHARN:  Objection.  Form.
22       A  I think he said he acknowledged that it
23   was available in 2011, and I can't remember if he
24   confirmed it or -- or -- but was also indicated
25   that you could confirm this by looking at Duo's

152

1    entries on the Wayback Machine.
2        Q  How long was your conversation with
3    Mr. Murray about this document?
4            ATTORNEY SCHARN:  Objection.  Misstates
5    the record.
6        A  Yeah, I don't know that we -- well, I
7    can't tell you the length of a conversation about
8    any one topic.
9            The best I can do is tell you that in the
10   second phone call, that one was about 30 minutes.
11       Q  And during that phone call, did you
12   discuss when Duo Push was made available to the
13   public?
14       A  I don't recall if we discussed that or
15   not.  I think I have citations in my report for my
16   understanding of its availability to the public
17   based on Duo materials and the testimony of the
18   Duo inventors.
19       Q  But you don't recall having a discussion
20   with Mr. Murray about when Duo Push was publicly
21   available?
22       A  Correct.
23       Q  Did you have a discussion with Mr. Murray
24   of when Duo Push was used publicly?
25       A  I don't recall having that conversation

157

1      ATTORNEY SCHARN: Objection. Form.
2      **A No.**
3      Q How else could you show a predetermined
4  time relation as required by the claims?
5      **A You could execute the system and see if it**
6  **allowed -- if it enforced a time limit for the**
7  **authentication.**
8      Q So you would have to have access to the
9  system, correct?
10     **A That would be one way to do it, yes.**
11     Q And you would have to use the system?
12     **A Yes.**
13     Q In your invalidity opinions, did you do
14  any assessment about the disclosure of this
15  document and whether it discloses the limitations
16  of the asserted claim?
17     ATTORNEY SCHARN: Objection. Form.
18     **A In my -- in my invalid -- opening**
19  **invalidity report, no.**
20     Q How about in your reply report?
21     **A I -- the report speaks for itself, but I**
22  **don't -- I don't recall -- well, I mean, the reply**
23  **report does have this section on inequitable**
24  **conduct -- conduct, excuse me -- where I do talk**
25  **about some of these materials.**

158

1      Q Okay. Do you demonstrate or analyze where
2  in this document there is a disclosure of every
3  element of Claim 1 of the '903 patent?
4      ATTORNEY SCHARN: Objection. Form.
5      **A No, not -- not in this -- not in the reply**
6  **report.**
7      Q And you didn't do it in your opening
8  report either, correct?
9      **A Correct.**
10     Q Now, on the last page there says, "Sign up
11  today for free."
12     Do you see that?
13     **A Yes.**
14     Q Do you know if Mr. Adenuga ever clicked on
15  that link?
16     **A As a factual matter, no.**
17     Q Did Mr. Murray tell you if Mr. Adenuga or
18  CosmoKey had ever clicked on that link?
19     **A No.**
20     Q If you can, let's turn to your -- what I
21  believe is Exhibit 1, which is your reply report.
22     **A Okay. I have that.**
23     Q Okay. And, in particular, I want to talk
24  about your opinions regarding the Duo Push
25  systems.

159

1      **A Okay.**
2      Q Are you familiar with that terminology?
3      **A As it relates to this report, yes.**
4      Q And what do you mean by "Duo Push systems"
5  when you say that term?
6      **A I mean what I was calling in here the Duo**
7  **Push 2010 system and the Duo Push 2011 system.**
8      Q And so when you use that term, it refers
9  to both systems?
10     **A If I use it without additional**
11  **qualification and it's plural, yes.**
12     Q And when you say "Duo Push 2010 system,"
13  what are you pointing to as -- there are a number
14  of presentations. There are a number -- there's
15  some source code you were looking at.
16     What are you pointing to as Duo Push 2010?
17     **A It's primarily the system that was defined**
18  **by the October 25th, 2010, source code.**
19     Q Okay. Same question for Duo Push 2011.
20     Are you identifying the system as what was
21  available in those two versions of the 2011 source
22  code?
23     **A Yes.**
24     Q Do you have any opinion of when that Duo
25  Push 2010 source code was publicly used?

160

1      **A My understanding is that the substantive**
2  **portions of the Duo 2010 system that are at issue**
3  **in this case, specifically the features and**
4  **functions that have been relied on for**
5  **infringement, were -- I mean, I state in the**
6  **original report, the chronology. But they were --**
7  **they were available as I think -- I think the**
8  **earliest was April -- April 2010.**
9      **I mean, I've -- I've -- if you give me a**
10  **minute, I'll get you the exact date, because**
11  **that's -- that's documented.**
12     (Document review.)
13     So as -- so for the relevant portions that
14  have been relied on for infringement, I believe it
15  would have been anytime after April of 2010.
16     So there was the -- and so that would
17  include the demonstration at the -- the SINET
18  conference, or "Sigh-net" conference, that was in
19  October of 2010. And the presentations that they
20  invent -- that the inventors -- that Mr. Oberheide
21  and Mr. Song made in April and May of 2010.
22     And -- I'm just trying to find the date of
23  the Merit conference.
24     Yes, and then the public demonstration
25  that was done at the Merit conference in May of

HIGHLY CONFIDENTIAL - SOURCE CODE
Transcript of Kevin Jeffay, Ph.D.
Conducted on December 11, 2024

82 (325 to 328)

---

325

1 Paragraph 795 as the measured system response
2 time?
3    **A  Measured system response time.**
4       (Document review.)
5       Your "measured system response time" is
6 throwing me off here.
7       It's -- it's a statement that I -- the
8 first basis is the statement that's in the
9 first -- sorry -- the quote from the PhoneFactor
10 doc cited in Paragraph 795, about how the response
11 time has to be bounded.
12    Q  And you can see where it says "the
13 measured system response time" block quoted on
14 Page 317.
15       Do you see that, MSRT?
16    **A  Oh, I see where you're reading.  Sorry.**
17    **I was just referring to the PhoneFactor**
18 **fact that it calls it the system response time.**
19    **So it's -- the disclosure of what they're**
20 **attempting to do is, they're attempting to measure**
21 **SRT.  And then this block quote is describing an**
22 **implementation of attempting to measure SRT.**
23       ATTORNEY PADRO: Okay.  And I believe
24 that's at time here.
25       Look, I'll leave the deposition open.

---

326

1 Obviously, we've had some discussion about the
2 amount of time needed for this, but we can take
3 that up separately.
4       I have no more further questions, but I'll
5 leave the deposition open at this time.
6       ATTORNEY SCHARN: Yeah, the deposition is
7 closed.  I think we had an agreement.  That's why
8 we're all here.  So -- but we can go off record.
9       THE VIDEOGRAPHER: This marks the end of
10 the deposition of Kevin Jeffay.  We are going off
11 the record at 7:58 P.M.
12       (Time Noted: 7:58 P.M.)
13
14
15
16
17
18
19
20
21
22
23
24
25

---

327

1       ACKNOWLEDGMENT OF DEPONENT
2       I, KEVIN JEFFAY, Ph.D., do hereby
3 acknowledge that I have read and examined the
4 foregoing testimony and the same is a true,
5 correct, and complete transcription of the
6 testimony given by me and any corrections appear
7 on the attached errata sheet signed by me.
8
9 _____    _____
10    (SIGNATURE)              (DATE)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

328

1 CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC
2    I, ANITA M. TROMBETTA, RMR, CRR, and Certified
3 California Shorthand Reporter, the officer before
4 whom the foregoing deposition was taken, do hereby
5 certify that the foregoing transcript is a true
6 and correct record of the testimony given; that
7 said testimony was taken by me stenographically
8 and thereafter reduced to typewriting under my
9 direction; that reading and signing was requested
10 [or not requested, as appropriate]; and that I am
11 neither counsel for, related to, nor employed by
12 any of the parties to this case and have no
13 interest, financial or otherwise, in its outcome.
14       IN WITNESS WHEREOF, I have hereunto set my
15 hand and affixed my notarial seal this 15th day of
16 December, 2024.
17 My commission expires: 10.07.2025
18
19
20
21 _____
22
23
24
25

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 18-1477 (JLH) (CJB) |
| DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC., | ) ) ) ) ) | **CONFIDENTIAL – FILED UNDER SEAL** |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO COSMOKEY'S MOTION IN LIMINE
TO PRECLUDE INEQUITABLE CONDUCT ARGUMENTS AND EVIDENCE**

OF COUNSEL:

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Erin Kim
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

Jaysen S. Chung
Julian Manasse-Boetani
Yana Nebuchina
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
(415) 393-8200

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
(949) 451-3800

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants Duo Security LLC
f/k/a Duo Security, Inc. and Cisco Systems, Inc.*

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '903 patent | U.S. Patent No. 9,246,903 |
| CK | Plaintiff CosmoKey Solutions GmbH & Co. KG |
| Defendants | Defendants Duo Security LLC and Cisco Systems, Inc. |

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | *St. Jude Med., et. al. v. Volcano Corp.*, No. 10-cv-00631, D.I. 395 (D. Del. Oct. 9, 2012) |
| 2 | Rebuttal Expert Report of Lauren R. Kindler, dated October 18, 2024 |

CK moves to exclude evidence that is directly and significantly relevant to the issues of noninfringement, invalidity, and damages—simply because it *also* establishes CK's inequitable conduct. There is minimal risk of prejudice to CK from the introduction of this evidence because inequitable conduct is not an issue tried to the jury, and Defendants will not suggest to the jury that CK engaged in misconduct before the PTO by omitting information about Duo. Thus, there is no basis to exclude the highly relevant evidence that CK seeks to hide from the jury.

## I.    THE EVIDENCE IS DIRECTLY RELEVANT TO CORE ISSUES IN THIS CASE

Mr. Adenuga and his CK colleagues' 2012 review of Duo and their conclusion that Duo did "something different"—and succeeded at it—undermine CK's infringement theories, bolster Defendants' invalidity arguments, diminish the hypothetical value of a license to practice the '903 patent, and inform the parties' relative positions at the hypothetical negotiation. Courts in this District admit evidence when it is probative of *both* issues to be determined by the jury and inequitable conduct. *Biomerieux, S.A. v. Hologic, Inc.*, 2020 WL 583917, at *1 (D. Del. Feb. 6, 2020) (admitting data relevant to inequitable conduct and "at least to" obviousness); *Persawvere, Inc. v. Milwaukee Elec. Tool Corp.*, 2023 WL 8094642, at *1–2 (D. Del. Nov. 21, 2023) (similar).[1]

**Noninfringement.** The challenged evidence shows that Mr. Adenuga and CK's European patent attorney, Mr. Wiebusch, considered Duo and Oberheide '230 to be substantially different from the invention claimed in the '903 patent. Starting in 2012, Mr. Adenuga evaluated Duo's

---

[1] CK's cited cases are distinguishable. In *Helios Software, LLC v. Spectorsoft Corp.*, the court stated that "evidence is not inadmissible solely because it is relevant to inequitable conduct, provided that it is also relevant to an issue that will be part of the Jury Trial." 2015 WL 3653098, at *2 (D. Del. May 22, 2015). CK's other cases concerned materially different kinds of evidence. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2007 WL 7658923, at *1 (D. Del. Sept. 14, 2007) (reference to reexamination proceedings); *St. Jude Med., et. al. v. Volcano Corp.*, No. 10-cv-00631, D.I. 395, at 1-2 (D. Del. Oct. 9, 2012) (Ex. 1) (precluding "evidence that tends to prove an equitable defense and no other"); *Pharmastem Therapeutics Inc. v. Viacell, Inc.*, 2003 WL 22244704, at *1 (D. Del. Sept. 30, 2003) (EPO's revocation of related European patent).

products and Oberheide '230 and considered their potential impact on the claimed invention. ████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████ CK. Ex. 7. █████████████████████████████████████████████████

████████████████████████████████ CK Ex. 9.

Despite these initial concerns, Mr. Adenuga testified in this case that he did not view Duo

or Oberheide '230 as ████████████████████████████████ CK Ex. 21 at 142:24-25.

Mr. Wiebusch likewise testified that ██████████████████████████ CK Ex. 26

at 39:5-40:3. This view continued at least to 2014: asked whether Duo Push "conflicts with our

patents," Mr. Adenuga stated "████████████████████████████ CK Ex. 2.

It is hard to imagine more relevant evidence to non-infringement than the inventor and

prosecutor discussing the accused product—which has not materially changed since these

exchanges—and then stating that it is different than the claims they were pursuing at the PTO.

**Damages.** The disputed evidence is also highly relevant to damages. Mr. Adenuga's

assessment that Duo offered a distinct product with an "████████████" diminishes the value of

a hypothetical license for the patent. CK Ex. 21 at 141:10-142:16; CK Ex. 9; Ex. 2 (Kindler Rpt.)

¶ 109 (apportionment must consider the economic benefit attributable to the claimed technology).

As Defendants' damages expert explains, Mr. Adenuga believed that CK and Duo "███████

████████████" because, while Duo was in the MFA market, it offered a different product. Ex.

2 ¶ 62. Mr. Adenuga's emails and testimony also suggest ████████████████████████

███████████████████████████████████████████████████████████████████████████

---

[2] Defendants' technical and source code experts concluded that Duo's products have remained functionally the same (in the ways material to the Asserted Claims) between 2010 and the present; CK's experts have not offered a contrary opinion.

███████████████████. *Id.* ¶¶ 168 (citing CK Ex. 5), 201 (citing CK Ex. 7). ██████

████████████████████████████████████████████████

██████████████████████████████. *Id.* ¶ 61 (quoting CK Ex. 5).

**Invalidity.**   The disputed evidence is also highly relevant to Defendant's invalidity arguments that are made in the alternative to Defendants' noninfringement positions—that is, if CK returns to Mr. Adenuga's and Mr. Wiebusch's view that Duo Push *is* substantially similar to the claimed invention, then the claims are invalid over Duo Push 2010, which was not before the Patent Office. *Isco Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 497 (D. Del. 2003) *aff'd*, 123 F. App'x 974 (Fed. Cir. 2005) (holding that the jury was entitled to rely on expert testimony that the "PTO 'absolutely' would not have granted the [patent] had it known about" the prior art). Mr. Adenuga's awareness of Duo in 2012 is also definitive evidence that Duo did not conceal or abandon its Duo Push invention and is thus probative of invalidity under 35 U.S.C. § 102(g)(2).

## II.    THERE IS MINIMAL RISK OF PREJUDICE TO CK OR JURY CONFUSION

There is little risk of undue prejudice or jury confusion because, contrary to CK's assertion, Defendants will not suggest that CK "engaged in . . . misconduct in obtaining the '903 patent" by omitting information from the PTO. Mot. at 3. When there is no suggestion that evidence "should" have been disclosed to the PTO, the probative value, including "the fact it was not before the PTO" is "not substantially outweighed by the risk of unfair prejudice, confusion, or any other concerns of Federal Rule of Evidence 403." *Biomerieux*, 2020 WL 583917, at *1. CK suggests that the evidence is unduly prejudicial simply because it contradicts CK's positions. Not so. *United States v. Hagins*, 452 F. App'x 141, 148 (3d Cir. 2011). Any minimal "prejudice" to CK caused by Mr. Adenuga or Mr. Wiebusch's views that Duo was different from the claimed invention does not outweigh the significant relevance of the challenged evidence as described above.

OF COUNSEL:

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Erin Kim
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Jaysen S. Chung
Julian Manasse-Boetani
Yana Nebuchina
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
(415) 393-8200

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA  92612-4412
(949) 451-3800

April 24, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants Duo Security LLC
f/k/a Duo Security, Inc. and Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I certify that I caused copies of the foregoing document to be served on April 24, 2025, upon the following in the manner indicated:

David E. Moore, Esquire                                      *VIA ELECTRONIC MAIL*
Bindu A. Palapura, Esquire
Andrew M. Moshos, Esquire
POTTER, ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Scott T. Weingaertner, Esquire                              *VIA ELECTRONIC MAIL*
Stefan Mentzer, Esquire
John Padro, Esquire
Matthew Wisnieff, Esquire
Lauren Kuehn Pelletier, Esquire
Timothy Francis Keegan, Esquire
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018
*Attorneys for Plaintiff*

Farzad Feyzi, Esquire                                       *VIA ELECTRONIC MAIL*
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA  94063
*Attorneys for Plaintiff*


                                        */s/ Jennifer Ying*
                                        _____
                                        Jennifer Ying (#5550)

5

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ST. JUDE MEDICAL CARDIOLOGY DIVISION, INC., ST. JUDE MEDICAL SYSTEMS AB, and ST. JUDE MEDICAL S.C., INC., | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 10-631-RGA |
| VOLCANO CORPORATION, | : | |
| Defendant. | : | |

## ORDER CONCERNING VOLCANO'S MOTIONS *IN LIMINE*

The Court having considered Volcano's Motions *In Limine* (D.I. 380, Tab 11);

**IT IS HEREBY ORDERED** that:

1.      Volcano's Motion *in Limine* No. 1 to exclude evidence of alleged copying by Volcano is **DENIED**.  Copying is irrelevant to the written description requirement.  Copying is a fact intensive determination that cannot be decided now.

2.      Volcano's Motion *in Limine* No. 2 to exclude evidence obtained during inequitable conduct discovery is **GRANTED IN PART** and **DENIED IN PART**.  Evidence provided or obtained during inequitable conduct discovery can be used for purposes of cross-examination.  Such evidence, however, cannot be used affirmatively to support an infringement/non-infringement or validity/invalidity argument.

3.      Volcano's Motion *in Limine* No. 3 to exclude evidence regarding St. Jude's equitable defenses is **GRANTED IN PART** and **DENIED IN PART**.  Evidence that tends to prove an equitable defense and no other will be excluded.  Evidence of correspondence between

St. Jude and Volcano in 1997-99, the probative value of which depends on silence, is excluded under Federal Rule 403 in view of the ambiguous nature of the evidence and distance in time from the relevant time period for infringement.

    4.    Volcano's Motion *in Limine* No. 4 to exclude evidence regarding non-asserted patents EP 1,658,808 and U.S. 6,908,442 is **GRANTED IN PART** and **DENIED IN PART**. Evidence of or reference to European Patent No. 1,658,808 is excluded as irrelevant to the written description requirement of the '965 Patent. The motion is **TENTATIVELY DENIED** with respect to U.S. Patent No. 6,908,442 because patents are presumptively valid and separate patentability is relevant to infringement analysis under the doctrine of equivalents.

    5.    Volcano's Motion *in Limine* No. 5 to exclude evidence of the expiration date of U.S. Patent No. 5,178,159 is **GRANTED**. So long as there is no dispute about the dates of particular accused infringing products being made, used, offered for sale or sold before November 2, 2008, there is no reason for the jury to hear the expiration date or the fact that the '159 Patent is expired.

    6.    Decision on Volcano's Motion *in Limine* No. 6 to exclude evidence that St. Jude sponsored the F.A.M.E. studies is deferred.

    7.    Volcano's Motion *in Limine* No. 7 to exclude evidence previously stricken by the Court is **GRANTED**[1] with leave for St. Jude to apply for leave to use the evidence should Volcano "open the door."

    8.    Volcano Motion *in Limine* No. 8 to exclude the proferred evidence of the CardioLab and EP-Workmate Systems is **DENIED**.

---

    [1]    As to the video of the Radianalyzer demonstration at the 2001 Euro PCR, the Court will separately rule on the objections to the Magistrate Judge's decision. (D.I. 243).

9. Volcano's *Motion in Limine* No. 9 to exclude evidence related to SmartFlow from

after December 19, 2001 is **DENIED**.

Entered this 9th day of October, 2012.

Richard G. Andrews

United States District Judge

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1477 (JLH) (CJB) |
| | ) | |
| DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC., | ) | **CONFIDENTIAL – FILED UNDER SEAL** |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO COSMOKEY'S MOTION IN LIMINE TO PRECLUDE DOCUMENTS SELECTIVELY PRESERVED AND PRODUCED BY DEFENDANTS**

OF COUNSEL:

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Erin Kim
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Jaysen S. Chung
Yana Nebuchina
Julian Manasse-Boetani
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
(415) 393-8200

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA  92612-4412
(949) 451-3800

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants Duo Security LLC
f/k/a Duo Security, Inc. and Cisco Systems, Inc.*

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '903 patent | U.S. Patent No. 9,246,903 |
| CK | Plaintiff CosmoKey Solutions GmbH & Co. KG |
| Duo | Defendants Duo Security LLC and Cisco Systems, Inc. |
| ESI Order | Order Governing the Discovery of Electronically Stored Information ("ESI"), D.I. 58 |
| Ex. | Exhibit |
| Mot. | CosmoKey's Motion In Limine to Preclude Documents Selectively Preserved and Produced by Defendants |

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Default Standard for Discovery, including Discovery of Electronically Stored Information ("ESI"), available at https://www.ded.uscourts.gov/sites/ded/files/pages/Electronic%20Discovery%20Default%20Standard_0.pdf |
| 2 | Excerpt of Deposition Transcript of Jon Oberheide (August 15, 2024) |

iii

CK's motion is a transparent attempt to obtain an adverse inference sanction for alleged discovery violations on which the Court has already ruled against it. Even the title of CK's motion is misleading; CK is not requesting to "preclude documents" that were allegedly "selectively preserved," but rather is asking the Court to preclude Duo's witnesses from testifying as to Duo's lack of knowledge of the Asserted Patent. CK has already deposed 12 of Duo's witnesses on this topic, and will have the opportunity to cross examine Duo's witnesses live at trial. CK now aims to block Duo from defending itself against CK's meritless willfulness allegations and to relitigate discovery issues on which CK has already *twice* sought relief and *lost*. D.I. 206 at 74:15–25.[1]

CK's sole basis for the extraordinary relief it seeks is its allegation that Duo should have noticed that the inventor, Dominic Adenuga, sent LinkedIn messages to Duo in 2016 asking if there was any interest in CK's patents, and that Duo had an obligation from that point forward to preserve instant messages. There is no basis for CK's allegations. The LinkedIn messages were never read, and in any event would not trigger any document preservation obligation.

Courts routinely exclude accusations that a party has withheld or suppressed evidence as "unnecessarily prejudicial." *ECB USA, Inc. v. Savencia, S.A.*, 2025 WL 487430, at *5 (D. Del. Feb. 13, 2025). Such accusations must be substantiated with evidence of both the purported existence of the withheld documents *and* evidence of intent. *Id.*; *see Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012) ("[A] finding of bad faith is pivotal to a spoliation determination."). There is no such evidence here.

**The preclusion order and instruction CK seeks are not supported by the evidence or the law.** Even if Duo were somehow required to modify its data retention policies to preserve

---

[1] CK's original motion to compel on this issue was denied, as was its sanctions motion (which again raised the Slack dispute). D.I. 206; 413.

chat messages, there is no hint in the record that the Asserted Patent was ever discussed by Duo's employees in a nonprivileged context. *IOENGINE LLC v. Paypal Holdings, Inc.*, No. CV 18-452-WCB, 2022 WL 1443867, at *4 (D. Del. May 3, 2022) (declining to "base a finding [of spoliation]" on "an unproven assumption" that the evidence would have hurt party's case).

CK speculates that there is a ███████████████████████—"in which Defendants *could have discussed* . . . their awareness of the patent, the possibility that they infringe, and product design decisions in response." Mot. at 2 (emphasis changed). Despite production of tens of thousands of documents (including emails) from this time period, and CK's deposition of 12 of Duo's current and former employees, there is no evidence of any nonprivileged discussion of the '903 patent *at any point*. Nor is there any indication of even a privileged discussion or awareness of the '903 patent prior to August 21, 2018, when CK sent Duo a letter concerning the Asserted Patent. *See* D.I. 62, Exs. C, D.[2] There is no basis to believe that Slack messages from this timeframe discussed the Asserted Patent at all, let alone that they would have provided evidence of willful infringement. CK's requested remedies should therefore be rejected.[3] *See IOENGINE LLC*, 2022 WL 1443867, at *4.

---

[2] CosmoKey's principal, Dominic Adenuga, sent LinkedIn communications to two Duo employees in late 2016, but the only evidence in the record suggests that these messages were never actually received or reviewed. Ex. 2 at 155:6-158:4. In any case, the messages only asked "are this patent and the technology of any interest to you or your company[?]" which could not reasonably have created any obligation for Duo to modify its Slack message retention policy.

[3] CK's cited cases concern parties who intentionally destroyed relevant evidence. *See Manning v. Safelite Fulfillment, Inc.*, No. 17-cv-2824, 2021 WL 3557582, at *11 (D.N.J. Apr. 29, 2021), *report & recommendation adopted*, No. 17-cv-2824, 2021 WL 3542808 (D.N.J. Aug. 11, 2021); *Orion Drilling Co., LLC v. EQT Prod. Co.*, 826 F. App'x 204, 217 (3d Cir. 2020). In contrast, there is no allegation here of intentional destruction. In *Magnetar*, the court refused to order an adverse inference and preclusion even though over 700 boxes of archived documents potentially relevant to the on sale bar (i.e., invalidity), under plaintiff's control were destroyed within months of the filing of plaintiff's complaint. *See Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 472–73, 488–89 (D. Del. 2012), *aff'd sub nom. Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. CV 07-127-LPS-MPT, 2014 WL 545440 (D. Del. Feb. 7, 2014). *Id.* at 489.

**Defendants were not obligated to preserve Slack messages prior to July 2023.** CK cannot show that Duo had an obligation to preserve the so-called "███████" of Slack messages, nor that Duo acted in bad faith. First, the parties' ESI Order does not require the preservation of "[i]nstant messages and chats that are not ordinarily printed or maintained in a server dedicated to instant messaging." D.I. 58 at 2, 12. The same provision is contained in the default ESI order in Delaware. Ex. 1 at 7. Slack is an instant messaging platform that allows users to send messages either directly to one user ("direct messages") or to a group of users ("group messages"). D.I. 247 ¶ 3. ████████████████. D.I 156 at 3. Under Duo's company-wide Slack retention policies, direct messages are not retained for more than 90 days, and group messages are not retained for more than 547 days.[4] *See* D.I. 156 at 3; D.I. 246 at 5; D.I. 247 ¶ 4. Further, messages that are retained are not stored in a human-readable format. D.I. 156 at 3.

Contrary to CK's claims, there is also no evidence that Duo acted in bad faith or had an intent to withhold Slack messages. Mot. at 2, 3. As stated above, the parties' agreed-upon ESI order did not require preservation of instant messages or chats that were not "ordinarily maintained." D.I. 58 at 2, 12. CK did not request that Defendants produce "electronic discussion" materials until March 2023, when it served its first RFPs. And when CK finally gave Duo notice, during a July 28, 2023 meet and confer, that it was seeking Slack messages, Duo promptly preserved the entire Slack messaging system. D.I. 156 at 4. Duo's prompt compliance with CK's requests does not evidence an "intent" to withhold documents. *ECB*, 2025 WL 487430, at *5.

---

[4] CK incorrectly suggests Duo did not preserve instant messages "except for the specific messages they contend support their theories," because Duo produced IRC messages and cited several in its Second Supplemental Invalidity Contentions. Mot. at 1. But IRC chat logs had different retention policies and their production does not show intent not to preserve Slack messages.

OF COUNSEL:

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Erin Kim
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Jaysen S. Chung
Yana Nebuchina
Julian Manasse-Boetani
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
(415) 393-8200

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA  92612-4412
(949) 451-3800

April 24, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants Duo Security LLC*
*f/k/a Duo Security, Inc. and Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I certify that I caused copies of the foregoing document to be served on April 24, 2025, upon the following in the manner indicated:

David E. Moore, Esquire                                          *VIA ELECTRONIC MAIL*
Bindu A. Palapura, Esquire
Andrew M. Moshos, Esquire
POTTER, ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
*Attorneys for Plaintiff*

Scott T. Weingaertner, Esquire                                  *VIA ELECTRONIC MAIL*
Stefan Mentzer, Esquire
John Padro, Esquire
Matthew Wisnieff, Esquire
Lauren Kuehn Pelletier, Esquire
Timothy Francis Keegan, Esquire
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
*Attorneys for Plaintiff*

Farzad Feyzi, Esquire                                            *VIA ELECTRONIC MAIL*
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
*Attorneys for Plaintiff*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)

# EXHIBIT 1

## DEFAULT STANDARD FOR DISCOVERY,
## INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION
## ("ESI")

### 1. **General Provisions**

a. **Cooperation.** Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. In the event that the parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement.

b. **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

c. **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

(i) Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

---

[1]Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

(ii) Absent a showing of good cause by the requesting party, the

categories of ESI identified in Schedule A attached hereto need not be preserved.

d. **Privilege.**

(i) The parties are to confer on the nature and scope of privilege logs for

the case, including whether categories of information may be excluded from any logging

requirements and whether alternatives to document-by-document logs can be

exchanged.

(ii) With respect to information generated after the filing of the complaint,

parties are not required to include any such information in privilege logs.

(iii) Activities undertaken in compliance with the duty to preserve

information are protected from disclosure and discovery under Fed. R. Civ. P.

26(b)(3)(A) and (B).

(iv) Parties shall confer on an appropriate non-waiver order under Fed. R.

Evid. 502. Until a non-waiver order is entered, information that contains privileged

matter or attorney work product shall be immediately returned if such information

appears on its face to have been inadvertently produced or if notice is provided within

30 days of inadvertent production.

2. **Initial Discovery Conference.**

a. **Timing.** Consistent with the guidelines that follow, the parties shall discuss

the parameters of their anticipated discovery at the initial discovery conference (the

"Initial Discovery Conference") pursuant to Fed. R. Civ. P. 26(f), which shall take place

before the Fed. R. Civ. P. 16 scheduling conference ("Rule 16 Conference").

2

b. **Content.** The parties shall discuss the following:

(i) The issues, claims and defenses asserted in the case that define the scope of discovery.

(ii) The likely sources of potentially relevant information (i.e., the "discoverable information"), including witnesses, custodians and other data sources (e.g., paper files, email, databases, servers, etc.).

(iii) Technical information, including the exchange of production formats.

(iv) The existence and handling of privileged information.

(v) The categories of ESI that should be preserved.

3. **Initial Disclosures.** Within 30 days after the Rule 16 Conference, each party shall disclose:

a. **Custodians.** The 10 custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.

b. **Non-custodial data sources.**[2] A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

c. **Notice.** The parties shall identify any issues relating to:

(i) Any ESI (by type, date, custodian, electronic system or other criteria)

---

[2]That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

3

that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

(ii)  Third-party discovery under Fed. R. Civ. P. 45 and otherwise,

including the timing and sequencing of such discovery.

(iii)  Production of information subject to privacy protections, including

information that may need to be produced from outside of the United States and subject

to foreign laws.

Lack of proper notice of such issues may result in a party losing the ability to pursue or

to protect such information.

## 4.  **Initial Discovery in Patent Litigation.[3]**

a.  Within 30 days after the Rule 16 Conference and for each defendant,[4] the

plaintiff shall specifically identify the accused products[5] and the asserted patent(s) they

allegedly infringe, and produce the file history for each asserted patent.

b.  Within 30 days after receipt of the above, each defendant shall produce to the

plaintiff the core technical documents related to the accused product(s), including but

not limited to operation manuals, product literature, schematics, and specifications.

c.  Within 30 days after receipt of the above, plaintiff shall produce to each

defendant an initial claim chart relating each accused product to the asserted claims

each product allegedly infringes.

_____

[3]As these disclosures are "initial," each party shall be permitted to supplement.

[4]For ease of reference, "defendant" is used to identify the alleged infringer and "plaintiff" to identify the patentee.

[5]For ease of reference, the word "product" encompasses accused methods and systems as well.

4

d. Within 30 days after receipt of the above, each defendant shall produce to the plaintiff its initial invalidity contentions for each asserted claim, as well as the related invalidating references (e.g., publications, manuals and patents).

e. Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

5. **Specific E-Discovery Issues.**

a. **On-site inspection of electronic media.** Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b. **Search methodology.** If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party. Absent a showing of good cause, a requesting party may request no more than 10 additional terms to be used in connection with the electronic search. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3(b); and (ii) emails and other ESI maintained by the custodians identified in accordance with paragraph 3(a).

c. **Format.** ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or TIFF). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the

5

original formatting, the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

d. **Native files.** The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files.

e. **Metadata fields.** The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

6

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic

7

equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1477 (JLH) (CJB) |
| | ) | |
| DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC., | ) | **CONFIDENTIAL – FILED UNDER SEAL** |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO COSMOKEY'S MOTION IN LIMINE
TO PRECLUDE ARGUMENTS AND EVIDENCE THAT IS REFUTED BY BINDING
30(b)(6) TESTIMONY**

OF COUNSEL:

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Erin Kim
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Jaysen S. Chung
Julian Manasse-Boetani
Yana Nebuchina
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
(415) 393-8200

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA  92612-4412
(949) 451-3800

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants Duo Security LLC
f/k/a Duo Security, Inc. and Cisco Systems, Inc.*

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '903 patent | U.S. Patent No. 9,246,903 |
| CK | Plaintiff CosmoKey Solutions GmbH & Co. KG |
| Defendants | Defendants Duo Security LLC and Cisco Systems, Inc. |

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Excerpt of Deposition Transcript of Jon Oberheide (August 15, 2024) |
| 2 | Excerpt of Defendants' Objections and Responses to Plaintiff's Amended Notice of Rule 30(b)(6) Deposition of Defendants (July 12, 2024) |
| 3 | Email from C. Sim (Defendants) to T. Keegan (CosmoKey), July 10, 2024 |
| 4 | *InQuisient Inc. v. ServiceNow Inc.*, C.A. No. 22-cv-900, 7/21/24 Tr. (D. Del.) (excerpt) |

This MIL is CK's *third* attempt to eliminate Defendants' invalidity and prior commercial use defenses related to Duo Push 2010.[1]  CK's latest effort to hide from the jury that Defendants' accused product predates the filing date of the asserted patent fails just as surely as the prior two. CK's motion is based on egregiously wrong assertions regarding the testimony of Jon Oberheide, Duo's co-founder and 30(b)(6) designee.  Contrary to CK's motion, Mr. Oberheide testified at length—for dozens of pages of testimony—about the Duo Push 2010 product, how it worked and where and when it was demonstrated.  There is no basis in law or fact for CK's requested relief.

**CK's MIL egregiously mischaracterizes Mr. Oberheide's testimony.**  Contrary to CK's motion, Mr. Oberheide testified at length about how the 2010 system worked and was used.  Ex. 1 at 24:17-26:2, 33:14-35:11, 38:4-39:20, 52:5-55:17, 74:6-75:21, 77:4-79:25, 80:7-80:24, 83:7-84:9, 86:8-86:18, 89:2-90:3, 93:18-94:13, 100:2-105:23, 138:3-139:22, 185:7-187:14, 188:2-191:1.  As previously explained, the only "gap" in Mr. Oberheide's knowledge was with respect to the litigation production filename of the source code that was included on the produced files. *See* D.I. 369 at 9-10; D.I. 373 at 1.  That he did not know the litigation marking is immaterial.

CK also faults the witness for not knowing that Defendants have used "Duo Push 2010" as a shorthand for the product that was under development and publicly demonstrated and offered for sale throughout 2010, that later became commercially known as Duo Push.  In 2010, Duo called this system "Scio Agent."  Ex. 1 at 25:12-26:2, 38:16-39:4.  That Mr. Oberheide was familiar with the product by this name rather than the term used in this litigation is utterly unsurprising.  Even so, when asked whether he had heard of the term "Duo Push 2010," he responded that it "[s]ounds like Duo Push in a year." Ex. 1 at 31:16-18.  This is no basis for exclusion.

---

[1] CK repeats its *Daubert* and now-denied summary judgment leave arguments that Duo Push 2010 is not prior art, relying on the same testimony.  D.I. 328 at 5-6, 9; D.I. 365 at 1-2; D.I. 397.

**No legal authority supports CK's request.**  Even if CK were right about what Mr. Oberheide testified, that would not be a basis to exclude the Duo Push 2010 prior art.  CK cites no case where a party was precluded from presenting a claim or defense based on a purported lack of knowledge by a Rule 30(b)(6) corporate designee where, as here, the party had provided ample discovery on the issue.  Defendants have provided extensive documents (including source code), invalidity contention disclosures, testimony from multiple witnesses (including Mr. Oberheide), and extensive expert discovery[2] on the Duo Push 2010 system.

CK's argument entirely misunderstands the role of a Rule 30(b)(6) witness.  "[T]he testimony of a Rule 30(b)(6) representative, although admissible against the party that designates the representative, is not a judicial admission absolutely binding on that party."  *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 451 (E.D. Pa. 2014).  Every circuit court to consider the issue has agreed.  *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) (citing *Moore's Federal Practice* and collecting cases).  Rule 30(b)(6) testimony is therefore not a proper basis for precluding entire defenses—functionally granting summary judgment.

CK's only cited case from a court in this circuit, *Rogers v. Wilmington Trust Co.*, is consistent with this rule.  The court held a party's deposition testimony was binding because it "offered no explanation for [its deposition] testimony at trial" or "in its posttrial answering brief."  2021 WL 739048, at *13 (D. Del. Feb. 25, 2021).  The court did not, as CK requests here, preclude the party from presenting its defense based on corporate deposition testimony.  *Id.*  Nor does the since discredited decision in *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998) support CK's argument.  Courts who have considered the holding in *Rainey* have found it to be incorrect.  *See, e.g.*, *United States ex rel. Landis v. Tailwind Sports Corp.*, 292 F.

---

[2] The details of Duo Push 2010 are addressed in six expert reports from two technical experts.

Supp. 3d 211, 217 (D.D.C. 2017) (denying a MIL and observing that "the broad principle that testimony of a Rule 30(b)(6) representative binds the designating entity has been expressly repudiated by every court of appeals to consider the issue") (distinguishing *Rainey* and collecting cases)); *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001) (disagreeing with *Rainey* and holding that "[n]othing in the advisory committee notes indicates that [Rule 30(b)(6)] goes that far," and instead that, "like any other deposition testimony," 30(b)(6) testimony "can be contradicted and used for impeachment"); *Cont'l Cas. Co. v. First Fin. Emp. Leasing, Inc.*, 716 F. Supp. 2d 1176, 1190 (M.D. Fla. 2010) (similar). Even so, *Rainey* involved a party who offered an affidavit that directly contradicted 30(b)(6) testimony in opposing summary judgment. 26 F. Supp. 2d at 94. This is not summary judgment, and there is no such contradiction here.

**CK misstates the scope of Mr. Oberheide's corporate designations.** Although neither the law nor Mr. Oberheide's testimony support the relief CK seeks, CK also misstates the scope of the topics for which Mr. Oberheide was designated. For Topics 45 and 46 (identified by CK), Defendants designated Mr. Oberheide on "the operation and functionality of 'Duo Push'" as well as its "design, development, use, disclosure, descriptions, demonstrations, and sale." Ex. 2 (Objs.) at 40–41. These topics do not cover source code, and for the source code topics Defendants objected to preparing a witness to "speak in detail about any portion of [the] massive amount of code" in the parties' contentions without more specific prior identification. Ex. 3 at 1; *see InQuisient Inc. v. ServiceNow Inc.*, C.A. No. 22-cv-900, 7/21/24 Tr. (Ex. 4) at 123:25-124:9, 141:17-21 (D. Del.). Yet CK declined to identify code it wanted Mr. Oberheide prepared on and, at Mr. Oberheide's deposition, CK failed to provide the necessary context for the limited excerpts it placed before him. Ex. 1 at 214:15-219:12. Mr. Oberheide nonetheless provided extensive testimony on the matter he was designated for: the development, functionality and use of Duo.

OF COUNSEL:

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Erin Kim
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Jaysen S. Chung
Yana Nebuchina
Julian Manasse-Boetani
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
(415) 393-8200

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA  92612-4412
(949) 451-3800

April 24, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendants Duo Security LLC*
*f/k/a Duo Security, Inc. and Cisco Systems, Inc.*

## CERTIFICATE OF SERVICE

I certify that I caused copies of the foregoing document to be served on

April 24, 2025, upon the following in the manner indicated:

David E. Moore, Esquire                                          *VIA ELECTRONIC MAIL*
Bindu A. Palapura, Esquire
Andrew M. Moshos, Esquire
POTTER, ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Scott T. Weingaertner, Esquire                                  *VIA ELECTRONIC MAIL*
Stefan Mentzer, Esquire
John Padro, Esquire
Matthew Wisnieff, Esquire
Lauren Kuehn Pelletier, Esquire
Timothy Francis Keegan, Esquire
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018
*Attorneys for Plaintiff*

Farzad Feyzi, Esquire                                           *VIA ELECTRONIC MAIL*
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA  94063
*Attorneys for Plaintiff*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)

5

# EXHIBIT 1

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 18-1477 (JLH) |
| DUO SECURITY LLC, FKA DUO SECURITY, INC. and CISCO SYSTEMS, INC., | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S AMENDED
NOTICE OF RULE 30(B)(6) DEPOSITION OF DEFENDANTS**

Pursuant to Federal Rules of Civil Procedure 26 and 30 and this District's Local Rules of Civil Practice and Procedure, Defendants Duo Security LLC ("Duo") and Cisco Systems, Inc. ("Cisco") (collectively "Defendants") hereby object and respond to Plaintiff CosmoKey Solutions GmbH & Co. KG.'s ("CosmoKey" or "Plaintiff") Amended Notice of Rule 30(b)(6) Depositions of Duo Security LLC and Cisco Systems, Inc. (collectively, "Defendants") dated July 2, 2024 (the "Notice") (D.I. 230).

**GENERAL OBJECTIONS**

Defendants expressly incorporate the following general objections as though set forth fully in response to each of the Topics, as well as the Definitions and Instructions, and to the extent that they are not raised in any particular response, Defendants do not waive these objections. By making a specific objection to a particular Topic, Defendants do not imply that the specific objection is not applicable in response to any other Topic, nor that the general objections are not applicable to that Topic. Defendants' objections and responses do not constitute any admission by Defendants of the existence, relevance, materiality, or admissibility into evidence of the subject

matter of each Topic. Further, by stating that it will produce a witness on a Topic, Defendants make no representation that any such information exists, but, rather, if such information exists, and is within Defendants' possession, custody, or control, and can be located in the course of a reasonably diligent search, a witness will be designated to testify on the Topic subject to Defendants' objections.

1. Defendants object to the time and location specified in the Notice. Defendants will make one or more designated witnesses available at times and locations to be mutually agreed upon by the parties.

2. Defendants object each Topic to the extent it seeks information more appropriately obtained through other discovery mechanisms, including requests for production and interrogatories.

3. Defendants object to each Topic, including the definitions and instructions contained therein, to the extent it is not reasonably limited in time or geographical scope. Defendants further object to each Topic to the extent it seeks information regarding products or services offered for sale, or activities occurring, outside of the United States.

4. Defendants object to each Topic to the extent it fails to describe with reasonable particularity the matters on which examination is requested.

5. Defendants object to the Topics, including to the Definitions and Instructions, to the extent that they are inconsistent with and/or seek to impose obligations beyond those imposed by the Federal Rules of Civil Procedure or the Local Rules.

6. Defendants object to each and every Topic to the extent that it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, joint-defense privilege, common-interest privilege, Fed. R. Civ. P. 26, and/or any other applicable

privilege or protection afforded by law. Defendants also generally object to the Topics, and to each and every category contained therein, to the extent that they seek information protected by the right of privacy guaranteed by the Constitution or other applicable statutory or case law that protects such rights. Nothing contained in these responses is intended as, nor shall in any way be deemed, a waiver of any attorney-client privilege, work product protection, the right of privacy, trade secrets and confidential, proprietary business information or any other applicable privilege or protection. In responding to each Topic, Defendants will not undertake to provide privileged or otherwise protected information. Moreover, any inadvertent disclosure of any privileged or otherwise protected information shall not be deemed a knowing waiver of that privilege or protection, as to either the information disclosed or the type of information in general.

7.      Defendants object to the Topics, including to the Definitions and Instructions, as overly broad, unduly burdensome, and/or unreasonably expensive to the extent that they (a) require Defendants to provide information other than that which may be obtained through a reasonably diligent search of their records, (b) seek electronically stored information ("ESI") from sources that are not reasonably accessible, (c) impose obligations beyond the requirements of the Federal Rules of Civil Procedure, Local Rules, any other applicable statutes, rules, case law, and/or order of the Court, including any ESI Order, (d) are vague and ambiguous, (e) are not relevant to any claim or defense in the case or reasonably calculated to lead to the discovery of admissible evidence, (f) are not proportional to the needs of the case, (g) are harassing or calculated to cause confusion or to mislead, and/or (h) extend beyond the proper scope of discovery.

8.      Defendants object to each and every Topic to the extent it seeks information that is not available to Defendants or information not in Defendants' possession, custody or control.

9.      Defendants object to each and every Topic as unduly burdensome to the extent that the Topic asks Defendants to provide publicly available information or information equally available to Plaintiff or its counsel.

10.     Defendants object to each and every Topic to the extent it seeks a legal conclusion or contention and/or information that is properly the subject of expert opinion. More specifically, Defendants object to each and every Topic to the extent it incorporates words and/or phrases from U.S. Patent No. 9,246,903 ("the '903 patent").

11.     Defendants object to each Topic to the extent it calls for a witness(es) to testify as to a legal conclusion or to provide contentions.  Contention 30(b)(6) topics are not permitted in this District.  *See, e.g.*, *Pharmacia & Upjohn Co. v. Sicor, Inc.*, C.A. No. 04-833-KAJ, Tr. at 36 (D. Del. Oct. 11, 2005); *Axiohm IPS, Inc. v. Epson Am., Inc.,* C.A. No. 00-420-SLR, Tr. at 4 (D. Del. Mar. 28, 2001).

12.     Defendants object to each Topic to the extent it assumes facts not in evidence. Defendants' willingness to produce a witness to testify on any such Topic shall not be construed as a concession or agreement with any implication or conclusion, factual or otherwise, that may be drawn from that Topic.

13.     Defendants object to these Topics as premature to the extent they seek information at a time inconsistent with and/or in advance of the times set forth in the Court's Scheduling Order and amendments thereto.

14.     Defendants object to these Topics to the extent that the burden or expense of responding thereto outweighs the likely benefit, taking into account the needs of the case, the parties' resources, and the importance of the proposed discovery in resolving important issues in the case.  *See* Fed. R. Civ. P. 26(b)(2).

15.     Defendants object to each Topic as overly broad, unduly burdensome, and beyond the scope of permissible discovery to the extent that it prematurely seeks the disclosure of expert opinions. Defendants will disclose expert opinions pursuant to the Scheduling Order in this case.

16.     Defendants object to the Topics as uncertain, overbroad, unduly burdensome, and oppressive to the extent that they fail to specify any responsive time period, and accordingly are not limited to events relevant to this lawsuit.

17.     Defendants object to the Topics as a whole as being unduly burdensome and disproportionate to the needs of the case to the extent it seeks testimony regarding 60 discrete topics, in addition to multiple subtopics.

18.     Defendants object to the Topics to the extent they seek testimony regarding broad categories of documents (e.g., "financials," "spreadsheets," "technical Documents," "licenses and agreements," etc.) without identifying any documents with specificity. To the extent Plaintiff seeks testimony on specific documents, such documents must be identified reasonably in advance of a deposition.

19.     To the extent that Defendants will not designate a witness to testify regarding a particular topic, Defendants is available to meet and confer.

## OBJECTIONS TO DEFINITIONS

20.     Defendants object to each of Plaintiffs' "Definitions" to the extent that any Definition or Instruction has the effect of altering the plain meaning and/or scope of any specific Topic, where such alteration renders the Topic vague, ambiguous, overly broad, unduly burdensome, harassing, and/or expands the scope of the information or documents sought in a manner that is not proportional to the needs of the case.

that are identified in Defendants' Supplemental Invalidity Contentions, to the extent such information is known and reasonably available to Defendants.

**TOPIC NO. 45**:

The products, services, editions, and features offered by Duo and the constituent software, source code, hardware, methods, and processes that Duo contends are Duo Prior Art, including the "Duo Push" and "OATH TOPT Standard" cited in Defendants invalidity contentions, including at pages 20-21 of Defendants' Supplemental Invalidity Contentions.

**RESPONSE TO TOPIC NO. 45**:

Defendants incorporate their General Objections as if fully set forth herein. Defendants further object to this Topic to the extent that it calls for the disclosure of information protected from disclosure by the attorney-client privilege, attorney work product doctrine, common interest doctrine, joint defense privilege, or other applicable privilege or protection. Defendants object to the terms "products, services, editions, and features" and "constituent software, source code, hardware, methods, and processes that Duo contends are Prior Art" as vague and ambiguous. Defendants further object to this Topic to the extent that it prematurely calls for legal contentions and/or expert opinions that are more appropriately the subject of expert disclosure and discovery in this litigation. Defendants object to this Topic to the extent it seeks information that is more properly the subject of other discovery mechanisms, including but not limited to contention interrogatories. Defendants object to this Topic as an improper contention topic.

Subject to the foregoing objections, Defendants will designate one or more witnesses to testify regarding Defendants' understanding of the operation and functionality of "Duo Push" and "OATH TOPT Standard" as those two systems are identified in Defendants' Supplemental Invalidity Contentions, to the extent such information is known and reasonably available to Defendants.

**TOPIC NO. 46**:

Defendants' design, development, use, disclosure, descriptions, demonstrations, and sale of Duo Prior Art prior to October 31, 2011.

**RESPONSE TO TOPIC NO. 46**:

Defendants incorporate their General Objections as if fully set forth herein. Defendants further object to this Topic to the extent that it calls for the disclosure of information protected from disclosure by the attorney-client privilege, attorney work product doctrine, common interest doctrine, joint defense privilege, or other applicable privilege or protection. Defendants object to the term "Prior Art" as vague and ambiguous. Defendants object to this Topic to the extent it seeks information regarding products and services available prior to October 31, 2011 made, used, sold, or offered for sale by third parties as such information is not within Defendants' possession, custody, or control. Defendants further object to this Topic to the extent that it prematurely calls for legal contentions and/or expert opinions that are more appropriately the subject of expert disclosure and discovery in this litigation.

Subject to the foregoing objections, Defendants will designate one or more witnesses to testify regarding Defendants' Defendants' design, development, use, disclosure, descriptions, demonstrations, and sale of Duo Prior Art prior to October 31, 2011, to the extent such information is known and reasonably available to Defendants.

**TOPIC NO. 47**:

Defendants' research, development, and design of Duo Prior Art prior to October 31, 2011, including the research, development, and design underlying the subject matter of U.S. provisional Patent Application No. 61/309,885 and U.S. Patent App. No. 13/039,209 and the dates of such research, development, and design.

**RESPONSE TO TOPIC NO. 47**:

Defendants incorporate their General Objections as if fully set forth herein. Defendants further object to this Topic to the extent that it calls for the disclosure of information protected

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Jennifer Ying*

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
Charlie Sim
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com
tmurray@morrisnichols.com

Jaysen S. Chung
Julian Manasse-Boetani
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
(415) 393-8200

*Attorneys for Defendants Duo Security LLC f/k/a Duo Security, Inc. and Cisco Systems, Inc.*

Nathaniel R. Scharn
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA  92612-4412
(949) 451-3800

July 12, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, copies of the foregoing were caused to be served

upon the following in the manner indicated:

David E. Moore, Esquire                                    *VIA ELECTRONIC MAIL*
Bindu A. Palapura, Esquire
Andrew L. Brown, Esquire
POTTER, ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Scott T. Weingaertner, Esquire                             *VIA ELECTRONIC MAIL*
Stefan Mentzer, Esquire
John Padro, Esquire
Matthew Wisnieff, Esquire
Lauren Kuehn Pelletier, Esquire
Timothy Francis Keegan, Esquire
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018
*Attorneys for Plaintiff*

Farzad Feyzi, Esquire                                      *VIA ELECTRONIC MAIL*
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
*Attorneys for Plaintiff*


*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)

# EXHIBIT 3

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 4

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3

    INQUISIENT INC.,                )

4                           )

    --------------------Plaintiff,   )

5                       ) Case No.

    vs.                   ) 22-CV-900-CJB

6                       )

    SERVICENOW INC.,             )

7                       )

    --------------------Defendant.   )

8

           TRANSCRIPT OF MOTIONS HEARING

9

10    MOTIONS HEARING had before the Honorable Christopher

11  J. Burke, U.S.M.J., in Courtroom 2A on the 1st of

12  July, 2024.

13

14                 APPEARANCES

15    FISH & RICHARDSON
          BY:  SUSAN MORRISON, ESQ.

16             CHET CAMPBELL, ESQ.
             MEGHAN THADANI, ESQ.

17
                Counsel for Plaintiff

18

19    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
          BY:  JENNIFER YING, ESQ.

20
                 -and-

21
    QUINN EMANUEL URQUHART & SULLIVAN, LLP

22          BY:  SEAN PAK, ESQ.
             JODIE CHENG, ESQ.

23             GAVIN FRISCH, ESQ.

24                Counsel for Defendant

25

1          THE COURT:  Let's go on the record, and as we

2     do, let me say a few things for the record.  The first is

3     that we're here this morning in the matter of *InQuisient*

4     *Inc. versus ServiceNow Inc.*, Civil Action 22-900-CJB here in

5     our court.  We're here today for argument on a couple of

6     different sets of motions.  Before we go further, why don't

7     we have counsel for each side identify themselves for the

8     record.  We'll start first with counsel for the plaintiff's

9     side.  We'll begin there with Delaware counsel.

10          Good morning.

11          MS. MORRISON:  Good morning, Your Honor.  Susan

12     Morrison from Fish & Richardson on behalf of Plaintiff

13     InQuisient.  With me today are Megan Thadani and Chet

14     Campbell, both of Fish & Richardson, and they will be making

15     the argument, Your Honor, this morning.  And I do want to

16     add that Ms. Thadani counts as a newer attorney under the

17     court's definition.  We didn't file a paper to say that, but

18     I did want to mention that.

19          THE COURT:  What motion or motions is

20     Ms. Thadani arguing?

21          MS. THADANI:  The motions regarding

22     Mr. Seering's deposition and Mr. Davis's deposition.

23          THE COURT:  All right.  Thank you very much.

24          All right.  Let's do the same for counsel for

25     Defendant's side, and, again, we'll begin with Delaware

```
 1            Why don't I ask you all to follow up with a
 2    letter to me no later than a week from today just confirming
 3    when the first time it was disclosed to the plaintiff that
 4    Dr. Keller had a previous relationship with you in this case
 5    for which he was paid separate and apart from this work on
 6    the third-party subpoena.
 7            MR. PAK:  Yes, Your Honor, and I will represent
 8    to Your Honor that we will never put up a witness without
 9    disclosing that.  And if that question had not come up, we
10    would have elicited that testimony.
11            THE COURT:  Thank you, Mr. Pak.
12            We've been here a while, and we need to wrap up.
13    Because I know a newer attorney is arguing the last motion,
14    I do want to have at least brief argument on it.  Let me
15    call up Plaintiff's counsel with regard to the last issue in
16    the discovery dispute, and I think that's Ms. Thadani.
17            MS. THADANI:  Yes, that's correct.  Thank you,
18    Your Honor.
19            THE COURT:  Ms. Thadani, we have two issues, and
20    maybe we can address them briefly.  The first issue is
21    Mr. Seering.
22            MS. THADANI:  We respectfully ask that the Court
23    compel the deposition of Mr. Seering for a few reasons.
24            First, ServiceNow disclosed Mr. Seering as a
25    relevant witness on several topics.  There were five
```

1    interrogatory responses for which ServiceNow identified

2    Mr. Seering as the most knowledgeable witness, and they also

3    identified him in their initial disclosures.  And in

4    response to that, we served a 30(b)(1) notice seeking his

5    deposition.  Following that 30(b)(1) notice, ServiceNow

6    removed Mr. Seering as a relevant witness from their -- as a

7    relevant witness from their interrogatory responses but

8    failed to provide any explanation for why he was no longer

9    relevant.

10            THE COURT:  They removed him, didn't they,

11   because you asked them to part?  That may have been in the

12   back and forth of trying to figure out was he really

13   cumulative or not, and there seemed to be a time where you

14   heard from them that they thought he wasn't needed, and you

15   didn't want to waste your time, so in the back and forth

16   about that, it seemed like from the attachments you said

17   something like, if you would remove him from your

18   disclosures and turns out he's really not needed, maybe we

19   don't need him.  Isn't that you asking them to remove him?

20            MS. THADANI:  We did say that might be one thing

21   that would help us take into consideration whether or not to

22   depose Mr. Seering, but we never actually agreed to withdraw

23   this 30(b)(1) notice.  We stated that we can consider it

24   depending on whether they remove him and whether they -- and

25   also how the deposition of Mr. Davis goes.  I think we

1    stated that we would revisit the necessity of Mr. Seering's

2    deposition following Mr. Davis's deposition.  We did leave

3    some time to put Mr. Seering's deposition on the back

4    burner, but the day after Mr. Davis's deposition, we

5    followed up saying we would like to revisit Mr. Seering's

6    deposition, which we never actually agreed to withdraw.

7             THE COURT:  And Mr. Davis, he was deposed on

8    March 28th.

9             MS. THADANI:  Yes.

10            THE COURT:  And I understand your point saying

11   we never said categorically we're not going to take

12   Seering's deposition.  We contemplated but, it was all

13   always, in your view, a possibility.

14            MS. THADANI:  Yes, Your Honor.

15            THE COURT:  They say, ultimately, it's clear

16   that whatever information Seering has is going to be totally

17   cumulative of what Davis knows, in part because of Davis's

18   lengthy history at the company as compared to Seering's and

19   partly because of his more senior title.

20            What's your response?  How would I know based on

21   what I have in the record that, no, Seering probably does

22   have unique information?  What makes you think that?

23            MS. THADANI:  Well, one thing is that

24   Mr. Seering has been with ServiceNow for 13 years, around

25   the same length of time as Mr. Davis which can be seen in

1    Exhibit A to their response letter, his LinkedIn profile.

2              They, in their letter, specifically point that

3    he's been a principal software engineer for one year, but

4    before that he was a systems developer for 12-plus years at

5    ServiceNow, so that he has a limited tenure at ServiceNow is

6    not entirely accurate.

7              Further, in their response letter, they seem to

8    concede to some degree that Mr. Seering's day-to-day work

9    may involve the Now Platform, the accused product, and that

10   Mr. Davis oversaw that work.  But a lot of the deficiencies

11   in Mr. Davis's testimony, which we can get to later, are the

12   technical information underlying the functionalities of the

13   Now Platform and that Mr. Davis was overseeing the work done

14   for the Now Platform maybe informs why he was unable to

15   testify regarding the technical details, whereas someone

16   like Mr. Seering, who seems to have been working on the

17   coding of the now platform in his day-to-day work, may be

18   able to fill those gaps.

19             THE COURT:  Does your argument about the

20   necessity of Mr. Seering's deposition depend on prevailing

21   with regard to your argument on Mr. Davis's re-deposition?

22             MS. THADANI:  No, Your Honor, we think

23   Mr. Seering has relevant knowledge regardless.  He was --

24             THE COURT:  I'm sorry to interrupt.  What makes

25   you think that?  When I asked you that previously, you said,

1    well, Davis didn't have all the information, and I know you

2    said Seering has been there 13 years.  Isn't it really they

3    said so?  They listed him repeatedly in their disclosures

4    and didn't list anybody else sometimes with regard to

5    ServiceNow.  Is that the primary reason why I understand he

6    might have relevant information?

7               MS. THADANI:  That's the primary reason why we

8    understood he might have relevant knowledge and that tied to

9    the fact that they removed him and in their response letter

10   they say they conducted some investigation following claim

11   construction and since our first initial infringement

12   contentions that led them to believe that Mr. Seering is no

13   longer relevant to the accused functionalities, but they

14   don't provide any details for that, about that

15   investigation, or what actually led them to believe that he

16   was no longer relevant, so they, essentially, expect us to

17   take them at their word that Mr. Seering is no longer

18   relevant without providing any real information or details

19   that can assure InQuisient that he really doesn't have the

20   relevant knowledge that we're after.

21              THE COURT:  I think one other thing they assert

22   is that although they initially listed Seering as

23   knowledgeable about certain matters, that was when they had

24   one understanding of what your positions were in the case

25   and you changed your positions, and when you did that, that

1    made them understand that Seering wasn't relevant anymore.

2    What's your response to that?

3              MS. THADANI:  So we disagree that our

4    contentions have changed in a manner such that Mr. Seering

5    would no longer be a relevant witness or the most relevant

6    witness, which I think the parties dive into a little bit in

7    the motion to strike briefing that will be discussed at a

8    future hearing, I believe, but it's our contention that our

9    infringement contentions have not changed such that

10   Mr. Seering would suddenly no longer be relevant.

11             THE COURT:  With regard to Mr. Davis, I

12   understand you're saying his testimony was insufficient or

13   wasn't properly prepared, and you list out examples of that

14   on page 3 of the letter.  In reading, I read every page of

15   that.  I see some --

16             I see arguments like this not infrequently, and

17   a lot of times when I see that, the witness is asked

18   question after question that says I don't know, I don't have

19   that information, I didn't ask, I can't tell you.  In many

20   of the pages you listed, Mr. Davis testifies at length about

21   matters.  Even documents where you say when initially shown

22   the document he didn't immediately have knowledge of it, a

23   lot of times it seems like he went on, and based on his

24   knowledge and information, tried to describe what's going on

25   in the documents or what they disclose.

1        I'm trying to figure out, the idea this guy was

2    wholly unprepared, even on pages you cited he's actually

3    providing a lot of testimony on these matters.

4        MS. THADANI:  Your Honor, I think much of the

5    testimony that he did provide was sort of generally

6    discussing what tables in the Now Platform generally do,

7    what these features generally do.  He was unable, thought,

8    to speak about the ███ tables for several of these features

9    we were asking about, which, again, the ███ is, essentially,

10   the source code underlying these --

11       THE COURT:  What's a great example of a piece of

12   his testimony that you think is, this is a perfect example

13   of how you were asking him about a subject matter and he was

14   totally unprepared.  And he should have known that.  He

15   should have been able to testify about a this thing, and

16   look at what he said.  It's a total waste of time.  What

17   would be the best example I should look for?

18       MS. THADANI:  One example would be with respect

19   to the ███████████ document we asked him about on page

20   60 starting at line 9.

21       THE COURT:  Did you say page 6-0?

22       MS. THADANI:  Yes.

23       Now, this workload concepts document, as we

24   mention in our brief, is a document that ServiceNow itself

25   identified in response to our interrogatory requests asking

1   about information about ServiceNow's understanding of our

2   infringement contentions.

3           THE COURT:  It's not a document that your topics

4   in terms of what you wanted to discuss with the witness that

5   you had specifically identified.

6           MS. THADANI:  We did not specifically cite that

7   document in the topic.  However, during the parties'

8   meet-and-confers regarding these topics, ServiceNow sought

9   to limit the topics specifically to the features and

10  functionalities and things discussed in our initial

11  infringement contentions, so it was our understanding that

12  their witness would be prepared to discuss the initial

13  infringement contentions.  And this document, which was

14  cited in response to an interrogatory, which is

15  interrogatory dated -- sorry.  One minute.  The

16  interrogatory specifically said, "Describe in complete

17  detail any databases used by the now platform features

18  identified by InQuisient's infringement contentions."

19          THE COURT:  This document show -- begins with

20  the prefix 11.  What kind of document is it?  You say it's

21  an ███  document?

22          MS. THADANI:  This document was -- I believe

23  documents from ServiceNow's website.

24          THE COURT:  One question is like, this is one of

25  how many documents like it?  Part of this is all about, a

1    witness has to be appropriately prepared, but if you're

2    dealing with things like source code, if you're dealing with

3    things like an extensive array of computer-related

4    technology, no human being could possibly be prepared to

5    discuss every web page or every document of thousands and

6    thousands.

7           It would be different if the party taking the

8    depo said, I want you to be prepared to discuss at a minimum

9    these blank documents.  Sometimes parties do that.

10   Sometimes they don't, for whatever reason.  It doesn't sound

11   like it was the latter.  I'm trying to get a sense of the

12   former.

13          They say, that is what this is.  He was --

14   potentially could be asked about hundreds of thousands of

15   pieces of code or pieces of their website or whatever.  He

16   can't possibly be prepared on the fly about every single one

17   of them.  And they say when he was shown stuff he didn't

18   understand or see, he was able to recover and provide

19   helpful information.  So how unique is this document?

20          MS. THADANI:  We weren't expecting him to be

21   prepared on every document that ServiceNow produced, but I

22   think it is reasonable to expect that he would be prepared

23   to speak on the documents that ServiceNow specifically cited

24   in their discovery responses as being relevant to their

25   understanding of our contentions and relevant to their

1    understanding of the accused functionalities of their

2    product.

3              THE COURT:  So this prefix 11 document, they

4    cited it in their responses to your infringement

5    contentions.

6              MS. THADANI:  And in a response to an

7    interrogatory request which asked for their understanding of

8    our infringement contentions.

9              THE COURT:  You gave them an interrogatory and

10   said tell us what your understanding is of our contentions?

11             MS. THADANI:  It said, "Describe in complete

12   detail any day caress used by the now platform features

13   identified by your infringement contentions."  Sorry by our

14   infringement contentions.

15             THE COURT:  Okay.  And I guess part of what I'm

16   asking is, like, these discovery requests that you

17   propounded, presumably there's more than one.  Presumably

18   this isn't the only document they may have mentioned.  For

19   all I know, there's 10 or 50 or 100 different documents or

20   more that were referenced in their responses to your -- to

21   your discovery proposal.  If there was only one document in

22   that response, that's one thing.  If they cited a thousand,

23   that's another.  Trying to get a sense of how unique was

24   this doc in terms of all docs that were cited in the

25   response.  How many were there?  Do you know?

1          MS. THADANI:  There was a list of documents.

2    This wasn't the only document identified in response to

3    interrogatory 9, but we still think it's reasonable that if

4    that's a document that they're identifying as an important

5    document that we should be able to ask their corporate

6    representative about their understanding of that document.

7          THE COURT:  Okay.  All right.  Anything further

8    with regard to these issues?

9          MS. THADANI:  I think the main point is the

10   questions we posed Mr. Davis did not go outside the scope of

11   our initial infringement contentions or the topics that we

12   served, so it was reasonable to expect him to be able to

13   provide more testimony than he was able to during the

14   deposition.

15         THE COURT:  I'll give you a chance for brief

16   rebuttal.  We'll hear from the other side.

17              In light of the hour, we'll try to be focused

18   here.  We'll start with Mr. Seering.

19              At base, why is it asserted he's relevant?  I

20   think they say you said he was many times.  And is it really

21   true that he's only got cumulative information?  Who knows?

22   You say so, but no real record to confirm that.  Lots of

23   people who work underneath somebody else have information

24   that may be different or more specific.  Why would I discern

25   anything else from the record?

1          MR. PAK:  Your Honor, it's pretty clear -- this

2     is some of the relevant factors we identify in the letter

3     brief, Your Honor -- he's one of thousands of employees who

4     has the engineering title.  As counsel noted, he was a

5     system engineer for the bulk of his career.  He only starts

6     work on the platform the last year and a half or so.

7     Platform is a technology that's accused.

8          Mr. Davis -- also, there's no unique knowledge

9     or document or particular aspect of any of these tables that

10    they have identified that Mr. Seering authored them, has any

11    unique knowledge compared to the thousands of engineers that

12    work on all aspects of ServiceNow technology.

13          Mr. Davis, in comparison, has been there for

14    roughly the same time, hundred percent devoted to platform

15    engineering.  He actually wrote much of the code that was

16    originally part of the platform.  He's been promoted since

17    then.  We thought we identified the person who would be the

18    best, which is vice president of platform engineering.  He

19    can read code.  As Your Honor noted, I defended the

20    deposition, many of the questions were showing him files and

21    documents out of thousands of documents that had been

22    produced by ServiceNow and also source code files that went

23    beyond the infringement contentions.

24          And when he looked at them, he could decipher

25    the code and provide responsive answers to each of those

1    questions.  Even the ███████████████ document, the prefix

2    document that was identified by counsel on page 60 of his

3    deposition, you could see that he goes on to say that he was

4    asked specific questions about aspects of the ███████████

5    ███████  and he explained clearly that that was an older

6    product and that that had been replaced with this new

7    product called ████████████ .

8            And also one thing that, Your Honor, if you look

9    at the revised scope of topics, this is on slide four, we

10   worked out with opposing counsel before Mr. Davis's

11   deposition testimony a revised set of the deposition topics.

12   And it was very clear based on these revisions that he would

13   only be focused on functionality of the accused features

14   with respect to the preliminary infringement contentions.

15   He would exclude information about specific deployments and

16   limitations of configurations and that other topics that,

17   with respect to the documents, would only be with respect to

18   aspects related to the revised set of topics for Mr. Davis.

19           I'll note I also defended the deposition of

20   Mr. Pete Longo, who is a corporate witness on technical

21   documents that are customer-based like this one that's

22   available on the website.  And they asked him questions

23   about these kinds of technical marketing documents, so they

24   have 30(b)(6) deposition testimony on customer-facing

25   technical marketing documents.

1                What Mr. Davis was there to talk about was the

2       operation of the underlying source code as to the specific

3       tables and modules that have been identified in the

4       preliminary infringement contentions, and today InQuisient

5       hasn't identified a single deficiency with respect to that

6       testimony.

7                THE COURT:  I understand your argument about

8       Mr. Davis.  Back to Mr. Seering.

9                MR. PAK:  Yes.

10               THE COURT:  You said something like Mr. Davis is

11      the most knowledgeable person, but they're seeking

12      Mr. Seering's testimony as a 30(b)(1) witness.

13               MR. PAK:  Yes.

14               THE COURT:  They're not required to only take

15      the deposition of the person you think is the most

16      knowledgeable.  If there's a number two most knowledgeable

17      person, they can take that deposition too as long as they've

18      got time.

19               Why is there any reasons to think Mr. Seering

20      might be more than a thousand-plus folks who work at the

21      company?  You repeatedly listed him, and often him alone, as

22      the person most knowledgeable or a person most knowledgeable

23      about various subject matters that were at issue in the case

24      at least as of 2023, so that's the basis.  You singled him

25      out repeatedly.  He's not one of a thousand people.

1              Why is it that that showing in and of itself,

2    your own repeated reference to him, establishes relevance

3    and provides decent evidence that he may have noncumulative?

4              MR. PAK:   Two reasons, Your Honor.   Because both

5    parties had identified a number of witnesses on both sides,

6    so this agreement to withdraw that we're talking about

7    happened on both sides before the case started to get

8    focused and we started to really understand what was at

9    issue.   And the agreement across the board was there are

10   people that people are identifying, the parties are

11   identifying, in these initial disclosures where if we don't

12   intend to call them at trial and based on our investigation

13   they don't have any relevant, unique knowledge compared to

14   the other witnesses who are going to be prepared in

15   providing 30(b)(6) deposition testimony, that those people

16   can be withdrawn.   And they had the right to do that.   He

17   was one of the employees, and both parties have withdrawn

18   people's names from the deposition list based on that

19   representation.

20             And I do think the issues are tied, Your Honor,

21   because, again, if there's anything Mr. Davis was identified

22   as the 30(b)(6) witness on all the topics that are technical

23   in nature with the accused functionality, deposed him for an

24   entire day, walked through code, walked through technical

25   documentation, walked through the functionality of

1    everything.

2            So at this point, having taken that deposition,

3    we don't think they've identified any deficiency in any

4    question-and-answer exchange with Mr. Davis.  So when you

5    look at Mr. Seering, and he's only worked there a year and a

6    half on the platform, it's true, Your Honor, that,

7    initially, we had identified him as somebody having relevant

8    knowledge of certain things.  We investigated that.  We

9    determined that Mr. Davis is the right person to answer

10   these questions.

11           THE COURT:  You're not saying even in your brief

12   that Mr. Seering doesn't have relevant information.  You

13   seem to pretty carefully say he's not either the most

14   knowledgeable or whatever relevant information he had would

15   be totally cumulative, you never say he doesn't have lots

16   and lots of relevant information.  It's just maybe

17   cumulative of what Mr. Davis says.  Isn't that fair to

18   guideline from the record?

19           MR. PAK:  I'm not representing to you that he

20   doesn't have potentially some relevant information relating

21   to the issues in this case.  What I'm saying to Your Honor

22   is we have an arrangement by which parties withdraw

23   witnesses.  The only articulating in the beginning was you

24   can identify in the interrogatory response as somebody

25   having relevant knowledge.  We determined that Mr. Davis has

1     the relevant knowledge.  We offered him as a corporate

2     witness providing testimony.  He's been -- we've conducted

3     an extensive deposition of Mr. Davis and went through all

4     the relevant topics and documents.  There's been no

5     deficiency.

6            At this point, we're -- we don't see any unique

7     relevance.  They haven't identified any.  They have all of

8     our source code.  They have all the documents in this case.

9     They have not articulated any particular reason why

10    Mr. Seering should be deposed in this case without having

11    any other basis than he had been initially identified in

12    some interrogatory responses.

13           THE COURT:  Last question with regard to that

14    initial identification.  Wouldn't it be fair of me to infer,

15    because you initially identified Mr. Seering repeatedly as

16    knowledgeable about multiple different topics, me to think

17    your initial disclosures or an early version of them,

18    there's only a few people listed, that, in fact, he does

19    likely have lots of relevant information with regard to the

20    subject matter of the case?  That would be a fair inference.

21    That said, your assertion is if that's so, it would be

22    cumulative.  Isn't that really what's at play?

23           MR. PAK:  It's cumulative and also that

24    assertion was before we understood the issues in this case,

25    so this is going back in the timeline, Your Honor.  So the

1    initial disclosures were early in the case.  We had the

2    preliminary infringement contentions.  You had, as Your

3    Honor saw, exchanges on both sides about whether we were

4    getting adequate disclosure of their contentions, which is

5    still an issue.  We'll talk about the other issues later.

6    That has nothing do with this.  Those are last-minute

7    changes.

8            But early on in the case we did not understand

9    exactly what they were accusing.  Based on that preliminary

10   investigation, we identified Mr. Seering based on the year

11   and a half of work.  Once we understood what the preliminary

12   infringement contentions were, based on that we determined

13   that Mr. Davis had relevant information with respect to that

14   functionality.  He was deposed and provided sufficient

15   answers and detailed answers on all these questions.

16           THE COURT:  And last question.  I don't think

17   you're asserting this, but are you asserting that you had an

18   agreement with them that they wouldn't seek Mr. Seering's

19   testimony and now they're reneging on the agreement?  I

20   don't think you're saying that.  Tell me if I'm wrong.

21           MR. PAK:  I think there's a general agreement on

22   both sides that if we had a list of people that both sides

23   said we're not going to bring them to trial and based on

24   that, they said we're not bringing Mr. Seering to trial but

25   he's still listed on the interrogatory responses, and they

1    indicated to us they would withdraw him if we change

2    interrogatory response.  We did that.  That's the basis for

3    the agreement, Your Honor, was we did follow up at their

4    request.  The only basis that's been identified as to why he

5    would have relevance to the current set of contentions is

6    that he had been preliminarily identified in our initial

7    disclosures.

8              We modified that at their request, and now they

9    haven't identified.  They said they would revisit this issue

10   after Mr. Davis's deposition.  We're here today.  We can go

11   through examples.  I'm happy to walk through any example,

12   Your Honor, where they complain about something.  I'm

13   confident Mr. Davis provided them the level of specificity

14   as a 30(b)(6) witness that's corporate binding testimony and

15   just don't see the need at this point, having had the prior

16   arrangement where we gave up witnesses, and we could have

17   made the same type of relevance objection.  We abided by

18   that framework where if people are withdrawing witnesses

19   based on their reasonable investigation and they were

20   promising not to bring them to trial, we took witnesses off

21   our list.  They did the same, and we don't understand why

22   Mr. Seering should be different.

23             THE COURT:  Okay, thank you, Mr. Pak.

24             All right.  Ms. Thadani, is there anything

25   further you wish to add?

1    MS. THADANI:  Just a few points.

2    So the first point I want to rebut with is that

3  Mr. Seering was a properly noticed 30(b)(1) witness and we

4  noticed him well within the fact discovery time period.  And

5  rather than moving to quash or properly meeting and

6  conferring with us, ServiceNow just repeatedly ignored our

7  requests to schedule Mr. Seering's deposition or other

8  meet-and-confer regarding his deposition.

9    And with regard to Defendant's assertion that we

10  had some agreement, we think that the e-mail traffic is

11  pretty clear in Exhibit 6, 7, and 10, I believe, of our

12  opening motion that we never agreed to withdraw our notice

13  for his deposition.  We say that we would consider it and

14  that we would revisit it, and I think at one point we said

15  that InQuisient cannot agree at this time to withdraw its

16  notice for Cory Seering, and that's in Exhibit 6 at page 25,

17  I believe.  It's an improper assertion that we ever agreed

18  to withdraw his deposition notice.

19    And as I stated we repeatedly asked, again, as

20  you can see in Exhibit 6 and 7 specifically, for dates for

21  his deposition, and there were many e-mails that went

22  completely unanswered.

23    Additionally, ServiceNow mentioned this

24  investigation that they conducted after our initial

25  infringement contentions and through claim construction, but

1    never at any point did they on their own remove Mr. Seering

2    during that investigation from the their initial disclosures

3    or their 'rog responses.  They waited until the after we

4    noticed his deposition to do that, and that was only in

5    response to our request, rather than fulfilling their duty

6    to supplement and update their interrogatory discovery

7    responses to -- as they discover more relevant information.

8            And so again, they're asking us to take them at

9    their word that they conducted some investigation.  They

10   haven't provided detailed about that that would -- that

11   actually show that Mr. Seering doesn't have relevant

12   knowledge.

13           THE COURT:  All right.  Anything further,

14   Ms. Thadani?

15           MS. THADANI:  One last point is just that we --

16   Plaintiff doesn't have to show good cause to take a

17   deposition of a 30(b)(1) witness.  If -- ServiceNow should

18   have moved to quash the deposition notice if that was what

19   they wanted to do.

20           THE COURT:  You timely subpoenaed him, so the

21   only question is whether he has relevant noncumulative

22   information.

23           MS. THADANI:  Yes, and it's very clear he has

24   relevant knowledge based on his repeated disclosures.

25           THE COURT:  Thank you.  Okay.

1        MR. PAK:  Your Honor, if I could have one.

2        THE COURT:  One second here because I know we

3    are into our third hour.  Is there something briefly you

4    wanted to point to my attention?

5        MR. PAK:  Yes, Your Honor.  That same Exhibit 6

6    I would note, Your Honor, March 15, 2024, e-mail from

7    Ms. Cheng.  This is on page 12 of the document.  This

8    memorializes the meet-and-confer where on the parties' last

9    meet-and-confer on February 6th InQuisient's counsel

10   indicated that it is not inclined to waste time and

11   resources on deposing witnesses who ServiceNow will not call

12   to trial and do not have unique information specific to the

13   issues in this case.  Furthermore, according to Cory

14   Seering, you wrote earlier that InQuisient could not

15   withdraw its deposition notice to Cory Seering when

16   ServiceNow's prior Rule 26 disclosure and certain

17   interrogatory responses identify Mr. Seering.  However,

18   ServiceNow has since amended, corrected the Rule 26(a)

19   disclosures and discovery responses to rule out

20   identification of Mr. Seering.

21        At the end of that same page, however,

22   consistent with our argument, ServiceNow will be amenable to

23   join deposition notices of individuals whom InQuisient

24   confirms it will not call at trial and has no knowledge

25   information relevant to the issues in this case.

1        This was agreed to, Your Honor, and both parties

2   arranged this type of exchange to avoid having motion

3   practice around quashing subpoenas and having irrelevant

4   deposition testimony.  We do believe there was an agreement

5   and that was later retracted by opposing counsel, and we

6   think the record is very clear.

7        THE COURT:  Thank you.

8        Counsel, thank you for argument.

9        On this one -- the first two issues I'll take

10  under advisement and I'll hope to get you an order today or

11  tomorrow resolving those.  On this last issue, I have the

12  ability to resolve it now and I'd like to try to do that, so

13  the transcript of today's hearing will serve as the

14  substance of the Court's order.

15       First, let me address the issue with regard to

16  Mr. Davis.  That implicates the concept of Rule 30(b)(6)

17  testimony, and in the case of *Boyd versus Verizon Services*

18  *Corp.,* which is found at 2013 Westlaw 5675516, I previously

19  set out in some detail the legal standards that relate to

20  the responsibility of a party like Defendant here to prepare

21  30(b)(6) witnesses.

22       And to summarize, of course, on the one hand, a

23  Rule 30(b)(6) witness, as the case notes, is someone who is

24  going to be prepared not just to discuss the information

25  they have personal knowledge of or they personally witnessed

1    but also has to be prepared, as best as can be reasonably

2    done, to summarize the information that the defendant entity

3    has with regard to the relevant topics, even if that person

4    wasn't personally knowledgeable about the subject in the

5    first instance.

6              On the other hand, the case law states that the

7    Rule 30(b)(6) -- the side who's putting forward the Rule

8    30(b)(6) testimony isn't required to put forward a witness

9    who has perfect knowledge or information of everything that

10   could possibly be relevant or asked in a case.  The

11   obligation to prepare is one that relates to reasonableness,

12   what could be reasonably expected of the party and the

13   witness in terms of preparation in light of the subject

14   matter at issue and the circumstances in the cases.

15             So taking into account those legal standards, I

16   agree with Defendants that the plaintiff hasn't met the

17   burden to demonstrate that Mr. Davis was insufficiently

18   prepared or that there should be a further 30(b)(6)

19   deposition with regard to the subject matter of his

20   testimony.

21             Now, in saying that, I'm not saying that

22   Mr. Davis was able to perfectly answer every question or

23   that as to every question there weren't at least some where

24   Mr. Davis's response was I'm not familiar with that document

25   or where the plaintiff didn't ask at least some questions

1    that Mr. Davis couldn't provide all the answers Plaintiff

2    was seeking.  I'm not saying that.  There were questions

3    like that.

4            But I've seen a lot of these kinds of motions,

5    and I carefully reviewed every one of the pages of Mr.

6    Davis's deposition that Plaintiff cited on page 3 of their

7    opening brief, and unlike other cases in which I have

8    ordered an additional deposition, I don't think the

9    substance or the content of Mr. Davis's responses or what

10   they convey about the effort related to his preparation

11   indicates any deficiency.

12           In fact, to a great degree, on the pages, even

13   in some circumstances where Mr. Davis didn't have personal

14   familiarity with the document, he at least attempted to

15   provide other additional information based on his knowledge

16   and experience about the general circumstances relating to

17   the document or what it disclosed.  And otherwise, the

18   remaining pages, even ones cited by Plaintiff, where

19   Mr. Davis was able to provide very substantive relevant

20   testimony, often for pages at a time.

21           Ultimately, I think I agree with the defendant

22   that to the extent on the pages Plaintiff points out there

23   are some circumstances where Mr. Davis couldn't provide

24   perfect testimony, a lot of that involved either Mr. Davis

25   being unwilling to agree to Plaintiff's counsel's attempt to

1    get him to define a term of art or a term used in the

2    patents in the way that Plaintiff's counsel wanted him to or

3    a circumstance where Mr. Davis was necessarily testifying

4    about a fairly large and complicated platform with lots of

5    features, and it's cases like the *IBM* and *Hallway* cases that

6    Defendant cited make clear in that circumstance the witness

7    can't be expected to have perfect recall of every possible

8    document, even all of the many documents the defendant may

9    have cited in a particular discovery response.

10                Lastly, I think at times it was simply a

11   circumstance where Mr. Davis wasn't comfortable answering

12   question about what Defendant's customers do or don't do or

13   know or don't know.  He was trying to rely in his testimony,

14   I think understandably, of what the defendant's knowledge

15   was and suggesting they might not have -- the defendant

16   might not have knowledge about what their customers knew.

17                For all those reasons, I don't see a basis to

18   grant the plaintiff's motion with regard to Mr. Davis and an

19   additional 30(b)(6) deposition, so I'll deny the plaintiff's

20   motion in that regard.

21                With regard to Mr. Seering, however, I think

22   it's a different circumstance, and I'm going to grant the

23   plaintiff's motion to allow the plaintiff to take

24   Mr. Seering's deposition.  I say that for a few reason.

25                This is a deposition that relates to a 30(b)(1)

1    deposition, and I think, first, it's on Plaintiff to

2    demonstrate some basis to believe that Mr. Seering has

3    relevant information related to the claims and defenses at

4    issue in the case, and I think the plaintiff has done that.

5    And frankly, I think they did it simply by pointing to the

6    various discovery responses that Defendant provided early in

7    the case as to multiple different topics with regard to

8    interrogatory responses and as to Defendant's initial

9    disclosures where Mr. Seering was repeatedly listed, often

10   with nobody else listed, as a person or maybe the person

11   most knowledgeable about those subject matters in the case.

12            In fact, as I noted today, in their briefing,

13   the defendant never says that Mr. Seering doesn't have

14   relevant information, and I think it's a fair inference that

15   he does, and maybe quite a lot in light of the fact that he

16   was identified as such, at least for a fairly substantial

17   part of this case.

18            Now, the defendant says they removed Mr. Seering

19   in their updated discovery responses in part because he's

20   not the "most knowledgeable person" with regard to those

21   issues, that Mr. Davis is.  As I noted today, the plaintiff

22   isn't limited to seeking relevant testimony from only the

23   most knowledgeable person about the issues.  They can seek

24   relevant testimony from the second most knowledgeable person

25   or the third.  That's what they say they're trying to do.

1          As to defendant's statement that Mr. Seering

2    doesn't have unique, non-cumulative knowledge as compared to

3    Mr. Davis, it's Defendant's burden under Rule 26 to

4    demonstrate why the discovery sought is unreasonable.  And

5    to that end, the defendant doesn't well explain in the

6    letters or today why any change in the plaintiff's position

7    in the case with regard to infringement or whether anything

8    about some further investigation they did somehow indicated

9    that Mr. Seering only has cumulative information.  I don't

10   think they've met the burden to demonstrate that Mr. Seering

11   has only noncumulative -- or cumulative information.

12          And even to the extent that it could be said

13   that the plaintiff needed to demonstrate that Mr. Seering

14   has noncumulative information, I've already talked about how

15   Mr. Davis, although I think sufficiently prepared, there

16   were certainly many questions in his Rule 30(b)(6) capacity

17   in which he couldn't provide information about the relevant

18   platform.  Do I think it's possible that another witness who

19   the defendant previously identified as having relevant

20   testimony with regard to certain subject matter might

21   himself be able to possibly fill in some of the blanks that

22   Mr. Davis couldn't fill in at his testimony?  Yeah, it's

23   possible, although in a 30(b)(1) context.  The burden is on

24   plaintiff to demonstrate non-cumulativeness.  I think that

25   would do it.

1          For all these reasons, I find that Plaintiff's

2    motion should be granted with regard to Mr. Seering and I'll

3    ask the parties to further meet-and-confer about the timing

4    and circumstances related to his deposition.

5          Okay.  So with that, we've addressed the three

6    motions and spent quite a lot of time here and I want to

7    wrap up.  I know the parties recently told me they have

8    another motion they need to have resolved.  This is a motion

9    to strike filed by the defendant's side regarding the

10   plaintiff's opening expert reports.  The parties just raised

11   this with me.  They asked to have this argued today.  Of

12   course, I was already prepared for three different motions

13   which have taken us three-plus hours to address also two

14   additional motions I was addressing today in other cases, so

15   I couldn't do this today.  In fact, I don't really have time

16   in my schedule this month to set a call in the spaces I have

17   available in my calendar to do that.

18         What I would propose to do, understanding the

19   parties are getting towards the later stages of the case, is

20   take the motion on papers and try to resolve it when I can

21   get some free time this month without looking for the next

22   argument date.  That would be in August.  That's my

23   proposition or how I plan to address this.  I just want to

24   ask if there's any objection.

25         Mr. Pak, on your end, knowing it's your motion?

1           MR. PAK:  Your Honor, we're very mindful of your

2     busy schedule.  I think your proposal makes sense to us.

3           THE COURT:  Thank you.

4           On Plaintiff's side.

5           MS. MORRISON:  Your Honor, may I speak from

6     here?

7           THE COURT:  You may.

8           MS. MORRISON:  Your proposal is fine with us.

9     We were only going to suggest I believe the parties have

10    been discussing that there may be additional motions to

11    strike that are filed.  We do have a case disease positive

12    motion on September 5th, motion hearing on September 5th, so

13    to the extent the Court does have questions, potentially,

14    these motions could be addressed at that hearing as well.

15          THE COURT:  Okay.  Thank you.  I guess, Mr. Pak,

16    do you have anything to say about that?

17          MR. PAK:  Your Honor, I guess I would ask Your

18    Honor how -- if there's any expectation about the Markman

19    moving because it may impact the summary judgment date and

20    whether there should be good cause to try to extend that

21    because I do think these are pretty discrete issues in the

22    motions to strike, and I think we would like resolution on

23    those faster based on Your Honor's review of the papers.

24    Whether there's future motions or not, at least this one,

25    Your Honor, we believe there's clear basis to rule on the

1    papers.

2            So I'm a little hesitant to agree to defer

3    argument of a ruling on our motion that's currently pending

4    before Your Honor, and I guess to the extent Your Honor has

5    any guidance on when we can expect the Markman from you, I

6    would appreciate that as well as we think about the rest of

7    the schedule.

8            THE COURT:  Understood.  Thank you.  Okay.  I

9    appreciate that help.  I think you may be seated, Mr. Pak.

10            So a couple things.  First, I'm not inclined to

11    add argument on motions to strike to summary judgment and

12    Daubert arguments.  In fact, I've been doing the opposite

13    recently, which is to say that -- and this is because, in

14    part, not anything to do with this case or these parties,

15    that process, the summary judgment Daubert process in patent

16    cases, is really abused, so we get so much briefing that

17    what I've been drying to do with those summary judgment and

18    Daubert hearings, I want to still have them.  Some judges

19    don't have them anymore for this reason.

20            So what I've been doing and you should start

21    thinking about is asking each side to identify of the

22    motions that they filed, what is the number one most

23    important one that they want to have argument on, and have

24    each side argue one motion.  That's a manageable way to

25    prepare for that hearing.  It allows each side to say more

1    about what they think is the most important issue.  That's

2    probably what I would expect to do with summary judgment and

3    Daubert motion hearing in this case.  I don't want to lend

4    themselves to stacking more motions to the argument on that

5    date.

6         Secondly, the idea that there may be many

7    motions to strike coming, I ask you to be mindful and

8    meet-and-confer substantively before dropping a ton of

9    motions to strike on the Court.  I don't want to put some

10   limit on what can be asserted.  I usually allow counsel to

11   responsibly identify what they think is really beyond the

12   pale and raise it.  What I'll do in part is if there are

13   other motions filed to see what those are.  I encourage you

14   to be judicious in what you focus on there in terms of those

15   motions.

16        For now, I'll plan to take under advisement on

17   the papers the defendant's motions that's pending and try to

18   address them as soon as I can.  Mr. Pak's question about

19   claim construction, we're working on that now.  Don't hold

20   me to this, but if by the end of the month I haven't removed

21   most or all of the terms, it would be a disappointment.  I'm

22   expecting to do that.  My hope is this month you'll have

23   claim construction decisions from me on disputed terms and

24   we're working on those now.

25        Okay.  So for all those reasons, I think we've

1    resolved all the issues or addressed all the issues we need

2    to take up.

3            Is there anything further from the plaintiff's

4    side procedurally I need to address before we close our very

5    long hearing today?

6            MS. MORRISON:  Nothing more, Your Honor.

7            THE COURT:  Thank you, Ms. Morrison.

8            On behalf of Defendant's side?

9            MR. PAK:  Nothing on the part of the defendant.

10           THE COURT:  I want to thank you, counsel, for

11   the arguments.  It's helpful today.  We wouldn't typically

12   have this long an argument.  Since we are all here, I want

13   to make sure we make good use of the time, and counsels'

14   arguments were helpful in letting me do that.

15           With regard to our out-of-town folks, I wish you

16   safe travels.  With all that said, the Court will stand

17   adjourned.  Thank you.

18                    **C E R T I F I C A T E**

19       I, Deanna L. Warner, a Registered Professional

20   Reporter, do hereby certify that as such Registered

21   Professional Reporter, I was present at and reported in

22   Stenotype shorthand the above and foregoing proceedings.

23

24   _____
     Deanna L. Warner, RPR, CSR

25   Official Court Reporter
     U.S. District Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

COSMOKEY SOLUTIONS GMBH & CO. KG, )
                                              )
               Plaintiff, )
                                              )
               v. )    C.A. No. 18-1477-JLH
                                              )
DUO SECURITY, INC. n/k/a DUO SECURITY )
LLC and CISCO SYSTEMS, INC., )   **HIGHLY CONFIDENTIAL-**
                                              )   **ATTORNEY'S EYES ONLY**
               Defendants. )

**COSMOKEY'S REPLY IN FURTHER SUPPORT OF ITS
MOTION *IN LIMINE* TO PRECLUDE ARGUMENTS AND
<u>EVIDENCE THAT WILL NOT BE PRESENTED TO THE JURY</u>**

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | Transcript of Jon Oberheide, Designated Representative (August 15, 2024) |
| 2 | Transcript of Benjamin Goldberg (December 5, 2024) |
| 3 | Transcript of Dominic Adenuga (May 22, 2024) |

The opposition is based on the false premise that inventor Dominic Adenuga "evaluated" and undertook an "assessment" of a Duo product that Defendant argues preceded the '903 patent. Opp at 1, 2.  He did no such thing. The supposed prior system—what Defendants' lawyers have termed "Duo Push 2010"—was never in Mr. Adenuga's possession, and regardless, whatever Defendants wish to say was his "evaluation" and "assessment" is inadmissible lay testimony.

**Mr. Adenuga did not have, and he did not evaluate, "Duo Push 2010".** Defendants' 30(b)(6) witness testified that "I don't know what Duo Push 2010 is . . . ." Ex. 1, 31:16-32:2. Defendants' software expert testified that the dates in source code files are a mere "artifact of the litigation." Ex. 2, 210:11-211:3. Defendants first made source code supposedly corresponding to "Duo Push 2010" available in this litigation and only to experts under strict confidentiality conditions—Mr. Adenuga has ***never*** seen it. Ex. 3, 111:7-114:8; 116:14-22; 117:6-19; 122:6-18. Evidence of an evaluation and assessment that Mr. Adenuga never undertook is unfairly prejudicial and misleading under Rule 403.

**Lay witness testimony on infringement, damages, and invalidity is not admissible.** Defendants argue the evidence they wish to offer is relevant to infringement, damages, and invalidity. Opp. at 1-3. But Defendants cannot offer such lay witness testimony on these matters. "[I]t would be inappropriate, under Federal Rules of Evidence 701 and 702, for a lay witness, not previously qualified as an expert, to offer an opinion on the technical question of infringement." *Apotex, Inc. v. Cephalon, Inc.*, No. 2:06-cv-2768, 2017 WL 2362400, at *4 (E.D. Pa. May 31, 2017); *see Carpenter Tech. Corp. v. Allegheny Techs., Inc.*, 2012 WL 5507959, at *1 (E.D. Pa. Nov. 14, 2012) (collecting cases holding that lay witnesses may not opine on validity and infringement, which require technical or specialized knowledge). It also is needlessly cumulative under Rule 403, as Defendants will offer expert testimony other evidence on these topics.

2

Dated: April 30, 2025

POTTER ANDERSON CORROON LLP

By: /s/ *David E. Moore*
David E. Moore
Bindu Ann Palapura
1313 North Market Street
Wilmington, Delaware 19899
Phone: + 1 302 984 6000
Fax: + 1 302 658 1192
Email: dmoore@potteranderson.com
Email: bpalapura@potteranderson.com

Scott T. Weingaertner  (*pro hac vice*)
Stefan Mentzer (*pro hac vice*)
John Padro (*pro hac vice*)
Matthew R. Wisnieff (*pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Phone: + 1 212 813 8800
Email: SWeingaertner@goodwinlaw.com
Email: SMentzer@ goodwinlaw.com
Email: JPadro@ goodwinlaw.com
Email: MWisnieff@goodwinlaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1477-JLH |
| | ) | |
| DUO SECURITY, INC. n/k/a DUO SECURITY | ) | |
| LLC and CISCO SYSTEMS, INC., | ) | **HIGHLY CONFIDENTIAL-** |
| | ) | **ATTORNEY'S EYES ONLY** |
| Defendants. | ) | |

**COSMOKEY'S REPLY IN FURTHER SUPPORT OF
ITS MOTION *IN LIMINE* TO PRECLUDE DOCUMENTS
SELECTIVELY PRESERVED AND PRODUCED BY DEFENDANTS**

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 4 | Deposition Transcript of Ben Murray (August 14, 2024) |
| 5 | DUO-COSMOKEY-00084538 ("Slack to the Future") |

There is no question that Defendants violated their discovery obligations. This Court *already found* that Defendants violated Court orders, harming CosmoKey. D.I. 413  ("[T]he Court takes Plaintiff's point about how Defendants' . . . discovery failures have caused Plaintiff difficulty in this case. And Plaintiff has now made a good record of that."). CosmoKey was forced to move to compel multiple times. D.I. 228-1, 3:22-25. The Court denied the motion to compel Slack messages not because the motion lacked merit but because the issue was moot in light of Defendants' representation that, having failed to preserve, they had no more human-readable messages to produce. *Id.* at 75:15-25. Courts have found such misconduct relevant to willfulness and damages. *Stone Brewing Co., LLC v. Millercoors LLC*, No. 18-cv-00331, 2021 WL 63139, at *6 (S.D. Cal. Jan. 7, 2021) (denying motion in limine because evidence of discovery misconduct was relevant to willfulness). Defendants admit their witnesses plan to testify that they had no knowledge of the '903 patent and rely on selectively preserved evidence. This is manifestly unfair and prejudicial under Rule 403.

Defendants argue there is no evidence the lost messages discussed the '903 patent. Opp. at 2. But the Court found the Slack messages "could certainly be a location in which relevant responsive documents could be found." D.I. 228-1, 74:8-12. Defendants' 30(b)(6) witnesses testified that Slack messages are crucial to the accused products. *See* Ex. 4, 63:3-19; *see also* Ex. 5.  Defendants' failure to preserve messages until July 2023, nearly *five years* into this litigation, is inexcusable. Opp. at 3. Defendants also violated the ESI Order, which *does* require the preservation of these materials, particularly where these materials were "maintained" in a cloud environment hosted by Slack. D.I. 58 ¶ 1(c), 10; D.I. 247 ¶ 5. The contention that Slack messages are not "human-readable" is misleading; JSON is commonly used and translated. D.I. 167, 2-3. The targeted relief requested should be granted to cure the prejudice to CosmoKey.

Dated: April 30, 2025                              POTTER ANDERSON CORROON LLP


                                                  By: /s/ *David E. Moore*
                                                  David E. Moore
                                                  Bindu Ann Palapura
                                                  1313 North Market Street
                                                  Wilmington, Delaware 19899
                                                  Phone: + 1 302 984 6000
                                                  Fax: + 1 302 658 1192
                                                  Email: dmoore@potteranderson.com
                                                  Email: bpalapura@potteranderson.com

                                                  Scott T. Weingaertner (*pro hac vice*)
                                                  Stefan Mentzer (*pro hac vice*)
                                                  John Padro (*pro hac vice*)
                                                  Matthew R. Wisnieff (*pro hac vice*)
                                                  Lauren K. Pelletier (*pro hac vice*)
                                                  Timothy F. Keegan (*pro hac vice*)
                                                  GOODWIN PROCTER LLP
                                                  The New York Times Building
                                                  620 Eighth Avenue
                                                  New York, New York 10018
                                                  Phone: + 1 212 813 8800
                                                  Email: SWeingaertner@goodwinlaw.com
                                                  Email: SMentzer@ goodwinlaw.com
                                                  Email: JPadro@ goodwinlaw.com
                                                  Email: MWisnieff@goodwinlaw.com

                                                  Fred Feyzi (*pro hac vice*)
                                                  GOODWIN PROCTER LLP
                                                  601 Marshall St.
                                                  Redwood City, California 94063
                                                  Phone: + (650) 752-3100
                                                  Email: FFeyzi@goodwinlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1477-JLH |
| | ) | |
| DUO SECURITY, INC. n/k/a DUO SECURITY | ) | |
| LLC and CISCO SYSTEMS, INC., | ) | **HIGHLY CONFIDENTIAL-** |
| | ) | **ATTORNEY'S EYES ONLY** |
| Defendants. | ) | |

**COSMOKEY'S REPLY IN FURTHER SUPPORT OF ITS**
**MOTION *IN LIMINE* TO PRECLUDE ARGUMENTS AND**
**EVIDENCE THAT CONTRADICT BINDING 30(b)(6) TESTIMONY**

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 1 | Transcript of Jon Oberheide, Designated Representative (August 15, 2024) |
| 6 | CosmoKey's Amended Notice of Rule 30(b)(6) Deposition of Duo Security LLC, dated July 2, 2024 |
| 7 | Dataquill Ltd.'s Omnibus Motion *in Limine*, *Dataquill Ltd. v. Huawei Techs. Co.*, No. 13-cv-00633 (E.D. Tex. Apr. 6, 2015), Dkt. 122 |
| 8 | Order, *Dataquill Ltd. v. Huawei Techs. Co.*, No. 13-cv-00633 (E.D. Tex. June 11, 2015), Dkt. 146 |

**Defendants could not identify a "Duo Push 2010" system.** Defendants cannot dispute that their 30(b)(6) witness Jon Oberheide was unable to identify "Duo Push 2010" that their lawyers contend existed before the '903 patent. His testimony is binding on Defendants, and they cannot now try to change the record by introducing contrary evidence. "Duo Push 2010" is a concept ("shorthand") Defendants' lawyers created for this litigation (Opp. at 1), but regardless of what they call it, ***Defendants could not substantiate what this system was***. Mr. Oberheide did not know what "Duo Push 2010" was. Ex. 1, 31:12-32:11.  He was entirely unfamiliar with any source code, functionality, or use that Defendants contend reflect this supposed system. *Id.* 76:16-25 (did not know when component to perform Duo Push authentication was developed); 80:1-3 (could not recall version or build used at demo); 100:2-7 (did not recall if there were any changes in source code between May and October 2010); 105:3-14 (did not know what version of source code Duo used at demo); 113:13-18 (did not know if video demonstrated a working prototype or if any source code was used to make it); 216:2-12 (could not identify source code file on which Defendants rely). Defendants designated Mr. Oberheide to testify broadly on the prior art. Ex. 6, Topics No. 45-46. Regardless of whether these topics contain the words "source code," his testimony binds the company on these matters.

**Legal authority supports the motion.**  In *Dataquill*, the court prevented defendants from making non-infringing alternative arguments contrary to 30(b)(6) testimony. *Dataquill Ltd. v. Huawei Techs. Co.*, No. 13-cv-00633, 2015 WL 11109697, at *2 (E.D. Tex. June 11, 2015); *see also* Ex. 7 (*Dataquill* MIL), 3-4; Ex. 8 (*Dataquill* MTS Order), 5-6. That is the issue confronting the Court here. While Defendants claim *Rainey* is "discredited" (Opp. at 2), a court in this Circuit cited the case and credited its rationale. *TIG Ins. Co. v. Tyco Int'l Ltd.,* 919 F. Supp. 2d 439, 453 (M.D. Pa. 2013), *amended on other grounds* (Apr. 8, 2013).

Dated: April 30, 2025                    POTTER ANDERSON CORROON LLP

By: /s/ David E. Moore
David E. Moore
Bindu Ann Palapura
1313 North Market Street
Wilmington, Delaware 19899
Phone: + 1 302 984 6000
Fax: + 1 302 658 1192
Email: dmoore@potteranderson.com
Email: bpalapura@potteranderson.com

Scott T. Weingaertner (*pro hac vice*)
Stefan Mentzer (*pro hac vice*)
John Padro (*pro hac vice*)
Matthew R. Wisnieff (*pro hac vice*)
Lauren K. Pelletier (*pro hac vice*)
Timothy F. Keegan (*pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Phone: + 1 212 813 8800
Email: SWeingaertner@goodwinlaw.com
Email: SMentzer@ goodwinlaw.com
Email: JPadro@ goodwinlaw.com
Email: MWisnieff@goodwinlaw.com

Fred Feyzi (*pro hac vice*)
GOODWIN PROCTER LLP
601 Marshall St.
Redwood City, California 94063
Phone: + (650) 752-3100
Email: FFeyzi@goodwinlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1477-JLH-CJB |
| | ) |
| DUO SECURITY, INC. n/k/a DUO SECURITY | ) JURY TRIAL DEMANDED |
| LLC and CISCO SYSTEMS, INC., | ) |
| | ) |
| Defendants. | ) |

## <u>DECLARATION OF MATTHEW R. WISNIEFF</u>

I, Matthew R. Wisnieff, declare the following:

1.       I am a counsel at Goodwin Procter LLP.  I am admitted to practice law in the State of New York, and I have been admitted *pro hac vice* to practice before the United States District Court for the District of Delaware in this action.

2.       I represent Plaintiff CosmoKey Solutions GmbH & Co. KG ("CosmoKey") in this matter.   I submit this declaration in support of CosmoKey's Reply Briefs in Support of Motions *in Limine.*

3.       Attached as **Exhibit 1** is a true and correct copy of an excerpt of the transcript of the Rule 30(b)(6) deposition of Jon Oberheide, taken August 15, 2024.

4.       Attached as **Exhibit 2** is a true and correct copy of an excerpt of the transcript of the deposition of Benjamin Goldberg, Ph.D, taken December 5, 2024.

5.       Attached as **Exhibit 3** is a true and correct copy of an excerpt of the transcript of the deposition of Dominic Adenuga, taken May 22, 2024.

6.       Attached as **Exhibit 4** is a true and correct copy of an excerpt of the transcript of the deposition of Ben Murray, taken August 14, 2024.

7.      Attached as **Exhibit 5** is a true and correct copy of a  document produced by Defendants in this litigation with the Bates-number, DUO-COSMOKEY-00084538.

8.      Attached as **Exhibit 6** is a true and correct copy of an excerpt of the CosmoKey's Amended Notice of Rule 30(b)(6) Deposition of Duo Security LLC, dated July 2, 2024.

9.      Attached as **Exhibit 7** is a true and correct copy of Dataquill Ltd.'s Omnibus Motion *in Limine*, *Dataquill Ltd. v. Huawei Techs. Co.*, No. 13-cv-00633 (E.D. Tex. Apr. 6, 2015), Dkt. 122.

10.     Attached as **Exhibit 8** is a true and correct copy of Order, *Dataquill Ltd. v. Huawei Techs. Co.*, No. 13-cv-00633 (E.D. Tex. June 11, 2015), Dkt. 146.

Executed this 30th day of April, 2025.          /s/*Matthew R. Wisnieff*
                                                Matthew R. Wisnieff

# EXHIBIT 1

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 3

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 4

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 5

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 6

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
DELAWARE

| | | |
|---|---|---|
| COSMOKEY SOLUTIONS GMBH & CO. KG, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 18-1477 (JLH) |
| DUO SECURITY, INC. n/k/a DUO SECURITY LLC and CISCO SYSTEMS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## COSMOKEY'S AMENDED
## NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANTS

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), CosmoKey Solutions GmbH & Co. KG ("CosmoKey") will take the deposition of Defendants Duo Security, Inc. n/k/a Duo Security LLC ("Duo") and Cisco Systems, Inc. ("Cisco") (collectively, "Defendants") on July 26, 2024 at 9:00 am, at the offices of Goodwin Procter LLP, 620 Eighth Avenue, New York, New York, 10018.  Examination of the designated representatives will be directed, but not limited, to the topics set forth below.  The deposition will be taken before a notary public or other person authorized by law to administer oaths and will be recorded by stenographic means and by video.  The deposition will continue from day to day until completed.  You are invited to attend and cross-examine.

CosmoKey requests that Defendants identify in writing, at least one week before the deposition, the names of the representatives who will testify on their behalf and each of the topics on which each representative will testify.

## **DEFINITIONS**

Plaintiff incorporates by reference the definitions set forth in Plaintiff CosmoKey's Amended First Set of Requests for the Production of Documents, Second Set of Requests for the Production of Documents, and Amended First Set of Interrogatories.  In addition:

1. "Duo" means Duo Security, Inc. n/k/a Duo Security LLC.

2. "Cisco" means Cisco Systems, Inc.

3. "Defendants" means Duo and Cisco collectively.

4. "Infringing Duo Editions" means Duo Free, Duo Federal, Duo Premier, Duo Advantage, and Duo Essentials.[1]

5. "Infringing Duo Instrumentalities" means "Duo MFA," "Duo Push" (and a variation of Duo Push, "Verified Duo Push"), "Duo Mobile," "Duo Web," "Duo Traditional Prompt," "Duo Universal Prompt," "Duo SSO," and "Duo Passwordless."

6. "Infringing Cisco Products" means the products that include Duo's multi-factor authentication technology in addition to or connection with Cisco's own Cisco-branded security products/services, including (at least) Cisco's SecureX platform, Cisco Secure Access, Cisco Umbrella, Secure Client, and Cisco Identity Services Engine.

7. "Accused Offerings" means the Infringing Duo Editions, Infringing Duo Instrumentalities, and Infringing Cisco Products collectively.

8. "Prior Art" means any product, service, feature, patent, publication, or other evidence that Defendants contend embodies the subject matter of the '903 patent and which

---

[1] "Duo Federal" refers to both "Duo Federal MFA" and "Duo Federal Access."  Defendants previously referred to "Duo Premier" as "Duo Beyond." References to "Duo Beyond" refer to "Duo Premier" and *vice versa*.  Defendants previously referred to "Duo Advantage" as "Duo Access."  References to "Duo Access" refer to "Duo Advantage" and *vice versa*. Defendants previously referred to "Duo Essentials" as "Duo MFA" by Defendants. References to "Duo MFA" refer to "Duo Essentials" and *vice versa*.

Defendants have relied on or intend to rely on to assert that the '903 patent is not valid or that Defendants do not infringe the '903 patent. The term "Prior Art" includes but is not limited to all prior art identified by Defendants in Defendants' Supplemental Invalidity Contentions served on December 13, 2023.

9.  "Duo Prior Art" means any Prior Art which Defendants contend that Duo designed or developed prior to October 31, 2011.

## TOPICS

1.  Each product, service, edition, and feature offered, sold, or distributed by Defendants, or by Defendants in conjunction with other parties, that uses or employs multi-factor authentication, including the Infringing Duo Editions and Infringing Cisco Products.

2.  For each product, service, edition, and feature identified in response to Topic No. 1, (a) the date it first was used, (b) the date it first was offered, sold, or distributed; and (c) the dates during which it was offered, sold, and distributed.

3.  The products, services, editions, and features which technically integrate the Infringing Duo Instrumentalities or the Infringing Duo Editions and the products, services, editions, and features with which Infringing Duo Editions are offered for sale as part of a bundled offering, including the time periods when Defendants' bundled products were offered, sold or distributed.

4.  The conception, research, development, design, and testing of the Accused Offerings.

5.  Any design changes implemented related to any aspect of the Accused Offerings identified in CosmoKey's infringement contentions from 2010 to the present.

6.     The structure, function, operation, and Defendants' intended use of the Accused Offerings, including each version of the Infringing Duo Instrumentalities and Infringing Duo Editions.

7.     The changes to the Infringing Duo Instrumentalities or the Infringing Duo Editions reflected in the change logs and source code produced or made available by Defendants in this action.

8.     Defendants' offers for sale, sales, and distribution of each Infringing Duo Edition and Infringing Cisco Product, from January 2015 to the present.

9.     Defendants' training materials and user guidance distributed to customers concerning the use of, or technical support for, the Accused Offerings.

10.     Defendants' financial statements, from January 2015 through the present, including all documents identified by Defendants in response to Interrogatory No. 8.  This topic includes without limitation the data underlying such statements, the systems and processes Defendants use to record and information for use in their financial statements, and the persons responsible for preparing the financial statements.

11.     Duo's accounting policies and procedures for recording financial information with respect to the Infringing Duo Editions, including for recognizing and calculating revenue, and methodologies for allocating costs and expenses.  For clarity, this Topic includes Duo's policies and procedures prior to its acquisition by Cisco.

12.     Cisco's accounting policies and procedures for recording financial information with respect to the Infringing Duo Editions and Infringing Cisco Products, including for recognizing and calculating revenue, and methodologies for allocating costs and expenses.  For clarity, this Topic includes Cisco's policies and procedures prior to its acquisition of Duo.

13.    From January 2015 through the present, the sales, revenue, costs, and profits from the sale, licensing, and distribution of the Infringing Duo Editions and Infringing Cisco Products, in the aggregate and on a product-by-product basis, and—to the extent the Infringing Duo Instrumentalities or the Infringing Duo Editions have been technically integrated or bundled for sale with other products, services, editions, or features—on an integrated-product and bundled-product basis.

14.    From January 2015 through the present, the projected sales, revenue, costs, and profits from the sale, licensing, and distribution of the Infringing Duo Editions and Infringing Cisco Products, in the aggregate and on a product-by-product basis, and—to the extent the Infringing Duo Instrumentalities or the Infringing Duo Editions have been technically integrated or bundled for sale with other products, services, editions, or features—on an integrated-product and bundled-product basis.

15.    The actual and projected rates of growth of sales of the Infringing Duo Editions (alone or sold as bundled for sale with another offering) and Infringing Cisco Products, from January 2015 through the present.

16.    The actual and projected profitability of the Infringing Duo Editions (alone or sold as bundled for sale with another offering) and Infringing Cisco Products, including as budgets, projections, and hurdle rates, from January 2015 through the present.

17.    The costs, variable or fixed, of the Infringing Duo Editions (alone or sold as bundled for sale with another offering) and Infringing Cisco Products, including the annual research and development expenditures and capital investments made in connection with the same, and the allocation of such amounts, from January 2015 through the present.

18.     The prices, rates, and fees charged for each Infringing Duo Editions (alone or sold as bundled for sale with another offering) and Infringing Cisco Products, including any list prices, discounts, and rebates.

19.     The policies and practices by which Defendants determined and set prices, rates, and fees each of the Infringing Duo Editions (alone or sold as bundled for sale with another offering) and Infringing Cisco Products.

20.     The (a) "Authentication Methods" information contained in DUO-COSMOKEY-00103554 at -55 and (b) the information contained in DUO-COSMOKEY-00008466.  This topic includes the source of the specified information, where such information is kept, the persons responsible for collecting and analyzing such information, and the persons who prepared the documents.

21.     The information contained in the documents cited by Defendants in their responses to Interrogatory No. 8, including the source of the information, where such information is kept, the persons responsible for collecting and analyzing such information, and the persons who prepared the documents.

22.     The general characteristics and identities of customers of the products, services, editions, and features offered, sold, or distributed by Defendants that uses or employs multi-factor authentication, including the Infringing Duo Editions and Infringing Cisco Products.

23.     For each the Infringing Duo Edition and Infringing Cisco Product and each product that technically integrates any Infringing Duo Instrumentality, the number, in the aggregate and on a product-by-product basis, of (a) users; (b) customers; and (c) users per customer, on a monthly, quarterly, and annual basis from January 2015 through the present, both

in the aggregate and on a product-by-product basis. This topic includes, without limitation, each product Defendants disclosed in response to Interrogatory No. 1.

24.     The total number, in the aggregate and on a product-by-product basis, of authentications requested and the number of authentications completed, both in the aggregate and broken down by factor including (a) Duo Push; (b) policy-enabled 2FA (including where the user was assigned bypass status or enabled Duo Remembered Devices on an account); (c) phone and SMS; (d) one-time password (OTP); (e) hardtoken; (f) WebAuthn / U2F; and (g) other factors or authentication types, from January 2015 through the present.

25.     Defendants' policies, procedures, and practices for recording information about users, customers, and authentications, including user and authentication allocation methodologies, from 2015 through the present.

26.     Defendants' knowledge and understanding of the actual and projected market for the Infringing Duo Editions and Infringing Cisco Products and for multi-factor authentication products, services, editions, and features, from 2015 through 2031, including the size of the market, customer and user base, demand, and growth.

27.     Defendants' efforts to market the Accused Offerings to customers and users, including Defendants' marketing and promotional materials related to the Accused Offerings, and including Defendants' efforts to market bundled products and services that include the Infringing Duo Instrumentalities or the Infringing Duo Editions.

28.     Defendants' knowledge of the reasons why customers purchase, license, and use used the Accused Offerings.

29.     The diligence undertaken by Duo and Cisco prior to Cisco's acquisition of Duo.

30.     Appraisals or valuations of Duo's multi-factor authentication technology, products, services, editions, or features, including any assessments or valuation in connection with Cisco's acquisition of Duo and in connection with third parties' actual or potential investments in, or acquisitions of, Duo, including DUO-COSMOKEY-00512962.

31.     Defendants' licensing of patents or technology from other parties, or to other parties, related to authentication (including multi-factor authentication), identity access management, information security, data security, and cybersecurity, including Duo's policies, procedures, and practices for licensing license patents or technology.

32.     Any license agreements, covenants, releases, and settlements entered into by Defendants that has been produced by Defendants and /or identified by Defendants in their discovery responses.

33.     Defendants' policies, procedures, and practices to avoid patent infringement.

34.     The factual bases for Defendants' non-infringement contentions in this litigation.

35.     The factual bases for Defendants' invalidity contentions in this litigation.

36.     The non-infringing alternatives identified in Defendants' responses to Interrogatory No. 4.

37.     The alleged design-arounds identified in Defendants' responses to Interrogatory No. 4.

38.     Any non-privileged evaluations, valuations, and opinions regarding the '903 patent, Related Patents, and Related Applications, including any non-privileged evaluations comparing the claims of any of the '903 patent, Related Patents, and Related Applications to any of Defendants' products, services, or features, including the Accused Offerings.

39.     Any non-privileged evaluations, valuations, and opinions of any Prior Art related to any claims of the '903 patent, Related Patents, and Related Applications.

40.     Duo's first awareness of the '903 patent, Related Patents, Related Applications, Dominic Adenuga, CosmoKey, Alexander Wangerowski.

41.     Cisco's first awareness of the '903 patent, Related Patents, Related Applications, Dominic Adenuga, CosmoKey, and Alexander Wangerowski.

42.     CosmoKey's December 14, 2016 LinkedIn messages to Duo; CosmoKey's August 21, 2018 letter to Duo; Duo's September 11, 2018 letter response to CosmoKey; and Defendants' non-privileged communications regarding this correspondence.

43.     Any diligence conducted by, on behalf of, or at the direction of Duo or Cisco before CosmoKey filed the complaint in this action (ECF No. 1) concerning the '903 patent, Related Patents, and Related Applications.

44.     Any patents issued or assigned to, and patent applications by, Duo or Cisco that Defendants have identified in their invalidity contentions and discovery responses.

45.     The products, services, editions, and features offered by Duo and the constituent software, source code, hardware, methods, and processes that Duo contends are Duo Prior Art, including the "Duo Push" and "OATH TOPT Standard" cited in Defendants invalidity contentions, including at pages 20-21 of Defendants' Supplemental Invalidity Contentions.

46.     Defendants' design, development, use, disclosure, descriptions, demonstrations, and sale of Duo Prior Art prior to October 31, 2011.

47.     Defendants' research, development, and design of Duo Prior Art prior to October 31, 2011, including the research, development, and design underlying the subject matter of U.S.

Provisional Patent Application No. 61/309,885 and U.S. Patent App. No. 13/039,209 and the dates of such research, development, and design.

48.    Duo's development of Duo Prior Art, including the chronology of the development, the individuals involved, and each individual's role.

49.    Any alleged public use, disclosure, demonstration, sale, or offer for sale of Duo Prior Art prior to October 31, 2011 and the dates of such public uses, disclosures, demonstrates, sales, and offers for sale, including the facts concerning investor meetings, customer meetings, the Merit Member Conference at Ann Arbor, Michigan on May 27, 2010, the October 27, 2010 at the Security Innovation Network Showcase, the Xconomy 5X5 Forum at Boston, Massachusetts on December 8, 2010, and any blog posts and YouTube videos concerning Duo Push prior to October 31, 2011.

50.    Customer use of Duo Prior Art prior to October 31, 2011, including the platforms (*e.g.,* app stores and other websites that make software available for download) on which Defendants contend that Duo Prior Art was made available as alleged in Defendants' invalidity contentions, including on page 22 of Defendants' Supplemental Invalidity Contentions, and the dates of such customer alleged adoption and availability.

51.    The factual circumstances regarding the creation, contents, and distribution of the "Duo Security in 30 seconds" video linked from a December 15, 2010 Duo blog post, available at https://www.youtube.com/watch?v=7N8pBVAWLwU, and any accompanying blog posts publications, and documentation, including *Duo Security Two-Factor Authentication Demo in 30 Seconds*, Duo Security Blog, Dec. 15, 2010, available at https://web.archive.org/web/20230127050219/https://duo.com/blog/duo-security-two-factor-authentication-demo-in-30-seconds.

52.     Defendants knowledge of prior attempts and failures of Duo or other persons or entities to make advances or solve problems relating to the field of multi-factor authentication prior to October 31, 2011.

53.     Non-privileged communications, including those between Duo and Cisco, related to this litigation, IPR2019-01638, IPR2019-01639, the '903 patent, Related Patents, Related Applications, and CosmoKey.

54.     The corporate relationship between Duo Security LLC f/k/a Duo Security, Inc. and Cisco Systems, Inc., including any intercompany agreements and how revenue, customer, and user information is collected, kept, and analyzed.

55.     The groups, departments, and teams whose work concerns, or has concerned, the research, development, design, engineering, testing, and manufacture of the Accused Offerings, including the affiliation of each such group, department, and team with each of Duo and Cisco respectively.

56.     The groups, departments, and teams whose work concerns, or has concerned, the marketing, pricing, sale, distribution, and finances of the Infringing Duo Editions and the Infringing Cisco Products, including the affiliation of each such group, department, and team with each of Duo and Cisco respectively.

57.     Defendants' management, version control, and archival practices associated with Defendants' source code repositories, including any procedures for maintaining, documenting changes, and ensuring the preservation and readability of code stored within said repositories.

58.     Defendants' collection and production of documents, information, and source code in this litigation, including the persons at each Duo and Cisco responsible for such efforts,

and the repositories where such documents, information, and source code are kept in the ordinary course of Defendants' regularly-conducted business.

59.    [Intentionally omitted].

60.    Defendants' efforts, policies, and practices to retain documents, information, and source code in connection with this litigation, including efforts to retain instant messages and metadata associated with documents, when Defendants retention efforts relating to this litigation began, and the persons responsible for such efforts.

61.    The authenticity of DUO-COSMOKEY-00008466, including whether or not the document was created or maintained in the ordinary course of Defendants' regularly-conducted business.

Dated: July 2, 2024                              POTTER ANDERSON CORROON LLP

                                                 By: /s/ Scott T. Weingaertner
                                                 David E. Moore
                                                 Bindu Ann Palapura
                                                 Andrew L. Brown
                                                 1313 North Market Street
                                                 Wilmington, Delaware 19801
                                                 Phone: + 1 302 984 6000
                                                 Fax: + 1 302 658 1192
                                                 Email: dmoore@potteranderson.com
                                                 Email: bpalapura@potteranderson.com
                                                 Email: abrown@potteranderson.com

                                                 Scott T. Weingaertner  (*pro hac vice*)
                                                 Stefan Mentzer (*pro hac vice*)
                                                 John Padro (*pro hac vice*)
                                                 Matthew R. Wisnieff (*pro hac vice*)
                                                 Lauren Kuehn Pelletier (*pro hac vice*)
                                                 Timothy Keegan (*pro hac vice*)
                                                 GOODWIN PROCTER LLP
                                                 The New York Times Building
                                                 620 Eighth Avenue

New York, New York 10018
Phone: + 1 212 813 8800
Email: SWeingaertner@goodwinlaw.com
Email: SMentzer@ goodwinlaw.com
Email: JPadro@ goodwinlaw.com
Email: MWisnieff@goodwinlaw.com
Email: LPelletier@goodwinlaw.com
Email: TKeegan@goodwinlaw.com

Farzad (Fred) Feyzi (*pro hac vice*)
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
Tel:  (650) 752-3100
Email: FFeyzi@goodwinlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy Keegan, hereby certify that on July 2, 2024, true and correct copies of the

within document were served on the following counsel of record at the addresses and in the

manner indicated:

### <u>VIA ELECTRONIC MAIL</u>

Jack B. Blumenfeld
Jennifer Ying
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
jying@mnat.com

Elizabeth Rogers Brannen
Justin M. Barnes
STRIS &MAHER LLP
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
elizabeth.brannen@strismaher.com
justin.barnes@strismaher.com

Brian A. Rosenthal
Katherine Dominguez
Allen Kathir
Hyunjong Ryan Jin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166 -0193
brosenthal@gibsondunn.com
kdominguez@gibsondunn.com
akathir@gibsondunn.com
rjin@gibsondunn.com

Ryan Iwahashi
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
riwahashi@gibsondunn.com

Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
jschung@gibsondunn.com

*/s/ Timothy Keegan*
Timothy Keegan

# EXHIBIT 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **DATAQUILL LIMITED,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **2:13-cv-633-JRG-RSP** |
| | § | **LEAD CASE** |
| **HUAWEI TECHNOLOGIES CO., LTD.,** | § | |
| **ET AL.,** | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL REQUESTED** |

## DATAQUILL LIMITED'S OMNIBUS MOTION *IN LIMINE*

Plaintiff DataQuill Limited ("DataQuill") hereby files the following motions *in limine*:

1.      **References to Privileged or Protected Material, Including (a) Questions Intended to Provoke a Privileged or Protected Answer; (b) the Nature of Any Fact Witness's Preparation for Testimony with That Witness's Counsel; or (c) the Nature of Any Retained Expert's Preparation for Testimony with That Party's Counsel.** This motion covers any material that is privileged, including questions justifying a privilege objection or referencing a privilege-log entry. Any such reference or evidence would be irrelevant and/or more prejudicial than probative. FRE 401–03; 501–02.

2.      **References to Prior Claims, Causes of Action, or Forms of Relief That Have Been Dismissed, Abandoned, or Dropped.** Any references, evidence, testimony (including expert testimony), arguments regarding, or inquiries attempting to elicit testimony regarding, the existence of prior claims or causes of action that have been dismissed, abandoned, or dropped by DataQuill, including the fact that such claims or causes of actions were previously asserted but have been dismissed, abandoned, or dropped. FRE 401–03; Order on Motions *in Limine* at 1, *Fractus, S.A. v. Samsung Elecs. Co.,Ltd.*, No. 6:09-cv-203-LED-JDL (E.D. Tex. Apr. 29, 2011), ECF Nos. 803, 899 (granting a nearly identical motion *in limine*); *EZ Dock, Inc. v. Shafer Sys. Inc.*, No. Civ. 98-2364(RHK/AJB), 2003 WL 1610781, at *13 (D. Minn. Mar. 8, 2003) (finding that plaintiff's "dismissal of certain claims has no relevance to the patent infringement claim the jury must decide"). DataQuill's reduction of claims was part of the ordinary streamlining of a case in preparation for trial. A jury, however, is likely to be confused by any mention of previously asserted claims, and the prejudice to DataQuill of introducing that evidence is high. Furthermore, dropped claims are not relevant to any issue in this litigation. FRE 401–03.

3.      **Criticisms of the Patent Office or Its Employees**: Any testimony, statement,

1

opinion, or argument suggesting that the PTO and its examiners lack expertise, are overworked, are not diligent, or are prone to error. Such evidence is not relevant and would be impermissibly calculated to undermine the statutory presumption that an issued patent is valid and enforceable. 35 U.S.C. § 282; *see EZ Dock,* 2003 WL 1610781 at *13 ("As for assertions that the PTO and its examiners are not diligent or are prone to error, the Court can find no relevance in either evidence to that effect or argument. It is Defendants' burden to prove, by the greater weight of the evidence, that the [patent in suit] is either invalid or unenforceable. Aspersions are not evidence.").

4.    **Documents (and Testimony Related to Those Documents) or Witnesses Not Timely Produced or Disclosed in Discovery.** Any evidence, statement, or argument concerning any document that was not timely produced or disclosed during discovery should be excluded. FRCP 26(a), 37(c)(2). Likewise, any testimony related to or dependent on such documents not timely disclosed in discovery should be excluded. Furthermore, no witnesses who were not timely disclosed should be permitted at trial.

5.    **References to Motions or Orders, Other Than The Court's Claim Construction Order.** Any reference or testimony to the fact or content of any motion, ruling, or order in this case or in any previous case involving DataQuill, including the parties' motions *in limine* and associated rulings, with the exception of the Court's Claim Construction Order, subject to any restrictions placed by the Court in that Order. FRE 401–03.

6.    **Certain References to Law Firms, Lawyers, Retained Experts, or Legal Fee Agreements.** Any reference or testimony about the size of any law firm representing any party; other matters handled by the law firms or their lawyers; prior retentions of expert witnesses by the law firms or their lawyers; other clients of the law firms or their lawyers; any disciplinary

action or investigation into the law firms or their lawyers; the wealth of any law firm, their lawyers, or any expert witness retained by any party in this case; and fee agreements for legal services. FRE 401–03; Order on Motions *in Limine* at 2, *CardSoft, Inc. v. Verifone Sys., Inc.*, No. 2:08-cv-00098-RSP (E.D. Tex. Jun. 4, 2012), ECF 376 (preventing introduction of evidence, testimony, or reference to attorneys representing plaintiff on a contingency fee basis). This motion is not meant to protect discoverable information from experts, such as hourly rates or bills, which the parties agree are issues that can be raised at trial.

7. **References to Dropped ZTE Defenses.** Any suggestion or reference by any party to the following defenses, or evidence intended to support said defenses, that ZTE originally pleaded, but which ZTE expressly dropped during the fact-discovery period: advice of counsel, intervening rights and equitable intervening rights, waiver, laches, estoppel, prosecution-history estoppel, prosecution disclaimer, prosecution laches, and failure to comply with the marking requirements of Section 287. *See* Ex. A (12/4/14 B. Klock email).

8. **References to an Enablement Defense.** During the deposition of DataQuill inventor Frank Callaghan, ZTE pursued a line of questions concerning whether DataQuill could have constructed a device in accordance with the teachings of the patent disclosure. Ex. B (Callaghan Tr.). ZTE has subsequently designated that deposition testimony, indicating it intends to pursue this issue. However, ZTE has not asserted an enablement defense in this case, and ZTE's expert has not opined on enablement in his expert report. *See* Ex. C (Table of Contents of Dr. Konchitsky's Invalidity Report). Accordingly, enablement is not an issue in this case, and ZTE should not be permitted to pursue this defense surreptitiously by questioning DataQuill's witnesses on a defense that ZTE did not properly assert.

9. **Corporate Representative Testimony is Binding**. Any evidence, testimony,

opinion, or argument that contradicts in any way the 30(b)(6) deposition testimony of ZTE. Such testimony is binding on ZTE as the producing party, and, as such, ZTE should be limited to the testimony of its corporate representatives. FRCP 30(b)(6). "Federal courts have interpreted this rule as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject." *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 2007 WL 4410370, at *8 (N.D. Tex. Dec. 14, 2007); *see also Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94, 95 (D.D.C. 1998) (precluding party from supporting summary judgment motion with an affidavit of an employee that introduces "a theory of the facts that differs from that articulated by the designated [Rule 30(b)(6)] representatives" as inconsistent "with both the letter and spirit of Rule 30(b)(6)."); *Ruth v. A.O. Smith Corp.*, No. 1:04–CV–18912, 2006 WL 530388, at *10 (N.D. Ohio Feb. 27, 2006) ("[W]hen a party first provides a non-responsive 30(b)(6) deponent and later tries to call a more-responsive witness at trial[,] . . . courts have excluded the witness.").

For example, ZTE should not be permitted to identify specific configurations ZTE contends are acceptable non-infringing alternatives because ZTE's corporate representative did not identify any at his deposition. *See* Docket No. 115 at 12.

10. **Non-Infringement Arguments Based on Prosecution History or Re-Exam History**: Any argument or testimony by Defendants attempting to establish non-infringement of the claims by referring to the prosecution or re-examination histories of any asserted patent. FRE 401–03. This includes comparisons of the accused products against prior art references that were distinguished in the prosecution or re-examination histories. As an example, ZTE may attempt to argue that its products are not "hand-holdable" when compared to the products that DataQuill discussed in prosecution and/or reexamination. "Hand-holdable," however, has already been

construed. Accordingly, such comparisons are irrelevant to determining infringement when the doctrine of equivalents is not being asserted, as is the case here. *See Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) (affirming the exclusion of evidence regarding prosecution history because it was effectively claim construction argument).

11.     **Untimely or Improper Prior Art**. ZTE cannot rely on or reference any prior art that was not properly disclosed in its invalidity contentions. This includes the "Lee Articles" cited in DataQuill's *Daubert* Motion and Motion to Strike Portions of the Expert Reports of Dr. Alon Konchitsky and Dr. Jeffery Stec. *See* Docket No. 115 at 9.

12.     **References to DataQuill's Treatment of Recoveries.** Any references, evidence, testimony (including expert testimony), arguments regarding, or inquires attempting to elicit testimony referring to how a damages award to DataQuill would be distributed by DataQuill to its owners and/or related entities. How DataQuill distributed prior recoveries or might distribute future recoveries is irrelevant to the issues of patent infringement, validity, and damages that will be the focus of the trial. FRE 401–403.

13.     **Prior Judicial Opinions Pertaining to Mr. Mills' and Dr. Wecker's Testimony.** Any references, evidence, testimony (including expert testimony), arguments regarding, or inquires attempting to elicit testimony regarding the fact that testimony or opinions offered by Mr. Robert Mills or Dr. William Wecker may have been excluded or found to be unreliable in any other lawsuits. The issues in other cases do not implicate the accused devices in this case or the patents-in-suit, and therefore prior testimony and opinions offered by Mr. Mills or Dr. Wecker in other cases are entirely unrelated to the dispute at hand and are not probative of any fact at issue in this case. Allowing such testimony would therefore require the parties to re-litigate these other cases before the jury. Such prior cases are thus inadmissible as irrelevant

under FRE 401 & 402. Similarly, because they risk unfairly prejudicing the jury against DataQuill, the cases are also inadmissible under FRE 403.

14.     **Comparisons of the Accused Products to Prior Art.** Any references, evidence, testimony (including expert testimony), arguments regarding, or inquires attempting to elicit testimony comparing the accused devices to prior art. It would be improper for ZTE to argue that the accused products do not infringe merely because they practice the prior art. *Zenith Elecs. Corp. v. PDI Comm. Sys.,* 522 F.3d 1348, 1363 (Fed. Cir. 2008) (finding no "practicing prior art" defense to literal infringement (quoting *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,* 279 F.3d 1357, 1367 (Fed. Cir. 2002))). Comparisons of the prior art and the accused products have no relevance to any claim or defense in this case. FRE 402. Even if relevant, the probative value of any such matter would be greatly outweighed by the danger of unfair prejudice, confusion of the issues, and/or misleading the jury. FRE 403.

15.     **Comparisons of the Accused Products to Preferred Embodiments.** Any references, evidence, testimony (including expert testimony), arguments regarding, or inquires attempting to elicit testimony comparing the accused devices to a preferred embodiment. This analysis is improper under Federal Circuit law. *Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc); *see Zenith Labs v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994). DataQuill identified numerous instances where Dr. Konchitsky (ZTE's technical expert) compared a preferred embodiment to cell phones in its Motion to Strike. *See* Docket No. 115 at 3–4. For example, Dr. Konchitsky opined that "no person of ordinary skill in the art at the time of the invention would consider describing the device described in the disclosure of the '304 patent as a telephone, much less a smartphone." *Id.* at 4. Comparisons of a preferred embodiment and the accused products have no relevance to any

6

claim or defense in this case. FRE 402. Even if relevant, the probative value of any such matter would be greatly outweighed by the danger of unfair prejudice, confusion of the issues, and/or misleading the jury. FRE 403.

16. **Comparisons of the Sample Size in Dr. Wecker's Survey to the Total Number of ZTE Smartphone Sales in the United States**. Any references, evidence, testimony (including expert testimony), arguments regarding, or inquiries attempting to elicit testimony comparing the sample size of Dr. Wecker's survey to the total number of ZTE smartphone sales in the United States. These comparisons have no relevance to any claim or defense or to any valid criticism of Dr. Wecker's survey. FRE 402; Ex. D (*Smartflash* Tr.). To the extent these comparisons might have probative value, the probative value of any such matter would be outweighed by the danger of unfair prejudice, confusion on the issues, and/or misleading the jury. FRE 403; Ex. D (*Smartflash* Tr.).

17. **Any Reference to Objections During the Playing of Deposition Testimony.** Both parties made objections to form to preserve their rights during depositions. When video or transcripts from such depositions are presented to the jury, all parties should remove all objections, comments, or responses to objections from the subject matter presented to the jury, to the extent practicable. This Court will rule on the objections in due course, and playing them in front of the jury is irrelevant and unduly prejudicial under FRE 401–403.

18. **Products and Third Parties Not Accused of Infringement.** Any claim that products or parties not accused of infringement in this case do not infringe the patents-in-suit. That a product or party is not accused of infringement in this case does not mean such products or parties do not infringe the patents-in-suit. ZTE should not be permitted to suggest otherwise to the jury. Such claims or comments are irrelevant to any issue in this case and likely to cause jury

7

confusion, and therefore are inadmissible under FRE 401–403.

19.     **Claim Construction Arguments in Addition to or Contradiction to the _Markman_ Order.** Both sides should be precluded from arguing or otherwise suggesting that the claim terms have any other or further meaning than has been provided by the Court in its _Markman_ Order.

DATED: April 6, 2015                    Respectfully submitted,


                                        */s/ Blaine Larson*
                                        Parker C. Folse III, (LEAD COUNSEL)
                                        Washington State Bar No. 24895
                                        pfolse@susmangodfrey.com
                                        Floyd G. Short
                                        Washington State Bar No. 21632
                                        fshort@susmangodfrey.com
                                        Andres Healy
                                        Washington State Bar No. 45578
                                        ahealy@susmangodfrey.com
                                        **SUSMAN GODFREY L.L.P.**
                                        1201 Third Ave, Suite 3800
                                        Seattle, Washington 98101
                                        Telephone: (206) 516-3880
                                        Facsimile:  (206) 516-3883

                                        Joseph S. Grinstein
                                        Texas Bar No. 24002188
                                        jgrinstein@susmangodfrey.com
                                        **SUSMAN GODFREY L.L.P.**
                                        1000 Louisiana Street, Suite 5100
                                        Houston, TX 77002
                                        Telephone: (713) 651-9366
                                        Facsimile:  (713) 654-6666

                                        Leslie V. Payne
                                        Texas Bar No. 00784736
                                        lpayne@hpcllp.com
                                        Michael F. Heim
                                        Texas Bar No. 09380923
                                        mheim@hpcllp.com
                                        Nathan J. Davis
                                        Texas Bar No. 24065122
                                        ndavis@hpcllp.com
                                        Robert Allan Bullwinkel
                                        Texas Bar No. 24064327
                                        abullwinkel@hpcllp.com
                                        **HEIM, PAYNE & CHORUSH, LLP**
                                        600 Travis Street, Suite 6710
                                        Houston, Texas 77002-2912
                                        Telephone: (713) 221-2000
                                        Facsimile: (713) 221-2021

                                        Douglas R. Wilson

Texas Bar No. 24037719
dwilson@hpcllp.com
**HEIM, PAYNE &CHORUSH, LLP**
9442 Capital of Texas Hwy North
Plaza 1, Suite 500-146
Austin, TX 78759
Telephone: (512) 343-3622
Facsimile: (512) 345-2924

S. Calvin Capshaw, III
Texas Bar No. 03783900
ccapshaw@capshawlaw.com
Elizabeth L. DeRieux
Texas Bar No. 05770585
ederieux@capshawlaw.com
**CAPSHAW DERIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 236-9800
Facsimile: (903) 236-8787

T. John Ward, Jr.
Texas Bar No. 00794818
jw@wsfirm.com
**WARD &SMITH LAW FIRM**
P.O. Box 1231
Longview, Texas 75606-1231
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR DATAQUILL LIMITED**

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that prior to filing this motion, counsel for DataQuill conferred with counsel for ZTE. The motion is opposed. The parties will continue to work to reduce the number of disputed issues after the opening briefing is filed.

*/s/ Blaine Larson*
Blaine Larson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 6th day of April, 2015, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Blaine Larson*
Blaine Larson

# EXHIBIT 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| DATAQUILL LIMITED, | § | 2:13-CV-633 |
| | § | LEAD CASE |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HUAWEI TECHNOLOGIES CO LTD ET AL. | § | |
| | § | |
| ZTE CORPORATION ET AL. | § | 2:13-CV-634 |

## ORDER

Currently before the Court is Plaintiff DataQuill Limited's ("DataQuill") Motion to Strike Portions of the Expert Reports of Dr. Alon Konchitsky and Dr. Jeffery Stec (Dkt. No. 115, "Motion to Exclude").

## APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go

Case 2:18-cv-01477-JLR-CJB   Document 480-16   Filed 05/14/25   Page 307 of 311
Case 2:13-cv-00633-JRG-CJB   Document 146   Filed 06/11/15   Page 2 of 6 PageID #: 7340
PageID #: 32176

about determining whether particular expert testimony is reliable."). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," *quoting* FED. R. EVID. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## DISCUSSION

In its Motion to Exclude, Plaintiff DataQuill sets forth three grounds[1] for which to exclude the testimony of Dr. Alon Konchitsky ("Dr. Konchitsky") and Dr. Jeffery Stec ("Dr. Stec").

First, Plaintiff argues Dr. Konchitsky's Overview section improperly characterizes the patented invention by trying to limit the invention to a particular embodiment and then comparing the accused products to that particular embodiment. (Mot. at 1–2.) Specifically, Plaintiff argues Dr. Konchitsky's report sets forth a broad non-infringement argument based on an overview of the DataQuill's patents. (*Id*. at 2–3.) For example, Plaintiff accuses Dr. Konchitsky of comparing particular embodiments of the patent to the accused products, rather than comparing the claim language itself. (*Id*. at 3.) Moreover, Plaintiff argues Dr. Konchitsky renders improper conclusions by arguing, for example, the devices described in the '304 Patent cannot cover certain devices. (*See, e.g., id*.) ("No person of ordinary skill in the art at the time of the invention would consider describing the device described in the disclosure of the '304 patent as a telephone, much less a smartphone.").

Although Dr. Konchitsky is permitted to provide a summary and overview of the patents-in-suit and how the patents-in-suit relate to the accused products, Dr. Konchitsky is not permitted to confuse or mislead the jury by rendering comparisons of particular embodiments (such as, exemplary figures) to the accused products throughout his non-infringement analysis. Nor is Dr. Konchitsky permitted to render conclusions regarding the scope of the patents-in-suit or

---

[1] DataQuill's Motion to Exclude sets forth two additional grounds relating to issues of claim construction. (*See, e.g.*, Mot. at 5) (regarding the proper construction for the term, "a controller"); (*id*. at 7) (regarding the proper construction for the phrase, "telephonic transmission of information relating to a selected item or items from storage to a remote processing center"). The Court will address DataQuill's arguments relating to these claim construction issues in a separate order and, thus, it will not repeat its positions here.

Case 2:18-cv-01477-JHC-CJB   Document 480-16   Filed 05/14/25   Page 309 of 311
Case 2:13-cv-00633-JRG   Document 146   Filed 06/11/15   Page 4 of 6 PageID #: 7342
PageID #: 32178

particular claim limitations that deviate from this Court's Claim Construction Memorandum and Order. (Dkt. No. 105.) Accordingly, Dr. Konchitsky is hereby excluded from providing any non-infringement opinions that violate these constraints.

Second, Plaintiff argues a particular prior art reference (the "Titus EO Application") should be stricken from Dr. Konchitsky's report. (Mot at 9.) Specifically, Plaintiff argues although Defendant timely disclosed the Titus EO Application in its invalidity contentions, such disclosure was limited to a prior art date of April 1994. (*Id.*) Plaintiff contends Dr. Konchitsky relies on two references not cited in Defendant's invalidity contentions that move the Titus EO Application prior art date back to May 1993. (*Id.*) Plaintiff concludes, because these references were not originally disclosed in Defendant's invalidity contentions, it would be unfairly prejudiced should Defendant be permitted to rely on the earlier date. That is, Plaintiff argues it did not have adequate notice that the Titus EO Application would qualify as prior art as of May 1993. (*Id.* at 9–10.)

Defendant argues the newly discovered references merely relate to the date the Titus EO Application is available as prior art and documents supporting this May 1993 were disclosed to Plaintiff prior to the close of fact discovery. (Opp. at 10.) Plaintiff does not dispute this fact. (Reply at 5.) Rather, Plaintiff argues prejudice arises because it "no longer has the opportunity to evaluate whether the Titus EO Application was in public use in May 1993" and "it had no reason to investigate whether the Titus EO Application was in public use in May 1993" based on Defendant's invalidity contentions. (*Id.* at 4–5.)

Evaluating the parties' arguments, the Court concludes that Defendant failed to provide sufficient notice of Titus EO Application's May 1993 prior art date in its invalidity contentions. Accordingly, any references to this date in Dr. Konchitsky's analysis must be excluded. This

Case 2:18-cv-01477-JHC-CB   Document 480-16   Filed 05/14/25   Page 310 of 313
Case 2:13-cv-00633-JRG   Document 146   Filed 06/11/15   Page 5 of 6 PageID #: 7343
PageID #: 32179

Court's Local Patent Rules require that invalidity contentions include, *inter alia*, the relevant date particular prior art was offered for sale or publicly used or known. P.R. 3.3(a). Defendant knew of the relevant priority date prior to the close of fact discovery yet made no effort to amend its invalidity contentions. Because Plaintiff is entitled to rely on the dates disclosed in Defendant's invalidity contentions when preparing its defense, Defendant's contentions did not provide Plaintiff with adequate opportunity to prepare its defense in light of this omission. Accordingly, Plaintiff's requested relief on this ground is granted as to exclude any references to the availability of the Titus EO Application prior to April 1994.

Third and finally, Plaintiff argues Dr. Stec should be excluded from testifying as to non-infringing alternatives. (Mot. at 11.) Specifically, Plaintiff argues in his rebuttal report, "Dr. Stec presents for the first time several new alleged non-infringing alternatives that were never previously mentioned by ZTE." (*Id.*) Plaintiff continues, citing to an interrogatory response and 30(b)(6) deposition testimony bereft of any reference to non-infringing alternatives. (*See, e.g., id.*) ("Instead of identifying any such alternatives, ZTE simply responded [in its interrogatory response] that the accused products themselves were non-infringing."); (*id.* at 12) ("DataQuill asked Mr. Ma whether there were any noninfringing alternatives, and he gave a similar response as ZTE's interrogatory.") Defendant argues it "has not and will not offer any damages testimony based on non-infringing alternatives, and the only purpose for Dr. Stec's comments is criticism about the reliability of Dr. Wecker's survey." (Opp. at 14) (citations omitted).

The Court finds that for the purposes of its damages theory, Defendant did not adequately disclose non-infringing alternatives to be considered in that analysis. Therefore, Dr. Stec is not permitted to opine on non-infringing alternatives, nor is Ms. Schenk—Defendant's damages expert—permitted to testify as to how a damage theory would be affected based on non-

infringing alternatives. This exclusion, however, shall not prohibit Dr. Stec from providing his general criticisms regarding the reliability of Dr. Wecker's survey and his conclusions. Defendant is cautioned, however, that any efforts to elicit testimony from Dr. Stec or Ms. Schenk regarding the potential effects of how much a customer would be willing to pay for the alleged infringing feature in light of free or discounted alternatives would necessarily implicate theories of non-infringing alternatives. Any such implications would be considered a direct violation of this Order. Accordingly, Plaintiff's Motion to Exclude is granted as testimony relating to non-infringing alternatives as set forth above.

## CONCLUSION

Having considered all of Plaintiff's objections, Plaintiff's Motion to Strike Portions of the Expert Reports of Dr. Alon Konchitsky and Dr. Jeffery Stec (Dkt. No. 115) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Specifically, Plaintiff's Motion to Exclude is granted as it relates to non-infringement theories, the May 1993 prior art date of the Titus EO Application reference, and non-infringing alternatives as specifically set forth above, and denied as to all other grounds.